**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JUHYUN SO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HYATT CORPORATION,<br><br>Defendant. | Civil Action No.: 1:25-cv-10483<br><br>Hon. Matthew F. Kennelly |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT HYATT CORPORATION'S MOTION TO DISMISS AND STRIKE PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

III. LEGAL AUTHORITY ........ 3

IV. ARGUMENT ........ 4

a. Plaintiff Consented to the Alleged Tracking Through His Registration for Hyatt's Rewards Program ........ 4

b. Plaintiff Consented to the Alleged Tracking Again Through Hyatt's Booking Interface and Other Means ........ 7

c. Plaintiff's Claims Are Foreclosed by His Agreement to Proceed Under Illinois Law ........ 9

d. Plaintiff Has Failed to State a Claim Under Section 631(a) ........ 13

i. Section 631(a) Does Not Apply Because Hyatt Was a Party to the Alleged Communications ........ 14

ii. Plaintiff Fails to Allege Adobe or Meta Read the Content of Communications ........ 15

iii. Plaintiff Fails to Allege Interception in Transit ........ 16

iv. Plaintiff Fails to Plausibly Allege Aiding or Abetting by Hyatt ........ 17

e. Plaintiff Fails to State a Claim Under Section 632 ........ 17

f. Plaintiff's Class Allegations and Claims for Punitive, Equitable and Other Relief Should Be Stricken ........ 19

V. CONCLUSION ........ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABF Capital Corp. v. Osley*,
414 F.3d 1061 (9th Cir. 2005) ........................................................12

*Adler v. Community*,
2021 U.S. Dist. LEXIS 201644 (C.D. Cal. Aug. 2, 2021)........................16

*Allied Waste Transp., Inc. v. John Sexton Sand & Gravel Corp.*,
2016 U.S. Dist. LEXIS 82001 (N.D. Ill. June 23, 2016) ..........................5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................4

*Atl. Marine Constr. Co. v. United States Dist. Court*,
571 U.S. 49 (2013)........................................................................11

*Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*,
770 N.E.2d 177 (2002)....................................................................11

*Bobin v. Glick*,
2019 U.S. Dist. LEXIS 239610 (N.D. Ill. Mar. 20, 2019)........................20

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023) ..............................................15

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ..................................................18

*Cody v. Boscov's, Inc.*,
2024 U.S. Dist. LEXIS 82332 (C.D. Cal. May 6, 2024) ..........................16

*Cody v. Lacoste USA, Inc.*,
2024 U.S. Dist. LEXIS 135843 (C.D. Cal. July 30, 2024)..................14, 17

*Cole v. Quest Diagnostics, Inc.*,
2025 U.S. Dist. LEXIS 7205 (D.N.J. Jan. 14, 2025), aff'd, 2025 U.S. App. LEXIS 29698 (3d. Cir. Nov. 13, 2025) ..........................................14

*Coleman Cable Sys. v. Shell Oil Co.*,
1996 U.S. Dist. LEXIS 13090 (N.D. Ill. Aug. 28, 1996) ..........................5

*Connectors Realty Grp. Corp. v. State Farm Fire & Cas. Co.*,
2021 U.S. Dist. LEXIS 57400 (N.D. Ill. Mar. 25, 2021)..........................19

*Crowell v. Audible Inc.*,
2025 U.S. Dist. LEXIS 204445 (W.D. Wash. Oct. 16, 2025) ....................12

*Daly v. Eagleson*,
2021 U.S. Dist. LEXIS 184846 (N.D. Ill. Sep. 27, 2021) ....................19

*Doe v. Microsoft Corp.*,
2023 U.S. Dist. LEXIS 226041 (W.D. Wash. Dec. 19, 2023)....................18

*Esparza v. Uag Escondido A1 Inc.*,
2024 U.S. Dist. LEXIS 145236 (S.D. Cal. Aug. 5, 2024) ....................14

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....................14

*Fisher v. TCI*,
2000 U.S. Dist. LEXIS 7150 (N.D. Ill. Apr. 19, 2000) ....................20

*Forby v. One Techs.*,
LP, 2016 U.S. Dist. LEXIS 46141 (S.D. Ill. Apr. 5, 2016) ....................6

*Gaines v. Ciox Health, LLC*,
2024 WL 4023817 (Ill. App. Ct. Sept. 3, 2024) ....................10

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) ....................4

*Gilbert v. Ill. State Bd. of Educ.*,
591 F.3d 896 (7th Cir. 2010) ....................5

*Godun*, 135 F.4th at 708 ....................10

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ....................4

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ....................18

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ....................15

*Hammerling v. Google LLC*,
2022 U.S. Dist. LEXIS 217020 (N.D. Cal. Dec. 1, 2022)....................16

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....................15

*Harman v. Gist*,
2003 U.S. Dist. LEXIS 15297 (N.D. Ill. Aug. 29, 2003) ....................13

*Jones v. BRG Sports, Inc.*,
2019 U.S. Dist. LEXIS 128493 (N.D. Ill. Aug. 1, 2019)....19

*Juhyun So v. Hyatt Corp.*,
No. 2:25-cv-1298-AB-SSC, 2025 U.S. Dist. LEXIS 211395 (C.D. Cal. Aug. 25, 2025)....1

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023)....15

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024)....10

*Konop v. Hawaiian Airlines, Inc.*,
302 F. 3d 868 (9th Cir. 2002)....16

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025)....4

*Leon's Auto Sales, Inc. v. Leedom & Assocs., LLC*,
2015 U.S. Dist. LEXIS 109739 (N.D. Ill. Aug. 19, 2015)....11

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023)....14, 15, 16

*Licea v. Cinmar*,
LLC, 659 F. Supp. 3d 1096 (C.D. Cal. 2023)....15

*Licea v. Old Navy, LLC*,
669 F. Supp. 3d 941 (C.D. Cal. 2023)....15

*Lindsay-Stern v. Garamszegi*,
2016 U.S. Dist. LEXIS 203693 (C.D. Cal. Oct. 13, 2016)....16

*Maher & Assocs., Inc. v. Quality Cabinets*,
640 N.E.2d 1000 (Ill. App. Ct. 1994)....11

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021)....13

*Midway Home Entm't v. Atwood Richards Inc.*,
1998 U.S. Dist. LEXIS 17525 (N.D. Ill. Oct. 27, 1998)....12

*Moreno v. S.F. Bay Area Rapid Transit Dist.*,
2017 U.S. Dist. LEXIS 206009 (N.D. Cal. Dec. 14, 2017)....17, 18

*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 938 (N.D. Cal. 2014)....16

*Oberstein v. Live Nation Entm't, Inc.*,
60 F.4th 505 (9th Cir. 2023) ....................................................................................6

*Pactiv LLC v. Perez*,
2021 U.S. Dist. LEXIS 185415 (N.D. Ill. Sep. 28, 2021) .....................................................11

*People v. Stipo*,
195 Cal. App. 4th 664 (2011) ......................................................................................18

*Perez v. Romantix Online, Inc*.,
2025 U.S. Dist. LEXIS 219456 (N.D. Cal. Oct. 27, 2025)........................................................4

*Preferred Capital Lending v. Chakwin*,
2015 U.S. Dist. LEXIS 137383 (N.D. Ill. Oct. 7, 2015)..........................................................11

*Revitch v. New Moosejaw, LLC*,
2019 U.S. Dist. LEXIS 186955 (N.D. Cal. Oct. 23, 2019)......................................................18

*Rodriguez v. Google LLC*,
2021 U.S. Dist. LEXIS 98074 (N.D. Cal. May 21, 2021) .......................................................18

*Ruffin v. Exel Direct, Inc*.,
2009 U.S. Dist. LEXIS 89579 (N.D. Ill. Sep. 29, 2009) ........................................................20

*S. Beach Bev. Co. v. Rush Bev. Co.*,
2004 U.S. Dist. LEXIS 2477 (N.D. Ill. Feb. 19, 2004) ...........................................................5

*Sears Home Appliance Showrooms, LLC v. Charlotte Outlet Store, LLC*,
2018 U.S. Dist. LEXIS 104209 (N.D. Ill. June 21, 2018) ...............................................11, 12

*Silver v. Stripe Inc*.,
2021 U.S. Dist. LEXIS 141090 (N.D. Cal. July 28, 2021).......................................................4

*Smith v. Facebook, Inc*.,
745 F. App'x 8 (9th Cir. 2018) ........................................................................................4

*Smith v. Yeti Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) .............................................................................17

*Swarts v. Home Depot, Inc*.,
689 F. Supp. 3d 732 (N.D. Cal. 2023) .............................................................................14

*Tavernetti v. Superior Court*,
22 Cal. 3d 187 (1978) ..................................................................................................13

*United States v. Harris*,
531 F.3d 507 (7th Cir. 2008) ..........................................................................................5

*Valenzuela v. Keurig Green Mountain*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) .............................................................................17

*Vann v. Dolly, Inc.*,
2020 U.S. Dist. LEXIS 31678 (N.D. Ill. Feb. 25, 2020) ....................19

*In re Vizio, Inc.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ....................16, 17

*Wainwright v. Melaleuca, Inc.*,
844 F. App'x 958 (9th Cir. 2021) ....................12

*Williams v. What If Holdings, LLC*,
2022 U.S. Dist. LEXIS 230732 (N.D. Cal. Dec. 22, 2022) ....................14, 15

*WTM, Inc. v. Hennek*,
125 F. Supp. 2d 864 (N.D. Ill. 2000) ....................10, 11, 12

*Zeigler Auto Grp. II, Inc. v. Chavez*,
2020 U.S. Dist. LEXIS 6582 (N.D. Ill. Jan. 15, 2020) ....................11

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................15, 16

**Statutes**

Cal. Civ. Code § 53.5(c) ....................18

Cal. Civ. Proc. Code § 340 ....................20

**Other Authorities**

Restatement (Second) Conflict of Laws § 187, cmt. g ....................13

## I. INTRODUCTION

On August 25, 2025, after briefing from the parties, Judge Andre Birotte of the Central District of California issued a detailed Order on Hyatt's Motion to Transfer. In that Order, Judge Birotte ruled it was "undisputed" Plaintiff registered for Hyatt's World of Hyatt rewards program in 2018; that the World of Hyatt Membership Terms ("Terms") were "reasonably conspicuous" on Hyatt's registration page, which "was neat, flowing from top to bottom"; and that Plaintiff "unambiguously assented to the [Terms]," which were "valid and binding." ECF 35 at 8-11; *Juhyun So v. Hyatt Corp.*, No. 2:25-cv-1298-AB-SSC, 2025 U.S. Dist. LEXIS 211395, at *13-20 (C.D. Cal. Aug. 25, 2025). Judge Birotte also found Hyatt's Privacy Policies were disclosed in the same manner as the Membership Terms within the registration workflow:

> Above the "JOIN NOW" button was a disclaimer: "By joining, you are agreeing to the World of Hyatt Terms & Conditions. We collect and use your personal information in accordance with our Privacy Policies." It is undisputed the words "Terms & Conditions" and "Privacy Policy" were hyperlinked in blue font that contrasted with the white background and surrounding text which appeared in black font.

*Id*. at 9. Ultimately, Judge Birotte found that because Plaintiff was bound by the Terms, this case should be transferred to the Northern District of Illinois pursuant to the Terms' venue clause. *Id*. at 12. Now that the transfer has been finalized, this Court should dismiss and strike Plaintiff's Amended Complaint (ECF 15) on the grounds specified below.

***First***, Judge Birotte's findings regarding the conspicuousness of Hyatt's disclosures and the enforceability of Hyatt's Terms constitute law-of-the case and should be applied with equal force to Hyatt's Privacy Policies, which were part of the same registration workflow. Lack of consent is an essential element of a claim under the California Invasion of Privacy Act ("CIPA"), and here, as with the Terms, Plaintiff consented to the "use" of his booking information that his Amended Complaint purports to challenge. Accordingly, his CIPA claims fail and the Amended Complaint should be dismissed pursuant to Rule 12(b)(6).

***Second***, beyond the registration process, Plaintiff again consented to Hyatt's Privacy Policies and the alleged sharing of his booking information through the materially similar

hyperlinks and assent features located on the Website's booking interface, as well as through other site features, such as its cookie banner.

***Third***, Plaintiff's Complaint must be dismissed because he also agreed via the Terms—which, again, have already been ruled enforceable—that any disputes with Hyatt would be governed by Illinois law. Because Plaintiff's CIPA claims are based exclusively on California law, the Complaint fails to state a claim against Hyatt.

***Fourth***, Plaintiff has otherwise failed to state the elements of a CIPA claim. Specifically, Plaintiff fails to plausibly allege that Meta or Adobe committed predicate violations of CIPA with respect to *his* booking information, let alone that Hyatt intentionally aided and abetted any such violation.

***Fifth***, the Court should strike Plaintiff's class allegations and his prayer for punitive, compensatory, and equitable relief. Plaintiff's class definition covers all California residents who accessed Hyatt's Website over an unlimited period, as opposed to only those who, like Plaintiff, "booked" hotel rooms in 2024, and Plaintiff offers no plausible allegations in support of his requested remedies.

## II. BACKGROUND

Plaintiff alleges that, after creating a Facebook account "in or around November 2010," he accessed Hyatt's website, www.hyatt.com (the "Website"), while in California. ECF 15 ¶ 3. Plaintiff contends he visited the Website "[n]umerous times, including on or around February 19, 2024; September 21, 2024; and November 20, 2024," with the same browser he used to access Facebook. *Id*. Plaintiff asserts "[u]pon accessing the Website, [he] browsed and booked a Hyatt hotel." *Id.* Plaintiff claims these "communications" were "intercepted" by Meta and Adobe, including communications containing Plaintiff's "confidential 'guest records.'" *Id.* Although Plaintiff alleges Exhibit A to the Amended Complaint is a Meta report that "evinces activity received from the Website" [*id.* ¶ 3 n.1], it merely references "82 interactions," with no details. *See* ECF 15-1.

Later in the Amended Complaint, Plaintiff purports to describe and depict a booking flow for unidentified "Website users." *Id.* ¶¶ 27-30. Plaintiff alleges users input or select information to

determine booking options, including destination, date, and the number of rooms and guests. *Id.* ¶ 27. Plaintiff contends Hyatt "has integrated [Meta's and Adobe's] wiretaps into the Website" [*id.* ¶ 23] and that Meta and Adobe "contemporaneously intercept Website users' button clicks selecting such items." *Id.* ¶ 27. While Plaintiff alleges users "check out" by entering contact and payment information [*id.* ¶ 30], he ***does not*** allege such contact and payment information was shared with third parties.

The Amended Complaint then offers a series of images purporting to depict interception of booking parameters, without connecting those images or allegations to Plaintiff's transactions. *Id.* ¶¶ 44-53. Similarly, Plaintiff suggests Meta and Adobe "can pair" booking data to users' identities through "tracking technologies" and "cookies" [*id.* ¶¶ 54-55] and he devotes several pages to Adobe and Meta promotional materials and other sources describing the marketing "capability" of various services in the abstract. *Id.* ¶¶ 54-73. But again, Plaintiff fails to allege Hyatt used any particular "capabilities" in connection with *his* Website visits, nor does he specify when, how, or on what pages Hyatt purportedly implemented any specific capabilities. *Id*. ¶¶ 3, 33-73. Plaintiff admits "these personal details are 'hashed,'" but asserts "they are traceable," citing publications suggesting hashing is "overrated." *Id.* ¶ 68.

Hyatt moved to transfer the case to this Court, and, alternatively, to dismiss and strike the Amended Complaint. Hyatt argued, *inter alia*, Plaintiff agreed to Hyatt's Terms—which contain an Illinois venue clause—and consented to Hyatt's Privacy Policies, when he registered for the World of Hyatt Rewards Program in 2018. ECF 18, 30. Plaintiff vigorously opposed the motions. ECF 25-2. On August 25, 2025, Judge Birotte granted Hyatt's transfer request, finding Hyatt's Terms were "reasonably conspicuous" and were "valid and binding" on Plaintiff. ECF 35 at 8-10. Judge Birotte also found Hyatt's Privacy Policies were disclosed in the same manner as the Terms within the registration workflow but did not rule on Hyatt's motion to dismiss and strike. *Id*. at 9. On November 13, 2025, this Court set a briefing schedule on this motion. ECF 44.

## III. LEGAL AUTHORITY

The Amended Complaint should be dismissed for failure to state a claim under Rule 12(b)(6). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim

to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). While the plaintiff's allegations are taken as true for purposes of a motion to dismiss, that presumption does not apply to conclusory allegations. *See Id.* at 678-79. Here, the Amended Complaint falls short on multiple dispositive grounds.

## IV. ARGUMENT

### a. Plaintiff Consented to the Alleged Tracking Through His Registration for Hyatt's Rewards Program

CIPA sections 631 and 632 both require lack of consent as an affirmative element of a valid claim, and failure to plausibly allege lack of consent is grounds for dismissal. *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1058 (N.D. Cal. 2025) (dismissing CIPA claims on consent grounds); *see also Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) (affirming dismissal of CIPA web-tracking claims based on plaintiff's consent to website privacy policy); *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 828 (N.D. Cal. 2020) ("Plaintiffs' allegation that the recordings 'were made without Plaintiffs' consent' is conclusory."); *Silver v. Stripe Inc.,* 2021 U.S. Dist. LEXIS 141090, at *12-14 (N.D. Cal. July 28, 2021) (dismissing CIPA claim where privacy policy "explicitly state[d] that consumers' information may be provided to [the defendant's] 'partners'"); *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1137 (N.D. Cal. 2015) (dismissing CIPA claim for "failure to adequately allege lack of consent"); *Perez v. Romantix Online, Inc.*, 2025 U.S. Dist. LEXIS 219456, at *6-8 (N.D. Cal. Oct. 27, 2025) (dismissing CIPA claims for failure to plausibly allege lack of consent, recognizing consent may be decided at the pleading stage and that privacy policies can establish consent).[1]

Here, Plaintiff expressly agreed to Hyatt's Privacy Policies, including its Privacy Policy for Guests, through his World of Hyatt enrollment. Following rigorous briefing by the parties, Judge Birotte ruled Hyatt's Terms were "valid and binding" on Plaintiff. ECF 35 at 11. In reaching

[1] As discussed below, Hyatt contends Illinois law applies to Plaintiff's Amended Complaint, which provides an independent ground for dismissal. However, Hyatt also asserts, alternatively, that if Plaintiff is allowed to proceed under California law, the Amended Complaint should be dismissed for failure to allege lack of consent or to otherwise state a CIPA claim.

that decision, Judge Birotte analyzed in detail the "undisputed" steps of Hyatt's registration workflow, which included explicit hyperlinks to the Privacy Policies alongside the Terms:

> The Registration Page required Plaintiff to input his name, email address, physical address, preferred language, and customer type; then create a password; and finally click "JOIN NOW" to complete his registration. (Cave Decl. ¶ 6, Ex. 10). After the "Confirm Password" field, the following text appeared in black font—except the words "Terms & Conditions" and "Privacy Policies" which were hyperlinks that appeared in blue font: "By joining, you are agreeing to the World of Hyatt Terms & Conditions. We collect and use your personal information in accordance with our Privacy Policies." (*Id.*). Below those sentences was a rectangular box containing the words "JOIN NOW," which a user must have clicked to complete their enrollment in the program. (*Id.*).

*Id*. at 2. Judge Birotte also took judicial notice of screenshots and links regarding relevant webpages, to which Plaintiff raised no objections. *Id*. at 5-6. ("Plaintiff does not oppose Defendant's RJN and relies on Exhibits 1 and 10 in its Opposition. (*See* Opp'n at 6:1–2).").

Thus, the conspicuousness of Hyatt's Privacy Policies and the mechanism of Plaintiff's assent to those Policies have already been adjudicated and should be enforced as law-of-the-case. *See Gilbert v. Ill. State Bd. of Educ.*, 591 F.3d 896, 902 (7th Cir. 2010) (explaining a successor judge generally should not reconsider a transferor judge's rulings absent a strong and reasonable conviction they were wrong and where rescission would not unduly harm the benefiting party); *United States v. Harris*, 531 F.3d 507, 513 (7th Cir. 2008) (reconsideration of prior ruling appropriate only for compelling reasons, such as intervening change in controlling law, newly discovered evidence, or to correct clear error or prevent manifest injustice); *S. Beach Bev. Co. v. Rush Bev. Co.*, 2004 U.S. Dist. LEXIS 2477, at *6-7 (N.D. Ill. Feb. 19, 2004) (finding that determination of contract enforceability earlier in the case also applied on summary judgment and could not be relitigated); *Coleman Cable Sys. v. Shell Oil Co.*, 1996 U.S. Dist. LEXIS 13090, at *11-14 (N.D. Ill. Aug. 28, 1996) (applying law-of-the-case to grant summary judgment against implied warranty claim, reasoning the claim's validity was resolved "by necessary implication" via prior ruling rejecting express warranty claim); *Allied Waste Transp., Inc. v. John Sexton Sand & Gravel Corp.*, 2016 U.S. Dist. LEXIS 82001, at *19-21 (N.D. Ill. June 23, 2016) (stating law-of-the-case has "greater force" when a successor judge is asked to revisit a predecessor's rulings

and applying at summary judgment phase a prior judge's contract-interpretation ruling from motion for judgment on the pleadings).[2]

Accordingly, Plaintiff's CIPA claims fail because Hyatt's binding Privacy Policies, including the May 2018 Privacy Policy for Guests linked to Plaintiff's registration, delineated the very type of tracking Plaintiff alleges was nonconsensual, including collection and sharing of "guest stay information":

> **Types of Personal Information We Collect**
>
> The term "**personal information**" in this Policy refers to information that identifies or is capable of identifying you as an individual. The types of personal information that we process (which may vary by jurisdiction based on applicable law) include:
>
> . . . .
>
> - guest stay information, including the hotels where you have stayed, dates of arrival and departure, goods and services utilised, special requests made, observations about your service preferences (including room and vacation preferences), telephone numbers dialed and faxes, texts and telephone messages received;
>
> . . . .
>
> - information collected while you access a Hyatt app or Hyatt website (we describe this in more detail in Sections 7 and 8 below)
>
> . . . .

Request for Judicial Notice ("RJN"), Ex. 15 at 2. The May 2018 Privacy Policy also specifically disclosed Hyatt.com's use of "Cookies and Other Similar Technology," and stated that "information collected by us or third parties . . . based on your activities on our websites" may be used for "Targeted Advertising":

> **7.9 Targeted Advertising**
>
> Where permitted by law, we may work with other companies to share advertisements or marketing that we think you may find relevant and useful. This may include advertisements displayed on our own websites or apps or communications sent by us, or advertisements from us displayed on other companies' websites. The advertisements you see may be based on information collected by us or third parties and/or may be based on your activities on our websites or third-party websites.

*Id*. at 4.

[2] In any event, Judge Birotte's rulings on the issues of conspicuousness and mutual assent were correct under both Illinois and California law. *See, e.g., Forby v. One Techs.*, LP, 2016 U.S. Dist. LEXIS 46141, at *2-3 (S.D. Ill. Apr. 5, 2016) (enforcing online terms involving a hyperlink adjacent to a "Continue" button); *Oberstein v. Live Nation Entm't, Inc.*, 60 F.4th 505, 515-17 (9th Cir. 2023) (affirming motion to compel enforcement of sign-in wrap agreement where transactional context of online registration process indicated a continuing relationship).

While Plaintiff strenuously opposed Hyatt's consent arguments, his contentions focused exclusively on the clarity of Hyatt's user interface and the sufficiency of Hyatt's disclosures for enforceability purposes—which, again, have already been adjudicated. ECF 25-2. He made no assertion that the purported tracking alleged in the Amended Complaint was not covered by the Terms or the Privacy Policies. *Id*. Plaintiff has therefore failed to state a CIPA claim because he has not plausibly alleged lack of consent.[3]

**b. Plaintiff Consented to the Alleged Tracking Again Through Hyatt's Booking Interface and Other Means**

Separately, Plaintiff assented to Hyatt's Privacy Policies, which disclosed the alleged tracking, through Hyatt's booking interface—images of which have already been judicially noticed by Judge Birotte—each time he reserved a room. This provides an independent ground for dismissing the entire Amended Complaint.

Plaintiff's Amended Complaint includes partial screenshots purporting to depict the Website's booking process. ECF 15 ¶¶ 3, 27-30. But these cropped images omit key portions of Hyatt's user interface. Judge Birotte, however, took judicial notice of the full webpages in question, finding Plaintiff not only failed to object to the full images but also affirmatively relied on the images in his own briefing. ECF 35 at 5-6. Hyatt's judicially noticed webpages show that users can reserve rooms on the Website without joining World of Hyatt or by logging in to their account. However, to complete the booking process, all users must consent to the Privacy Policies via the following screen:

[3] While Hyatt disagrees that consent is an affirmative defense to a CIPA claim as to which the defendant bears the burden of proof, here, Plaintiff's consent has been established as a matter of law, irrespective of which side bears that burden.




As shown, the Privacy Policies appear under a bold heading that reads "Terms & Conditions." RJN, Ex. 1. That section lists three items: Hyatt's Cancellation Policy, its Deposit Policy, and Hyatt's Privacy Policies. *Id*. The entire section contains very little text, and the Privacy Policies are hyperlinked in bright blue, bold font, in stark contrast to what little adjacent text there is. *Id*. Indeed, the Privacy Policies are the *only* hyperlinked item in that section. And the hyperlink appears directly above the "BOOK MY STAY" button, with the following text: "I have read and acknowledge the use of my personal information in accordance with the Hyatt Privacy Policies." *Id.* Users can only complete their reservation by scrolling through the page and clicking the "BOOK MY STAY" button. *Id.*

Accordingly, Plaintiff unambiguously manifested assent to the Privacy Policies when he booked rooms, including the 2024 bookings referenced in the Amended Complaint. The hyperlink to the Privacy Policies appears in the "Terms & Conditions" section of the booking page along with other items that are plainly related to the consummation of a room reservation—specifically, the cancellation and deposit policies. *Id*. Further, the fields above the "Terms & Conditions" section require users to input booking-related information. *Id*. As such, the direct connection between the Privacy Policies governing "use of my personal information" and the "BOOK MY STAY" button is obvious, and clicking that button constitutes an unambiguous manifestation of consent to the Privacy Policies.

Hyatt's December 2022 Privacy Policy for Guests would have appeared on the Website during Plaintiff's alleged 2024 visits via the aforementioned hyperlink and other links on the Website. RJN, Ex. 2. Like the May 2018 version, the December 2022 Privacy Policy for Guests expressly disclosed Hyatt's collection of purported "guest record information":

> **Information We May Collect**
>
> Stay and Purchase Information: we may collect information such as the hotels where you have stayed or booked a stay, dates of arrival and departure, goods and services purchased or utilized at Hyatt Locations or on the Website or Application, physical and digital room key usage, special requests made, service and stay preferences (Including room and vacation preferences), telephone numbers dialed and faxes sent, calls or messages received, and any feedback or content you provide to us regarding your stay [. . . ]

The December 2022 Privacy Policy for Guests also disclosed Hyatt's use of "cookies, tags, pixels, beacons and other technologies on our Websites" to "place and serve advertisements and customized content." *Id.*, Ex. 2. These disclosures were reinforced through Hyatt's cookies banner, Cookie Center, and other methods, and through separate disclosures by Meta and Adobe. *Id.,* Exs. 4-5, 13-14. Plaintiff's consent disposes of his CIPA claims.

Moreover, Plaintiff's allegation that "[a]nalysis of the Website reveals that the Third Parties' tracking technologies are active as soon as the Website loads," *i.e.*, before users could consent, is nonsensical. ECF 15 ¶ 77. First, Plaintiff consented to the 2018 Privacy Policies when he established his World of Hyatt membership—years before the alleged CIPA violations in 2024. Second, Plaintiff alleges the improper sharing occurred as a result of the *booking process*, not upon contact with the Website. *Id.* ¶ 3. Because Plaintiff again consented to the Privacy Policies *before hitting "BOOK MY STAY" for each booking*, Plaintiff's timing argument is a red herring. And Plaintiff's cryptic assertion that tracking technologies are "active" when the Website "loads" is too vague and conclusory to withstand a Rule 12 challenge.

#### c. Plaintiff's Claims Are Foreclosed by His Agreement to Proceed Under Illinois Law

Beyond the Illinois venue clause enforced by Judge Birotte, the Terms to which Plaintiff agreed when he registered for the World of Hyatt rewards program, and which were otherwise

disclosed on the Website, included an Illinois choice-of-law provision in the same paragraph, which read, in pertinent part, as follows:

> The Program, these Terms, and any disputes between you and Hyatt associated with the Program or these Terms will be governed by the laws of the State of Illinois, U.S.A., without reference to its conflict of laws principles. Exclusive jurisdiction over any cause of action arising out of or related to the Program or these Terms will be in state or federal courts located in or having jurisdiction over Chicago, Illinois, U.S.A. . . .

RJN., Ex. 11 at 4; *see also* RJN Exs. 6-8.

Again, Judge Birotte has already determined Plaintiff agreed to the Terms, finding them enforceable under both Illinois and California law.[4] Further, while Plaintiff vigorously contested the Terms' enforceability, Plaintiff never asserted this dispute fell outside of their scope. ECF 25-2. In addition, Plaintiff concedes Hyatt's principal place of business is in Chicago, Illinois. ECF 15 ¶ 4. Accordingly, Illinois law applies in this lawsuit. Because Plaintiff asserts only California law claims—specifically, two CIPA counts—this case must be dismissed. *See WTM, Inc. v. Hennek*, 125 F. Supp. 2d 864, 867-68 (N.D. Ill. 2000) (affirming that Minnesota claim was barred based on Illinois choice-of-law provision).

While Judge Birotte's detailed ruling upholding the Terms' enforceability did not address the choice-of-law language in particular, enforcement of that clause by extension is wholly consistent with Illinois and California law.

As a threshold matter, Plaintiff brought his claims in federal court on diversity grounds pursuant to the Class Action Fairness Act. ECF 15 ¶ 5. Thus, Illinois choice-of-law rules govern any analysis regarding the enforceability of the parties' choice-of-law clause. "A court sitting in diversity must apply the choice-of-law rules of the state in which it sits." *Hennek*, 125 F. Supp. 2d

[4] ". . . Defendant argues its terms and conditions are valid and binding under either California or Illinois law. The Court agrees the result is the same under either body of law. *Compare Gaines v. Ciox Health, LLC*, 2024 WL 4023817, at *7 (Ill. App. Ct. Sept. 3, 2024) ('Regardless of the type of online agreement, the circumstances of the transaction must provide the offeree with reasonable notice that the terms of an agreement are being offered and that certain acts or conduct by the offeree will constitute acceptance of the offer.'), with *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024) (holding sign-in wrap agreement enforceable under California law if the website provides reasonably conspicuous notice of the terms and the consumer takes some action that unambiguously manifests assent to those terms); *see also Godun*, 135 F.4th at 708 ('[W]e have consistently stated that no differences exist in the law of the different states as to internet contract formation.')." ECF 35 at 6-7.

at 867-68; *accord Sears Home Appliance Showrooms, LLC v. Charlotte Outlet Store, LLC*, 2018 U.S. Dist. LEXIS 104209, at *28-29 (N.D. Ill. June 21, 2018).[5] In any event, under either Illinois or California standards, Plaintiff bears the burden of establishing a sufficient or relevant conflict exists between Illinois and California law, warranting a choice-of-law analysis. *See, e.g., Pactiv LLC v. Perez*, 2021 U.S. Dist. LEXIS 185415, at *5-6 (N.D. Ill. Sep. 28, 2021) ("[T]he party arguing for a departure from the choice-of-law provision in the contract bears the burden of demonstrating a conflict, *i.e.*, that there exists a difference in the law that will make a difference in the outcome.") (citation omitted). Plaintiff has never referenced any such conflict. The inquiry should end there.

Even if a choice-of-law analysis were required, Plaintiff bears the burden of establishing the choice-of-law clause should not be followed. "Illinois law generally presume[s] a contractual choice of law clause is enforceable." *Leon's Auto Sales, Inc. v. Leedom & Assocs., LLC*, 2015 U.S. Dist. LEXIS 109739, at *7 (N.D. Ill. Aug. 19, 2015); *see also Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 770 N.E.2d 177, 194 (2002) ("Generally, choice of law provisions will be honored.").

"Under Illinois law, an express contractual choice-of-law provision will be enforced unless it (1) violates the fundamental public policy of Illinois and (2) Illinois has a 'materially greater interest' in the litigation than the chosen state." *Hennek*, 125 F. Supp. 2d at 867 (citing *Maher & Assocs., Inc. v. Quality Cabinets*, 640 N.E.2d 1000, 1006 (Ill. App. Ct. 1994)); *accord Zeigler Auto Grp. II, Inc. v. Chavez*, 2020 U.S. Dist. LEXIS 6582, at *16-18 (N.D. Ill. Jan. 15, 2020). "[T]he public policy considerations must be strong and of a fundamental nature to justify overriding the chosen law of the parties." *Hennek*, 125 F. Supp. 2d at 867. "The fact that a different state may provide certain statutory rights for a plaintiff which are not available under the chosen state's law

[5] Illinois choice-of-law rules govern the determination of the choice-of-law clause's enforceability notwithstanding Plaintiff's initial filing of this suit in California. *See, e.g., Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 64 (2013) ("[W]hen a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a §1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules."); *Preferred Capital Lending v. Chakwin*, 2015 U.S. Dist. LEXIS 137383, at *4-6 (N.D. Ill. Oct. 7, 2015) (applying Illinois choice-of-law rules to case transferred from Nevada pursuant to forum-selection clause) (citing *Atl. Marine*, 571 U.S. at 64).

does not invalidate a choice-of-law provision as contrary to public policy." *Id*. at 868. "Illinois courts have enforced parties' choice-of-law provisions even though the chosen state left plaintiff without recourse under another state's law" and "have held that 'a court should not refuse to apply the law of a foreign state, however unlike its own, unless it is contrary to pure morals and abstract justice, or unless the enforcement would be of evil example and harmful to its people.'" *Id*.

Choice-of-law clauses such as those the parties agreed to in this case are routinely enforced in the Seventh Circuit. *See Hennek*, 125 F. Supp. 2d at 867-68; *Sears*, 2018 U.S. Dist. LEXIS 104209, at *28-29 (dismissing fraud counterclaims brought under North and South Carolina law with prejudice because they were precluded by Illinois choice-of-law provision); *Midway Home Entm't v. Atwood Richards Inc.*, 1998 U.S. Dist. LEXIS 17525, at *5-9 (N.D. Ill. Oct. 27, 1998) (holding New York choice-of-law clause was enforceable and precluded Illinois Consumer Fraud Act claim, even if New York's consumer fraud statute "left the Illinois residents no recourse").

Here, Plaintiff cannot show enforcement of the parties' Illinois choice-of-law clause would violate a fundamental public policy of Illinois or be "contrary to pure morals" or "evil." Indeed, Illinois has its own privacy laws, but Plaintiff chose to pursue claims solely based on California law. Even if, *arguendo*, CIPA "may provide certain statutory rights for a plaintiff which are not available under [Illinois] law," that "does not invalidate [the parties'] choice-of-law provision as contrary to public policy." *Hennek*, 125 F. Supp. 2d at 868. Further, no analysis is needed as to whether Illinois has a "materially greater interest" than the chosen state because the chosen state ***is*** Illinois.

Plaintiff's CIPA claims must therefore be dismissed as contrary to the parties' Illinois choice-of-law clause. *See Sears*, 2018 U.S. Dist. LEXIS 104209, at *28-29; *cf. Crowell v. Audible Inc.*, 2025 U.S. Dist. LEXIS 204445, at *21-27 (W.D. Wash. Oct. 16, 2025) (dismissing putative class complaint alleging defendant violated CIPA and other California laws by sharing plaintiff's online information with Meta, where plaintiff agreed to Washington choice-of-law clause during membership registration).[6] Moreover, Plaintiff's claims are subject to dismissal because Illinois

[6] Hyatt's choice-of-law clause is also enforceable under California law. *See ABF Capital Corp. v. Osley*, 414 F.3d 1061, 1065-66 (9th Cir. 2005) (enforcing New York choice-of-law provision even though plaintiff's claims were "timely under California law, but time-barred under New York law"); *Wainwright*

law would apply even without the choice-of-law clause. *See, e.g., Harman v. Gist*, 2003 U.S. Dist. LEXIS 15297, at *5-6 (N.D. Ill. Aug. 29, 2003) (holding "Illinois law will apply to the invasion of privacy claim" where defendants were Illinois residents and plaintiff was a resident of Missouri).

**d. Plaintiff Has Failed to State a Claim Under Section 631(a)**

Even if California law were applicable, Plaintiff has failed to plausibly allege the elements of a CIPA claim beyond lack of consent. Section 631(a) of CIPA prohibits "three distinct and mutually independent patterns of conduct: [(1)] intentional wiretapping, [(2)] willfully attempting to learn the contents or meaning of a communication in transit over a wire, and [(3)] attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Tavernetti v. Superior Court*, 22 Cal. 3d 187, 192-93 (1978).

In addition, a "fourth basis for liability" exists for anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done" any of the other three 631(a) bases for liability. *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021). Plaintiff's claims against Hyatt focus on the fourth basis, alleging Hyatt "aids, employs, agrees with, or otherwise enables third parties – including [Adobe and Meta] – to eavesdrop on communications sent and received by Plaintiff . . . ." ECF 15 ¶ 2.

Plaintiff has effectively conceded in this litigation that he only has a potentially viable claim for a predicate violation under 631(a)'s second prong, as he is not asserting a claim under the first prong, he admits the third prong requires actual or attempted "use," and the fourth prong relates to "aiding" violations, not predicate violations. ECF 25-2 at 16-17 ("This is sufficient as a pleading matter to establish liability under the second and fourth prongs.").

For "aiding or abetting" claims, the "[p]laintiff must adequately plead that [the third-party] itself engaged in conduct falling under one of the first three prongs of the statute" and that the defendant aided, agreed with, employed, or conspired with that person or entity to commit those

---

*v. Melaleuca, Inc.*, 844 F. App'x 958, 960 (9th Cir. 2021) (affirming enforcement of Idaho choice-of-law provision and stating that "courts 'will not refrain from applying the chosen law merely because this would lead to a different result than would be obtained under the local law of the state of the otherwise applicable law.'") (quoting Restatement (Second) Conflict of Laws § 187, cmt. g).

unlawful acts. *Cody v. Lacoste USA, Inc.*, 2024 U.S. Dist. LEXIS 135843, at *3-4 (C.D. Cal. July 30, 2024) (dismissing CIPA claim where plaintiff failed to adequately allege the first and second clause of CIPA § 631(a)); *Esparza v. Uag Escondido A1 Inc.,* 2024 U.S. Dist. LEXIS 145236, at *5-7 (S.D. Cal. Aug. 5, 2024) (dismissing CIPA claim for failure to allege aiding and abetting). Plaintiff has failed to state a CIPA claim because, as shown below, he does not plausibly allege any predicate violations of 631(a) or that Hyatt aided or abetted any violations.

**i. Section 631(a) Does Not Apply Because Hyatt Was a Party to the Alleged Communications**

Even if California law applies, to state a violation of section 631(a), Plaintiff must allege that a *third party* engaged in the alleged wiretapping. *See In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589, 606-07 (9th Cir. 2020). In the internet context, website operators are parties to the conversation. *Licea v. Am. Eagle Outfitters, Inc.,* 659 F. Supp. 3d 1072, 1081-82 (C.D. Cal. 2023) (holding website operator was a party to the communication and therefore cannot be liable under section 631(a)'s second clause); *Williams v. What If Holdings, LLC,* 2022 U.S. Dist. LEXIS 230732, at *7 (N.D. Cal. Dec. 22, 2022) (explaining that a party to a conversation cannot be an eavesdropper). Where third-party tools are used, the exception's applicability turns on whether the accused technology behaves more like a tape recorder utilized by the party to the conversation or like an eavesdropper "press[ing] up against a door to listen to a conversation." *Am. Eagle*, 659 F. Supp. 3d at 1082 (citation omitted). Courts routinely dismiss CIPA claims where the Plaintiff fails to allege the purported "third party" functioned as an eavesdropper to the communication. *See, e.g., Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 743-44 (N.D. Cal. 2023) (explaining a party to a communication is exempt from liability under section 631(a) for recording its own conversations and therefore cannot be liable).[7]

Here, Hyatt was a party to any communications at issue, as Plaintiff's claims focus directly on his and other "Website users' communications with Hyatt." ECF 15 ¶¶ 3, 19. As to Meta and Adobe, Plaintiff has failed to plausibly allege they were doing anything more than providing Hyatt

[7] *See also Cole v. Quest Diagnostics, Inc.,* 2025 U.S. Dist. LEXIS 7205, at *7-8 (D.N.J. Jan. 14, 2025), aff'd, 2025 U.S. App. LEXIS 29698 (3d. Cir. Nov. 13, 2025) (eavesdropping under CIPA does not occur when visitor's browser communicates directly with the alleged eavesdropper).

with tools for running its business. Notwithstanding Plaintiff's recitation of section 631(a)'s text, scrutiny of the Amended Complaint's allegations reveals only that, per Meta and Adobe promotional materials, certain software they offer has the "capability" to collect and use information in various ways. *Id.* ¶ 32; *see also* ¶¶ 71-73, 91, 107. At most, Plaintiff's allegations show that Meta and Adobe software was used to enhance Hyatt's offerings, consistent with the party exception, not to exploit his data for their own separate purposes. *See, e.g., Williams,* 2022 U.S. Dist. LEXIS 230732, at *7 (session replay technology was "merely a tool that [Defendant] used to record its own communications with plaintiff"); *see also Graham v. Noom, Inc.,* 533 F. Supp. 3d 823, 831-33 (N.D. Cal. 2021); *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1068 (C.D. Cal. 2023); *Licea v. Old Navy, LLC,* 669 F. Supp. 3d 941, 946-47 (C.D. Cal. 2023); *Am. Eagle,* 659 F. Supp. 3d at 1082-84; *Licea v. Cinmar*, LLC, 659 F. Supp. 3d 1096, 1108-09 (C.D. Cal. 2023).

**ii. Plaintiff Fails to Allege Adobe or Meta Read the Content of Communications**

Under section 631(a), the "content" of a communication means "the substance, purport or meaning of [the] communication" or the "intended message conveyed by the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1105-06 (9th Cir. 2014) (interpreting the meaning of "content" under the ECPA); *see also Hammerling v. Google LLC*, 615 F. Supp. 3d 1069 (N.D. Cal. 2022) (explaining CIPA violations analyzed under same standards applied to Federal Wiretap Act (ECPA)). By contrast, "record information" relates to "the characteristics of the message that is generated in the course of [that] communication." *Id.* at 1107. Record information includes "webpage titles, webpage keywords, the date and times of website visits, IP addresses, page visits, purchase intent signals, and add-to-cart actions." *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 944 n.9 (N.D. Cal. 2023). Plaintiff contends information he and other users input to book rooms—such as destination, travel dates, and number of rooms and guests—constitute "communications" under section 631(a) because they include "guest records" per Cal. Civil Code section 53.5. ECF 15 ¶¶ 25-30, 45-53, 76-77. However, at best, these allegations describe

inactionable "record information" in the form of preset options a user must select when inquiring whether a room is even available. *See Zynga*, 750 F.3d at 1106-07.

**iii. Plaintiff Fails to Allege Interception in Transit**

Plaintiff has also failed to plausibly allege that any communications were "intercepted" while "in transit." A communication "must be acquired during transmission," not after the communication has already been received by the recipient and "is in electronic storage." *Konop v. Hawaiian Airlines, Inc.,* 302 F. 3d 868, 878 (9th Cir. 2002) ("This conclusion is consistent with the ordinary meaning of 'intercept,' which is 'to stop, seize, or interrupt in progress or course before arrival.'"). Even for online communications involving almost instantaneous data transfers, plaintiffs must sufficiently allege the information was actually intercepted in transit, not separately provided to a third-party. *See, e.g.*, *Adler v. Community,* 2021 U.S. Dist. LEXIS 201644, at *12-13 (C.D. Cal. Aug. 2, 2021) (dismissing CIPA claim where "there [was] no plausible allegation that Defendant acted to learn the contents of the messages while they were . . . in transit or in the process of being received"); *In re Vizio, Inc.,* 238 F. Supp. 3d 1204, 1227-28 (C.D. Cal. 2017); *NovelPoster v. Javitch Canfield Grp.,* 140 F. Supp. 3d 938, 953 (N.D. Cal. 2014). "[O]nce an [online communication] has been received by the destination server, a communication becomes 'stored' and contemporaneous interception is no longer possible." *Lindsay-Stern v. Garamszegi,* 2016 U.S. Dist. LEXIS 203693, at *9 (C.D. Cal. Oct. 13, 2016) (citation omitted).

Boilerplate allegations of "instant" interception do not suffice. *See, e.g., Am. Eagle*, 659 F. Supp. 3d at 1084-85 (dismissing section 631(a) claims based on "[b]are allegations . . . [that] do not specifically allege that Plaintiffs' messages were intercepted while in transit"); *Hammerling v. Google LLC,* 2022 U.S. Dist. LEXIS 217020, at *30-31 (N.D. Cal. Dec. 1, 2022) (holding allegations that "Google collected 'real-time data' about [] use of third-party apps" insufficient to satisfy "in transit" requirement); *Cody v. Boscov's, Inc*., 2024 U.S. Dist. LEXIS 82332, at *7 (C.D. Cal. May 6, 2024)(dismissing section 631(a) claims because "brief description of [a service provider's] 'secret code . . . does not suggest that [the service provider] necessarily uses that code

to intercept customer communications while they are in transit'"); *Lacoste*, 2024 U.S. Dist. LEXIS 135843, at *5-6 (same).

Here, Plaintiff alleges "The Third Parties' tracking technologies cause the [Website user's] browser to secretly and simultaneously duplicate the user's Website communications, transmitting these communications to the Third Parties' servers . . . within milliseconds." ECF 15 ¶ 32. These allegations fail to specify interception in transit. First, Plaintiff concedes any alleged communications were between users' browsers and third parties' servers, not between Plaintiff and Hyatt. *Id.* Second, Plaintiff acknowledges the purported communications were "duplicate[s]" of users' communications with the Website, not communications en route to Hyatt. *Id.* Plaintiff cannot bring this activity within section 631's ambit merely by parroting the statute's terminology. *See In re Vizio,* 238 F. Supp. 3d at 1228 (dismissing conclusory allegations that data collection occurred "'in real time'"); *Valenzuela v. Keurig Green Mountain*, 674 F. Supp. 3d 751, 758-59 (N.D. Cal. 2023) (dismissing CIPA claims for failure to plead "in transit" element).

#### iv. Plaintiff Fails to Plausibly Allege Aiding or Abetting by Hyatt

For purposes of an aiding or abetting claim, "the defendant must be acting with the third party *in order to* have the third party perform acts that violate the statute." *Smith v. Yeti Coolers, LLC,* 754 F. Supp. 3d 933, 942-43 (N.D. Cal. 2024). Here, Plaintiff pleads no plausible allegations that Hyatt knew Plaintiff had a Facebook account or that, by allegedly installing Meta and Adobe's software, Hyatt intended to facilitate use of Plaintiff's information by Meta or Adobe "for their own purposes." ECF 15 ¶¶ 70-73.

### e. Plaintiff Fails to State a Claim Under Section 632

Plaintiff's section 632 claim also fails for multiple reasons. *First*, Plaintiff makes no allegation that Hyatt eavesdropped on or recorded any communications, let alone that Hyatt did so "intentionally." Rather, Plaintiff's allegations are directed entirely toward "the Third Parties." ECF 15 ¶ 32. *Second*, Plaintiff does not allege Hyatt used an "electronic amplifying or recording device." Cal. Penal Code§ 632(a). Under CIPA, a "device" is defined as a "thing made or adapted for a particular purpose, especially a piece of mechanical or electronic equipment." *Moreno v. S.F.*

*Bay Area Rapid Transit Dist.,* 2017 U.S. Dist. LEXIS 206009, at *12 (N.D. Cal. Dec. 14, 2017). The definition does *not* extend to software. *See Doe v. Microsoft Corp.*, 2023 U.S. Dist. LEXIS 226041, at *18-19 (W.D. Wash. Dec. 19, 2023) ("Because software does not constitute a "device" under the CIPA, Plaintiffs' § 632 claim against Microsoft is deficient."); *In re Google Location Hist. Litig.,* 428 F. Supp. 3d 185, 193 (N.D. Cal. 2019); *see also Moreno,* 2017 U.S. Dist. LEXIS 206009, at *12-13 (N.D. Cal. Dec. 14, 2017). Here, Plaintiff alleges Hyatt implemented Meta and Adobe software, which does not constitute a "device" under CIPA § 632. *Third*, Plaintiff's section 632 claim fails because it does not allege eavesdropping on "confidential" communications. A communication is "confidential" under section 632 only if a party has "an objectively reasonable expectation that the conversation is not being overheard or recorded." *Rodriguez v. Google LLC,* 2021 U.S. Dist. LEXIS 98074, at *23 (N.D. Cal. May 21, 2021). Internet communications are presumptively *not* confidential under section 632. *Campbell v. Facebook Inc.,* 77 F. Supp. 3d 836, 848-49 (N.D. Cal. 2014) (collecting cases); *Rodriguez*, 2021 U.S. Dist. LEXIS 98074, at *23; *see also People v. Stipo*, 195 Cal. App. 4th 664, 669 (2011) ("Internet users have no expectation of privacy in . . . the websites they visit."). The website clicks and entries alleged here easily fall within this presumption. *See, e.g.*, *Rodriguez,* 2021 U.S. Dist. LEXIS 98074, at *23-24 (plaintiffs "must plead unique, definite circumstances rebutting California's presumption against online confidentiality"); *Revitch v. New Moosejaw, LLC*, 2019 U.S. Dist. LEXIS 186955, at *6-7 (N.D. Cal. Oct. 23, 2019) (dismissing section 632 claim because allegations about "form field entries," and inquiries "on a retail website" did not "warrant[] a deviation from this general rule").

Nor can Plaintiff manufacture confidentiality with blanket references to Cal. Civil Code section 53.5, which pertains to "guest records."[8] None of the alleged "content" here—*e.g.*, destination, date, number of rooms—is covered by the statute, and Plaintiff could not reasonably have expected such information was confidential in any event. Moreover, Plaintiff provides no plausible allegations Adobe or Meta used anyone's information in a manner that renders them

---

[8] A "guest record" includes "any record that identifies an individual guest . . . including . . . their name, social security number or other unique identifying number, date of birth, location of birth, address, telephone number, driver's license number, other official form of identification, credit card number, or automobile license plate number." Cal. Civ. Code § 53.5(c).

anything other than contracted "third party service providers" exempted from section 53.5's disclosure restrictions.

**f. Plaintiff's Class Allegations and Claims for Punitive, Equitable and Other Relief Should Be Stricken**

Plaintiff's class allegations are facially overbroad and subject to a motion to strike. The function of a Rule 12(f) motion is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial. *Daly v. Eagleson*, 2021 U.S. Dist. LEXIS 184846, at *29-31 (N.D. Ill. Sep. 27, 2021) (explaining that Rule 12(f) permits striking immaterial matter). Further, under Rule 23(c)(1)(A), when class allegations are "facially and inherently deficient . . . a motion to strike class allegations can be an appropriate device to determine whether the case will proceed as a class action." *See Connectors Realty Grp. Corp. v. State Farm Fire & Cas. Co*., 2021 U.S. Dist. LEXIS 57400, at *5 (N.D. Ill. Mar. 25, 2021) (citation omitted). Courts in the Seventh Circuit have thus repeatedly granted motions to strike inherently overbroad class allegations. *See, e.g., Jones v. BRG Sports, Inc.*, 2019 U.S. Dist. LEXIS 128493, at *11-12, *28 (N.D. Ill. Aug. 1, 2019) (granting motion to strike class allegations "where it [was] clear from the complaint that circumstances warrant a motion to strike class allegations to conserve court and party resources and where the pleadings make clear that the suit cannot satisfy Rule 23") (citation omitted); *Connectors Realty Grp.*, 2021 U.S. Dist. LEXIS 57400, at *4-6 (granting motion to strike overly broad class allegations that included "significant numbers of [potential class members] who have not suffered any injury or harm"); *Vann v. Dolly, Inc.*, 2020 U.S. Dist. LEXIS 31678, at *11-13 (N.D. Ill. Feb. 25, 2020) (same).

Plaintiff's proposed class is facially overbroad and should be stricken. First, while Plaintiff alleges he was injured when he "browsed and booked" hotel rooms on Hyatt's website [ECF 15 ¶ 3], Plaintiff's putative class definition covers "all California residents who have accessed and navigated the website while in California" over an unlimited time period [*id.* ¶ 78]. Accordingly, the putative class is overbroad because it necessarily includes users, such as casual web surfers, who never booked—or even attempted to book—a room (with or without Facebook), and therefore never incurred the injury alleged by Plaintiff, *i.e.*, interception of purportedly confidential "guest

records." Second, CIPA has a one-year limitations period, but the class definition has no temporal limitations—and no reference to tolling of the statute—and therefore necessarily includes users whose claims are time-barred. Cal. Civ. Proc. Code § 340.

Lastly, Plaintiff provides no facts supporting his boilerplate prayer for punitive, actual or compensatory damages, restitution, and injunctive relief, and his counsel stated during a pre-motion conference that Plaintiff was seeking statutory damages only. *See Bobin v. Glick*, 2019 U.S. Dist. LEXIS 239610, at *12-13 (N.D. Ill. Mar. 20, 2019) (striking plaintiff's conclusory punitive damages request ); *Fisher v. TCI*, 2000 U.S. Dist. LEXIS 7150, at *3-4 (N.D. Ill. Apr. 19, 2000) (striking punitive damages request where "there are no facts that support the kind of malice or wantonness that punitive damages are designed to deter"); *Ruffin v. Exel Direct, Inc.*, 2009 U.S. Dist. LEXIS 89579, at *7-9 (N.D. Ill. Sep. 29, 2009) (dismissing claim for injunctive relief because plaintiffs "do not make any allegations" to show they "have standing to seek . . . injunctive relief").

## V. CONCLUSION

For the foregoing reasons, Hyatt requests Plaintiff's claims be dismissed and stricken with prejudice.

Dated: December 11, 2025

Respectfully submitted,

By: */s/ Terence N. Hawley*
Terence N. Hawley

**REED SMITH LLP**
Terence N. Hawley (*Pro Hac Vice*)
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Telephone: (415) 543-8700
Facsimile: (415) 391-8269
Email: thawley@reedsmith.com

*Attorneys for Defendant Hyatt Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Terence N. Hawley*
Terence N. Hawley