**BURSOR & FISHER, P.A.**
Philip L. Fraietta
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
Email: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Stefan Bogdanovich (*Pro Hac Vice*)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: sbogdanovich@bursor.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JUHYUN SO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HYATT CORPORATION,<br><br>Defendant. | Civil Action No.: 1:25-CV-10483<br><br>Hon. Matthew F. Kennelly<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**[1]<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

---

[1] Before this case was transferred, the Parties stipulated to Plaintiff filing an amended complaint to change the Defendant entity from Hyatt Hotels Corporation to Hyatt Corporation. Case No. 2:25-cv-1298-AB-SSC, ECF No. 13 (C.D. Cal. Apr. 4, 2025). The parties agreed that "[i]n the event that Hyatt Corporation files a motion to dismiss pursuant to Rules 12(b), (e), or (f), Plaintiff may file an amended complaint as of right pursuant to Fed. R. Civ. P. 15(a)(1)." *Id*. at 4.

Plaintiff Juhyun So files this class action complaint on behalf of himself and all others similarly situated (the "Class Members") against Hyatt Corporation ("Defendant" or "Hyatt"). Plaintiff brings this action based upon personal knowledge of the facts pertaining to himself, and on information and belief as to all other matters, by and through the investigation of undersigned counsel.

## NATURE OF THE ACTION

1. This is a class action lawsuit brought on behalf of all California residents who have accessed and used hyatt.com (the "Website"), a website that Defendant owns and operates.

2. Defendant aids, employs, agrees with, or otherwise enables third parties – including Adobe Inc. ("Adobe") and Meta Platforms, Inc. ("Meta") (collectively, the "Third Parties") – to eavesdrop on communications sent and received by Plaintiff and Class Members, including communications that contain sensitive and confidential information (i.e., "guest records," as defined by Cal. Civil Code § 53.5). By failing to procure consent before enabling the Third Parties' interception of these communications, Defendant violated the Federal Wiretap Act, as amended by the Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2510, *et seq*.

## PARTIES

3. Plaintiff Juhyun So is a resident and citizen of Los Angeles, California. In or around November 2010, Plaintiff So created a Facebook account. Numerous times, including on or around February 19, 2024; September 21, 2024; and November 20, 2024, Plaintiff So visited Defendant's Website, hyatt.com, on the same browser that he used to access Facebook. Plaintiff So was in California when he visited the Website. Upon accessing the Website, as alleged in greater detail below, Plaintiff So browsed and booked a Hyatt hotel. Each of these communications was intercepted in transit by the Third Parties – as enabled by Defendant – including communications that contained Plaintiff So's confidential "guest records," as defined by

Cal. Civil Code § 53.5.[2]  Neither Defendant nor the Third Parties procured Plaintiff So's prior consent to this interception.

4.  Defendant Hyatt Corporation is a Delaware corporation, headquartered and with its principal place of business in Chicago, Illinois.  Defendant does business across the nation and operates numerous hotels throughout California and this District.[3]

## JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action where there are more than 100 members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one member of the putative Class is a citizen of a state different from Defendant.

6.  The Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District.

7.  Venue is proper in this District pursuant to 28 U.S.C. § 1391 Defendant maintains its principal place of business in this District.

## FACTUAL ALLEGATIONS

**I.  The Federal Wiretap Act**

8.  The Federal Wiretap Act, as amended by the Electronic Communications Privacy Act of 1986, makes it unlawful for a person to intentionally intercept, endeavor to intercept or procure any other person to intercept or endeavor to intercept any wire, oral or electronic communication. 18 U.S.C. § 2511(a).

9.  Under the Federal Wiretap Act, "any person whose wire, oral, or electronic

---

[2] *See* Exhibit A, a report of Plaintiff So's activity off Meta technologies, as described at https://www.facebook.com/help/2207256696182627.  This report evinces activity received from the Website.

[3] https://www.hyatt.com/promo/california-hotels; https://www.hyatt.com/destinations/chicago.

communication is intercepted, disclosed, or intentionally used in violation of [the Federal Wiretap Act] may in a civil action recover from the person or entity … which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2520(a).

10. Persons who have been damaged due to the unauthorized interception, disclosure, and use of their confidential communications are entitled to: (1) damages, in an amount to be determined at trial, assessed as the greater of (a) the sum of the actual damages suffered by Plaintiffs and any profits made by Defendant as a result of the violation, or (b) statutory damages of whichever is the greater of $100 per day per violation or $10,000; (2) appropriate equitable or declaratory relief; and (3) reasonable attorneys' fees and other costs reasonably incurred.

## II. California Guest Records Privacy Statute (California Civil Code § 53.5)

11. As the California Legislature recognized, a "guest record" maintained by an owner or operator of an inn, hotel, motel, lodginghouse, or other similar accommodations is confidential. Such an owner or operator "shall not disclose, produce, provide, release, transfer, disseminate, or otherwise communicate, except to a California peace officer, all or any part of a guest record orally, in writing, or by electronic or any other means to a third party without a court-issued subpoena, warrant, or order." Cal. Civil Code § 53.5(a).

12. Per Cal. Civil Code § 53.5(c):

> "Guest record" for purposes of this section includes any record that identifies an individual guest, boarder, occupant, lodger, customer, or invitee, including, but not limited to, their name, social security number or other unique identifying number, date of birth, location of birth, address, telephone number, driver's license number, other official form of identification, credit card number, or automobile license plate number.

13. Further, the legislative history of § 53.5 indicates:

> (a) In 1972, California voters amended the California Constitution to include the right of privacy among the "inalienable" rights of all people. The amendment established a legal and enforceable right of privacy for every Californian. Fundamental to this right of privacy is the ability of

individuals to control the use of their personal information.

(b) Since California voters approved the right of privacy, the California Legislature has adopted specific mechanisms to safeguard consumer privacy, including the California Consumer Privacy Act of 2018, the Online Privacy Protection Act, the Reader Privacy Act, the Privacy Rights for California Minors in the Digital World Act, and Shine the Light, a California law intended to give Californians the 'who, what, where, and when' of how businesses handle consumers' personal information.

(c) Californians frequently have to disclose their sensitive personal information to third parties in order to accomplish routine activities: apply for a job; apply for housing; raise a child; drive a car or take transportation; or stay at a hotel or motel.

(d) California law has not kept pace with these developments and the personal privacy implications surrounding the collection, use, and protection of personal information by third parties.

(e) Many businesses collect personal information from California consumers. They may know where a consumer lives, how many children a consumer has, where a consumer lives and works, where a consumer travels and where they stay on their trip, how fast a consumer drives, a consumer's personality, sleep habits, biometric and health information, financial information, precise geolocation information, and social networks, to name a few categories.

(f) The unauthorized disclosure of personal information and the loss of privacy can have devastating effects for individuals, including financial fraud, identity theft, unnecessary costs to personal time and finances, destruction of property, harassment, reputational damage, emotional stress, and even potential physical harm.

(g) When Californians leave their homes to travel via bus or stay at lodging establishments throughout their state, they desire assurances that these businesses will respect their privacy and safeguard their personal information from improper disclosure.

(h) Protecting the privacy of personal information promotes consumer confidence and encourages both residents and visitors to travel to and within California and to patronize California businesses.

(i) Therefore, it is the intent of the Legislature to further Californians' right to privacy by ensuring that the personal information disclosed by patrons of lodging establishments and bus companies is used for the intended business purposes and not improperly disclosed.

California S.B. 1194 (September 27, 2018).[4]

14. Here, Website users' communications with Hyatt – made while browsing and booking Hyatt hotels via the Website – contain sensitive and confidential "guest records," as defined by Cal. Civil Code § 53.5.

15. The communications include "record[s] that identif[y] an individual[.]" Cal. Civil Code § 53.5(c). As described *infra*, §§ IV, VI, Defendant enables Adobe to identify individual Website users with the Adobe Experience Cloud Identity Service and/or Adobe Experience Platform Identity Service, which collect and utilize cookie IDs, cross-device IDs, device IDs, email addresses, and/or phone numbers. Defendant enables Meta to identify individual Website users by their respective Facebook accounts, utilizing several cookies, including the c_user; datr; fr; and _fbp cookies. Defendant also enables Meta to identify individual Website users through advanced matching, by which Meta records the contact details Website users provide on the Website (i.e., name, email address, phone number, etc.). These pieces of data collected by Adobe and Meta constitute "record[s] that identif[y] an individual" (Cal. Civil Code § 53.5(c)), as the cookies and other IDs at issue contain "unique identifying number[s]" assigned to Website users (*id.*) and the contact details (i.e., name, email address, phone number, etc.) at issue are sufficient to identify individuals. *Id.*

16. Website users' communications with Hyatt also "identif[y] an individual [as a Hyatt] guest, boarder, occupant, lodger, customer, or invitee[.]" *Id.* The Third Parties intercept Website users' button clicks selecting the destination to which they wish to travel, the desired dates for their trip, the number of rooms they require, the numbers of adults and children who will be traveling, and the particular hotel and room type in which they wish to stay. The Third Parties also

---

[4] https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=201720180SB1194.

intercept the URL of webpages visited by Website users – containing the foregoing communications. These communications "identif[y] an individual [as a Hyatt] guest, boarder, occupant, lodger, customer, or invitee" (Cal. Civil Code § 53.5(c)) because they show that all Website users are "invitees" of Hyatt – individuals with "express or implied invitation to enter or use [Hyatt's] premises."[5] These communications also identify certain Website users (those who complete the booking process) as Hyatt hotel "guests" and "customers."

17.     Thus, the Third Parties – as aided by Defendant – intercepted "guest records," which are confidential, under Cal. Civil Code § 53.5. Moreover, neither of the Third Parties is a legitimate "third-party service provider," as defined by Cal. Civil Code § 53.5(f), because neither of the Third Parties is "an entity contracted to provide services outlined in [a] contract [with Hyatt] that has no independent right to use or share the data beyond the terms of the contract." Rather, the Third Parties have the capability to use the information they wiretap for purposes other than simply providing a recording to Defendant. *See infra*, § VII. Therefore, Defendant's conduct here at issue was not permitted by, *inter alia*, Cal. Civil Code § 53.5(i).

## III.     Overview of Defendant's Website

18.     Defendant owns and operates the Website.  Defendant has integrated the Third Parties' wiretaps into the Website.

19.     On the Website, Website users can, *inter alia*, browse and book Hyatt hotels.  When doing so, Website users provide Defendant with confidential information, including "guest records" under Cal. Civil Code § 53.5.  *See supra* § II.

20.     Unbeknownst to Plaintiff and Class Members, however, Defendant aids, agrees with, employs, or otherwise enables the Third Parties to eavesdrop on those confidential

---

[5] INVITEE, BLACK'S LAW DICTIONARY (11th ed. 2019).

communications using the Third Parties' respective wiretaps, as set out *infra*.

21. Website users' confidential communications are the product of Website users affirmatively entering, and interacting with, information on the Website (*i.e.*, the confidential communications are not procedurally or automatically generated). Instead, as set out below, the confidential communications stem from Website users typing into data fields, conveying responses to questions and prompts, and actively making other selections. All of the foregoing is information created through the intent of Website users: information created by and in response to Website users' communicative inputs; information created by and in response to Website users' intended messages to the Website and Defendant; and information created by and in response to Website users' having conveyed and expressed their respective desires that the Website would supply them with certain, highly personalized, types of information and/or responses.

22. Website users may browse and book Hyatt hotel rooms. To do so, users type and/or select from a list the destination to which they wish to travel. Next, users click the dates for their trip, the number of rooms required, the number of adults and children who will be traveling, and/or special rates for which they are eligible. The Third Parties, as enabled by Defendant, contemporaneously intercept Website users' button clicks selecting such items:



**Website "Screen 1"**

23.     Then, Website users review the Hyatt hotels located in or near their destination and click on a particular hotel to book.



**Website "Screen 2"**

24.     Website users subsequently pick the type of room (i.e., double, queen, king bed, etc.) in which they wish to stay, as well as a particular rate for that room (i.e., "Senior Citizen," "Members Advance Purchase," "Advance Purchase Rate," "Member Rate," or "Standard Rate.").

//

//

//



**Website "Screen 3"**

**Website "Screen 4"**

//

//

25. Finally, Website users check out by typing their personal information (first and last name, email, phone number) and entering their payment information.



**Website "Screen 5"**

## IV. Overview of the Third Parties' Tracking Technologies

26. Adobe and Meta each wiretap the Website with their respective tracking technologies, which Defendant purposefully installed on the Website.

27. The Third Parties' tracking technologies send secret instructions to a Website user's browser, without alerting the individual that this is happening. The trackers then cause the browser to secretly and simultaneously duplicate the user's Website communications, transmitting these communications to the Third Parties' servers alongside additional information about the Website user's identity. This entire process occurs within milliseconds. In other words, when a user communicates with Defendant's Website, those communications are simultaneously and contemporaneously duplicated and sent to the Third Parties at the same time as they are being sent to Defendant.

### A.  Adobe

28.  Adobe wiretaps the Website with trackers associated with the "Adobe Experience Cloud."[6]  Specifically, analysis of the Website reveals that Defendant utilizes Adobe Analytics, Adobe Target, Adobe Audience Manager, and/or the Adobe Experience Cloud Identity Service:[7]



29.  Adobe Analytics[8] offers "real-time insights based on a holistic view of [the]

---

[6] *See* ADOBE, ADOBE EXPERIENCE CLOUD, https://business.adobe.com; ADOBE, DATA INSIGHTS & AUDIENCES, https://business.adobe.com/solutions/data-insights-audiences.html; ADOBE, ADOBE EXPERIENCE CLOUD PRODUCTS, https://business.adobe.com/products/adobe-experience-cloud-products.html; ADOBE, ENTERPRISE DOCUMENTATION, https://experienceleague.adobe.com/en/docs.

[7] *See* ADOBE, IMPLEMENT THE EXPERIENCE CLOUD IN WEBSITES WITH TAGS TUTORIAL, https://experienceleague.adobe.com/en/docs/platform-learn/implement-in-websites/overview.

[8] *See* ADOBE, IMPLEMENT ADOBE ANALYTICS, https://experienceleague.adobe.com/en/docs/analytics/implementation/home.

---

customer[,]"[9] including "complex segmentation and predictive tools for analyzing website traffic[]"; "marketing analytics" that "help[] organizations understand where customers interact with their brands, which channels customers prefer, and which experiences resonate with them[]"; "[a]ttribution [that] lets organizations see how different interactions throughout the customer journey affect conversion[]"; and "[p]redictive analytics [that] uses machine learning and advanced statistical modeling to analyze customer data, find patterns, and predict future behavior[.]"[10]

30. Adobe Target[11] can be used to "[c]reate A/B and multivariate tests to learn the most effective combination of content, layouts, UX, and more through [] websites[.]"[12] With "AI and machine learning, powered by Adobe Sensei, [clients] can test and personalize at scale well beyond what [they've] been able to achieve with manual or rules-driven approaches alone."[13]

31. Adobe Audience Manager[14] "mak[es] it easy to collect commercially relevant information about site visitors, create marketable segments, and serve targeted advertising and content to the right audience."[15] Specifically, Audience Manager collects "raw data … and [] user

---

[9] ADOBE, ADOBE ANALYTICS, https://business.adobe.com/products/analytics/adobe-analytics.html

[10] ADOBE, ANALYTICS USE CASES, https://experienceleague.adobe.com/en/docs/analytics/analyze/admin-overview/use-cases.

[11] *See* ADOBE, ADOBE TARGET DEVELOPER GUIDE, https://experienceleague.adobe.com/en/docs/target-dev/developer/overview.

[12] ADOBE, ADOBE TARGET BENEFITS, https://business.adobe.com/products/target/benefits.html.

[13] *Id.*

[14] *See* ADOBE, IMPLEMENTING AUDIENCE MANAGER, https://experienceleague.adobe.com/en/docs/audience-manager/user-guide/implementation-integration-guides/implement-audience-manager.

[15] ADOBE, AUDIENCE MANAGER OVERVIEW, https://experienceleague.adobe.com/en/docs/audience-manager/user-guide/overview/aam-overview.

interactions on [] websites" that signal "[g]ender"; "[i]nterests"; "[h]ousing [t]ype"; "[l]ocation"; "[s]pending [p]ower"; and more.[16] Audience Manager then "[u]nifies [said] data into audience profiles, [helping advertisers] … [c]reate look-alike models, [and] build audience segments and groups of profiles[.]"[17]

32. The Adobe Experience Cloud Identity Service[18] is used, in conjunction with the Adobe Experience Platform Identity Service, to "piece together a complete picture of [a] customer" by "link[ing] their disconnected identi[fiers,]" which Adobe calls "identities[.]"[19] "Identities" that are collected and stitched together include, *inter alia*: "[c]ookie IDs"[20] such as "the Experience Cloud ID (ECID)"[21] that "identify web browsers"[22]; "[c]ross-device IDs" such as "CRMID" that "identify an individual and [] tie other IDs together"; "[d]evice IDs" such as "IDFA (iPhone and iPad), GAID (Android), and RIDA (Roku)" that "identify hardware devices"; "[e]mail

---

[16] ADOBE, TYPES OF DATA COLLECTED, https://experienceleague.adobe.com/en/docs/audience-manager/user-guide/overview/data-types-collected.

[17] ADOBE, AUDIENCE MANAGER OVERVIEW, https://experienceleague.adobe.com/en/docs/audience-manager/user-guide/overview/aam-overview.

[18] *See* ADOBE, ID SERVICE IMPLEMENTATION GUIDES, https://experienceleague.adobe.com/en/docs/id-service/using/implementation/implementation-guides.

[19] ADOBE, ADOBE EXPERIENCE PLATFORM IDENTITY SERVICE, https://experienceleague.adobe.com/en/docs/experience-platform/identity/home.

[20] ADOBE, IDENTITY NAMESPACE OVERVIEW, https://experienceleague.adobe.com/en/docs/experience-platform/identity/features/namespaces.

[21] ADOBE, ADOBE EXPERIENCE CLOUD IDENTITY SERVICE, https://experienceleague.adobe.com/en/docs/id-service/using/home. *See also* ADOBE, HOW THE EXPERIENCE CLOUD IDENTITY SERVICE REQUESTS AND SETS IDs, https://experienceleague.adobe.com/en/docs/id-service/using/intro/id-request; ADOBE, COOKIES AND THE EXPERIENCE CLOUD IDENTITY SERVICE, https://experienceleague.adobe.com/en/docs/id-service/using/intro/cookies.

[22] ADOBE, IDENTITY NAMESPACE OVERVIEW, https://experienceleague.adobe.com/en/docs/experience-platform/identity/features/namespaces. *See also* ADOBE, ADOBE EXPERIENCE PLATFORM IDENTITY SERVICE, https://experienceleague.adobe.com/en/docs/experience-platform/identity/home ("[t]he browser identifier (such as ECID) [] represents the web browser.").

---

addresses"; and "[p]hone numbers[.]"[23] This data is presented visually in an "identity graph[,]" which is a "map of [the] relationships between [] identities" (i.e., cookie IDs, cross-device IDs, device IDs, email addresses, phone numbers, etc.) "for a single individual[.]"[24] Ultimately, said identity graphs (and the data contained therein) can be used to gain a comprehensive "view of individual customers and their behavior"[25] and identify them "across all applications in Adobe Experience Cloud."[26]

### B. Meta

33. Meta wiretaps the Website with trackers associated with the "Meta Pixel."[27] According to Meta, "[t]he Meta Pixel is a snippet of JavaScript code that allows [clients] to track visitor activity on [their] website[s]. It works by loading a small library of functions which [] can [be] use[d] whenever a site visitor takes an action (called an event) that [a client] want[s] to track (called a conversion)."[28] Meta offers a menu of "standard events" that can be tracked, including what content a visitor views or purchases.[29] Advertisers can also create their own tracking

---

[23] *Id.*

[24] ADOBE, IDENTITY AND IDENTITY GRAPHS OVERVIEW, https://experienceleague. adobe.com/en/docs/platform-learn/tutorials/identities/understanding-identity-and-identity-graphs.

[25] ADOBE, IDENTITY NAMESPACE OVERVIEW, https://experienceleague.adobe.com/en/ docs/experience-platform/identity/features/namespaces.

[26] ADOBE, ECID OVERVIEW, https://experienceleague.adobe.com/en/docs/experience-platform/identity/features/ecid.

[27] META, META PIXEL, https://developers.facebook.com/docs/meta-pixel.

[28] *Id.*

[29] META, SPECIFICATIONS FOR META PIXEL STANDARD EVENTS, https://www.facebook.com/business/help/402791146561655. *See also* META, STANDARD EVENTS, https://developers.facebook.com/docs/meta-pixel/reference.

---

parameters by building a "custom event."[30]  Thus, the Meta Pixel helps "understand[] the actions people take on [a] website."[31]

34.     The Meta Pixel "relies on Facebook cookies, which enable [Meta] to match [] website visitors to their respective Facebook User accounts."[32]  Additionally, "[w]ith advanced matching, [website operators] can send [Meta] hashed customer information along with [] Meta Pixel events, which can help … match more of the conversions that happen on your website to people on Meta."[33]

35.     This is highly useful for marketing and advertising.  Specifically, the Meta Pixel can be used to help "measure ad effectiveness"; "define custom audiences for ad targeting"; and support "Advantage+ catalog ads campaigns[.]"[34]

36.     With respect to measuring ad effectiveness, "[t]rack[ing ] website visitors' actions[,] also known as conversion tracking[,] ... can be used to … calculate [] return[s] on ad investment[s]."[35]  "In [the] Meta Ads Manager, [website operators] can see how many conversions happened as a result of [their] Meta ads."[36]  This includes "cross-device reporting, which lets [advertisers] see cross-device conversions across apps and the web (for example, if a customer

---

[30] META, ABOUT STANDARD AND CUSTOM WEBSITE EVENTS, https://www.facebook.com/business/help/964258670337005; *see also* META, APP EVENTS API, https://developers.facebook.com/docs/marketing-api/app-event-api/.

[31] *Id.*

[32] META, META PIXEL GET STARTED, https://developers.facebook.com/docs/meta-pixel/get-started.

[33] META, ABOUT ADVANCED MATCHING FOR WEB, https://www.facebook.com/business/help/611774685654668?id=1205376682832142.

[34] META, META PIXEL, https://developers.facebook.com/docs/meta-pixel.

[35] META, CONVERSION TRACKING, https://developers.facebook.com/docs/meta-pixel/implementation/conversion-tracking.

[36] META, USE CONVERSION TRACKING TO MEASURE RESULTS, https://www.facebook.com/business/help/339239069606476.

sees an ad for a product on their mobile phone, but decides to buy it later on their desktop computer)."[37]

37. A "custom audience is an ad targeting option"[38] that can be used by advertisers, like Defendant, "to find people most likely to respond to [their] ad[s]."[39] Clients can "[c]reate [an] online audience based on the traits of who [they] want to see [their] ad[s], and narrow down [their] ad[s'] audience[s] by interests, gender or location and use ad targeting to find the people most likely to take action. Once [an] ad starts running, [Meta's] system will learn who is engaging with it and, over time, narrow [the] audience [to help] reach more of the right people."[40] Advertisers can target, *inter alia*, "[n]ew customers with specific interests or from a specific location"; "[p]eople who have already shown an interest in [a client's] business"; and "[p]eople who share interests with [a client's] current customers[]" (i.e., "Lookalike Audience[s]").[41]

38. "Advantage+ catalog ads are dynamically created by populating an ad template with product information found in a data feed. This allows [Meta clients] to create thousands of ads without having to configure each of them individually."[42] Clients "can also use Advantage+ catalog ads to target visitors based on how they have interacted with [their] website in the past."[43]

## V. Defendant Aids, Agrees with, Employs, or Otherwise Enables the Third Parties to Wiretap Californians' Communications

### A. Adobe

---

[37] *Id.*

[38] META, ABOUT CUSTOM AUDIENCES, https://www.facebook.com/business/help/744354708981227.

[39] META, AD TARGETING, https://www.facebook.com/business/ads/ad-targeting.

[40] *Id.*

[41] *Id.*

[42] META, META PIXEL FOR ADVANTAGE+ CATALOG ADS, https://developers.facebook.com/docs/meta-pixel/get-started/advantage-catalog-ads.

[43] *Id.*

39.    Adobe, as enabled by Defendant, contemporaneously intercepts the following Website communications.

40.    As shown by the red highlights in the above excerpt of the Website's transmissions, Adobe intercepts the destination selected by users (here, "San Diego, California"). As shown by the yellow highlights, Adobe intercepts the desired trip dates selected by users (here, "checkinDate=2025-02-19" and "'checkoutDate=2025-02-20"). As shown by the green

highlights, Adobe intercepts the numbers of rooms and guests selected by users (here, "rooms=1"; "adults=2"; and "kids=0"). As shown by the blue highlights, Adobe intercepts the special rates selected by users (here, "senior"). These communications are the product of button clicks on Website Screen 1.

```
▼ context: {,…}
  ▼ address: {,…}
      referringUrl: ""
      url: "https://www.hyatt.com/shop/rooms/crqzs?checkinDate=2025-02-19&checkoutDate=2025-02-20&rooms=1&adults=2&kids=0&rate=Senior"
    ▶ browser: {host: "www.hyatt.com",…}
      channel: "web"
    ▶ clientHints: {mobile: false, platform: "Windows",…}
    ▶ screen: {width: 1920, height: 1080, orientation: "landscape", colorDepth: 24, pixelRatio: 1}
      timeOffsetInMinutes: -300
      userAgent: "Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/131.0.0.0 Safari/537.36 Edg/13
    ▶ window: {width: 988, height: 689}
  ▼ execute: {pageLoad: {parameters: {pagedata.locale: "en-US",…}}}
    ▼ pageLoad: {parameters: {pagedata.locale: "en-US",…}}
      ▼ parameters: {pagedata.locale: "en-US",…}
          audiences.hyatt_main_226: "User is US Based (OneTrust)"
          audiences.hyatt_main_227: " Qualify for CAPI"
          badges.30: true
          badges.10006: true
          badges.10046: true
          badges.10080: true
          badges.10521: true
          badges.10571: true
          badges.10631: true
          entity.brand: Hyatt Place
          entity.category: "Property"
          entity.id: "prop_crqzs"
          flags.16972: true
          flags.17159: true
          flags.17161: true
          flags.17163: true
          flags.17165: true
          flags.17167: true
          pagedata.accessibility_check: false
          pagedata.booking_window: "34"
          pagedata.date_checkin: "2025-02-19"
          pagedata.date_checkout: "2025-02-20"
          pagedata.event_string: "scOpen,event1"
          pagedata.full_page_test_group: "rates_modal_v3_test_group;review_section_test_group;member_savings_control"
          pagedata.gp_login_status: "Logged-out"
          pagedata.hotel_brand: "Hyatt Place"
          pagedata.hotel_city: "Vista"
          pagedata.hotel_country: "United States"
          pagedata.hotel_country_code: "US"
          pagedata.hotel_name: Hyatt Place San Diego/Vista-Carlsbad
          pagedata.hotel_postal_code: "92081"
          pagedata.hotel_spirit_code: "crqzs"
          pagedata.hotel_state: "California"
          pagedata.locale: "en-US"
          pagedata.number_of_adults: 2
          pagedata.number_of_children: 0
          pagedata.number_of_nights: 1
          pagedata.number_of_rooms: "1"
          pagedata.number_of_travelers: 2
          pagedata.page_type: "room_types"
          pagedata.page_url: "/shop/rooms/crqzs?checkinDate=2025-02-19&checkoutDate=2025-02-20&rooms=1&adults=2&kids=0&rate=Senior"
          pagedata.product_category: "hotel"
          pagedata.qb_use_points: "standard"
          pagedata.rearch_flag: true
          pagedata.review_sort_selection: "default"
          pagedata.review_stars_count: 4
          pagedata.reviews_count: 848
          pagedata.sc_page_title: "Resv:Flow1:Corp:Rooms:DailyRoomDisplay"
          pagedata.site_id: "hyhyattcom"
          pagedata.special_rate: "Senior"
```

**Request Payload**

AQB=1&ndh=1&pf=1&et=1&t=16%2F0%2F2025%2014%3A37%3A16%204%20300&d.&nsid=0&jsonv=1&.d&sdid=5863B144BAC4B3BF-5B03732C29D95F6D&mid=14
71980201459477395107106492642495751B&aamlh=9&ce=UTF-8&ns=hyatt&pageName=Resv%3AFlow1%3ACorp%3ARooms%3ADailyRoomDisplay&g=https%3
A%2F%2Fwww.hyatt.com%2Fshop%2Frooms%2Fcrqzs%3FcheckinDate%3D2025-02-19%26checkoutDate%3D2025-02-20%26rooms%3D1%26adults%3D2%26kid
s%3D0%26rate%3DSenior&cc=USD&server=hyatt.com&events=scOpen%2Cevent1&products=hotel%3Bcrqzs%3B1%3B%3B%3B&aamb=RKhpRz8krg2tLO6pguX
Wp5olkAcUniQYPHaMWWgdJ3xzPWQmdj0y&l3=addOns%3Afalse%2CawardBooking%3Atrue%2CrateAfterTax%3Afalse%2CreleaseSuiteUpgradeRedemption%
3Atrue%2CreleaseSingleFreeNightRedemption%3Afalse%2CreleaseGOHRedemption%3Atrue%2CreleaseClubAccessRedemption%3Atrue%2CreleaseCoa
chMarkRatesModal%3Afalse%2CreleaseChaseOfferMay%3Atrue%2CreleaseVrcRedesign%3Afalse%2CreleaseViewDetails%3Afalse%2CreleaseAllInPr
icingPhaseII%3Alocales%3A%5Ben-US%2Cfr-FR%5D%2Cregions%3A%5BNorth%20America%2CAm%C3%A9rique%20du%20Nord%2CLatin%20America%2CAm%C
3%A9rique%20latine%2CCaribbean%2CCara%C3%AFbes%5D%2CtaxCodes%3A%5BRF%2COF%2CPC%2CHF%5D%2CreleaseViewReviewRatings%3Atest%2Creleas
eBrandRedesign%3Atrue%2CreleaseCancellationAndDepositCopy%3Aa%2CreleaseMemberSavingsRoomsAndRates%3Acontrol%2CreleaseFuelIntegrat
ion%3Afalse%2CreleaseTempAccessibleQB%3Atrue&c4=crqzs&v5=1&c6=Hyatt%20Place&v6=Logged-out&c9=hyatt.com&v9=Hyatt%20Place&c10=Visit
orAPI%20Present&c11=room_types&c20=&c21=0193dc397a7c0059c427e48783680507d001607500bd0&v21=hyatt.com&v24=2025-02-19&v25=2025-02-20
&c26=en-US&v26=en-US&c27=hyatt.com%3AResv%3AFlow1%3ACorp%3ARooms%3ADailyRoomDisplay&c28=en-US%3AResv%3AFlow1%3ACorp%3ARooms%3ADai
lyRoomDisplay&c30=2&c32=2&c34=Vista&c35=California&c36=US&c41=Resv%3AFlow1%3ACorp%3AHotelDisplay&v41=Resv%3AFlow1%3ACorp%3AHotelD
isplay&c44=Group%202&v44=Resv%3AFlow1%3ACorp%3ARooms%3ADailyRoomDisplay&v47=34&c48=Resv%3AFlow1%3ACorp%3ARooms%3ADailyRoomDisplay
&c50=%2Fshop%2Frooms%2Fcrqzs%3FcheckinDate%3D2025-02-19%26checkoutDate%3D2025-02-20%26rooms%3D1%26adults%3D2%26kids%3D0%26rate%3D
Senior&c52=14719802014594773951071064926424957518&c53=hyhyattcom&c55=01-16-2025%3B14%3A37%3A16&v55=01-16-2025%3B14%3A37%3A16&c56=
Full-Site&c58=isRightToLeft%3Afalse%2CallInPricing%3Atrue&c61=2.8.70&v68=0193dc397a7c0059c427e48783680507d001607500bd0&c69=rates_
modal_v3_test_group%3Bpreview_section_test_group%3Bmember_savings_control&v69=rates_modal_v3_test_group%3Bpreview_section_test_grou
p%3Bmember_savings_control&c70=4&c73=f6b87aaa-f118-46bd-9d2d-98d69127f920-57518-274&v91=Mozilla%2F5.0%20%28Windows%20NT%2010.0%3
B%20Win64%3B%20x64%29%20AppleWebKit%2F537.36%20%28KHTML%2C%20like%20Gecko%29%20Chrome%2F131.0.0.0%20Safari%2F537.36%20Edg%2F131.
0.0.0&v100=true&v101=Group%202&v104=crqzs&v125=standard&v127=Senior&v134=0.9665971303963983_1737054631612&v155=US&s=1920x1080&c=2
4&j=1.6&v=N&k=Y&bw=988&bh=689&mcorgid=D7B27FF452128BAA0A490D4C%40AdobeOrg&AQE=1

41. As shown by the purple highlights in the above excerpt of the Website's transmissions, Adobe intercepts the particular Hyatt hotel selected by users (here, "Hyatt Place San Diego/Vista-Carlsbad"). These communications are the product of button clicks on Website Screen 2.

AQB=1&ndh=1&pf=1&et=1&t=29%2F0%2F2025%2016%3A6%3A32%203%20300&d.&nsid=0&jsonv=1&.d&sdid=4E3D837646F9CD7D-1730291B4E7861C3&mid=694175915855638
70122130304090808999408&aamlh=9&ce=UTF-8&ns=hyatt&pageName=Resv%3AFlow1%3ACorp%3ARooms%3ARoomRateModal&g=https%3A%2F%2Fwww.hyatt.com%2Fshop%2
Frooms%2Fcrqzs%3FcheckinDate%3D2025-02-19%26checkoutDate%3D2025-02-20%26rooms%3D1%26adults%3D2%26kids%3D0%26rate%3DSenior&cc=USD&server=hyat
t.com&aamb=RKhpRz8krg2tLO6pguXWp5olkAcUniQYPHaMWWgdJ3xzPWQmdj0y&v2=KING&12=rooms%20coachmark&l3=addOns%3Afalse%2CawardBooking%3Atrue%2CrateAf
terTax%3Afalse%2CreleaseSuiteUpgradeRedemption%3Atrue%2CreleaseSingleFreeNightRedemption%3Afalse%2CreleaseGOHRedemption%3Atrue%2CreleaseClubA
ccessRedemption%3Atrue%2CreleaseCoachMarkRatesModal%3Afalse%2CreleaseChaseOfferMay%3Atrue%2CreleaseVrcRedesign%3Afalse%2CreleaseViewDetails%3
Afalse%2CreleaseAllInPricingPhaseII%3Aregions%3A%5BNorth%20America%2CAm%C3%A9rique%20du%20Nord%2CLatin%20America%2CAm%C3%A9rique%20latine%2CC
aribbean%2CCara%C3%AFbes%5D%2CtaxCodes%3A%5BRF%2COF%2CPC%2CHF%5D%2Clocales%3A%5Ben-US%2Cfr-FR%5D%2CreleaseViewReviewRatings%3Atest%2CreleaseB
randRedesign%3Atrue%2CreleaseCancellationAndDepositCopy%3Aa%2CreleaseMemberSavingsRoomsAndRates%3Acontrol%2CreleaseFuelIntegration%3Afalse%2C
releaseTempAccessibleQB%3Atrue&c4=crqzs&c9=hyatt.com&c10=VisitorAPI%20Present&c11=ratetypes_modal&c20=&c21=0194aaa68b4400213050ba65946a0507d0
01607500bd0&v21=hyatt.com&v24=2025-02-19&v25=2025-02-20&c27=hyatt.com%3AResv%3AFlow1%3ACorp%3ARooms%3ARoomRateModal&c30=2&c32=2&c34=Vista&c35
=California&c36=US&c38=rooms%20coachmark&c41=Resv%3AFlow1%3ACorp%3ARooms%3ARoomRateModal&v41=Resv%3AFlow1%3ACorp%3ARooms%3ARoomRateModal&c44=
Group%202&v44=Resv%3AFlow1%3ACorp%3ARooms%3ARoomRateModal&v46=roomcard%3Acontent&v47=21&c48=Resv%3AFlow1%3ACorp%3ARooms%3ARoomRateModal&c49=r
oomcard%3Acontent&c50=%2Fshop%2Frooms%2Fcrqzs%3FcheckinDate%3D2025-02-19%26checkoutDate%3D2025-02-20%26rooms%3D1%26adults%3D2%26kids%3D0%26ra
te%3DSenior&c52=69417591585563870122130304090808999408&c53=hyhyattcom&c55=01-29-2025%3B16%3A6%3A32&v55=01-29-2025%3B16%3A6%3A32&c56=Full-Site
&c58=isRightToLeft%3Afalse%2CallInPricing%3Atrue&c61=2.8.70&v68=0194aaa68b4400213050ba65946a0507d001607500bd0&c69=member_savings_control&v69=
member_savings_control&c73=eebce3a7-aaff-47ea-84a2-d93388bc74e3-99408-244&v77=2&v91=Mozilla%2F5.0%20%28Windows%20NT%2010.0%3B%20Win64%3B%20x6
4%29%20AppleWebKit%2F537.36%20%28KHTML%2C%20like%20Gecko%29%20Chrome%2F132.0.0.0%20Safari%2F537.36%20Edg%2F132.0.0.0&v100=true&v101=Group%202
&v102=display_roomrate_modal&v104=crqzs&v125=standard&v127=Senior&v134=0.5231727484174642_1738183990590&v155=US&c.&a.&activitymap.&page=http
s%3A%2F%2Fwww.hyatt.com%2Fshop%2Frooms%2Fcrqzs%3FcheckinDate%3D2025-02-19%26checkoutDate%3D2025-02-20%26rooms%3D1%26adults%3D2%26kids%3D0%26r
ate%3DSenior&link=King%20Bed%20%28With%20Sofa%20Bed%29%20Rooms%20should%20always%20feel%2C%20well%2C%20roomy%20and%20we%20made%20no%20excepti
on%20here%20with%20separate%20sleeping%20and%20living%20a&region=room-cards-section-panel&.activitymap&.a&.c&s=1920x1080&c=24&j=1.6&v=N&k=Y&b
w=1860&bh=1291&mcorgid=D7B27FF452128BAA0A490D4C%40AdobeOrg&AQE=1

42. As shown by the brown highlight in the above excerpt of the Website's transmissions, Adobe intercepts the room type selected by users (here, "King%20Bed%20%28 With%20Sofa%20Bed" as in king bed with sofa bed). These communications are the product of button clicks on Website Screen 3.

activitymap.:

page: https://www.hyatt.com/search/hotels/en-US/San%20Diego%2C%20California%2C%20United%20States?checkinDate=2025-02-19&checkoutDate=2025-02-20&rooms =1&adults=2&kids=0&rate=Senior

link: VIEW RATES

region: main

.activitymap:

.a:

&activitymap.&page=https%3A%2F%2Fwww.hyatt.com%2Fshop%2Frooms%2Fcrqzs%3FcheckinDate%3D2025-02-19%26checkoutDate%3D2025-02-20%26rooms%3D1%26ad ults%3D2%26kids%3D0%26rate%3DSenior&link=SELECT%20%26%20BOOK&region=room-cards-section-panel&.activitymap&.a&.c&s=1920x1080&c=24&j=1.6&v=N&k= Y&bw=1860&bh=1291&mcorgid=D7B27FF452128BAA0A490D4C%40AdobeOrg&AQE=1

o%29%20Chrome%2F132.0.0.0%20Safari%2F537.36%20Edg%2F132.0.0.0&v100=true&v101=Group%202&v104=crqzs&v134=0.5715878506637722_1738187266641&v155= US&pe=lnk_o&pev2=roomratemodal-BookButton&c.&a.&activitymap.&page=Resv%3AFlow1%3ACorp%3ARooms%3ARoomRateModal&link=BOOK&region=room_rates_mod al&pageIDType=1&.activitymap&.a&.c&s=1920x1080&c=24&j=1.6&v=N&k=Y&bw=1860&bh=1291&mcorgid=D7B27FF452128BAA0A490D4C%40AdobeOrg&AQE=1

43. As shown by the orange highlights in the above excerpts of the Website's transmissions, Adobe intercepts miscellaneous other selections by users (here, "VIEW RATES"; "SELECT%20%26%20BOOK" as in Select & Book; and "BOOK"). These communications are the product of button clicks on Website Screens 2, 3, and 4.

### B. Meta

44. Meta, as enabled by Defendant, contemporaneously intercepts the following Website communications.

id: 623497044413616

ev: SubscribedButtonClick

dl: https://www.hyatt.com/

rl:

if: false

ts: 1737054742849

cd[buttonFeatures]: {"classList":"b-text_weight-normal b-ml6","destination":"https://www.hyatt.com/","id":"","imageUrl":"","innerText":"San Di ego, California, United States","numChildButtons":0,"tag":"a","type":null,"name":""}

cd[buttonText]: San Diego, California, United States

id: 623497044413616

ev: SubscribedButtonClick

dl: https://www.hyatt.com/

rl:

if: false

ts: 1737054794330

cd[buttonFeatures]: {"classList":"","destination":"https://www.hyatt.com/HyattSearch","id":"","imageUrl":"url(\"https://www.hyatt.com/hds/stat ic/migrate/0.27.0/images/calendar/cal-arrive-hover@2x.png\")","innerText":"19","numChildButtons":0,"tag":"button","type":"button","nam e":"","value":""}

id: 623497044413616
ev: SubscribedButtonClick
dl: https://www.hyatt.com/
rl:
if: false
ts: 1737054808154
cd[buttonFeatures]: {"classList":"","destination":"https://www.hyatt.com/HyattSearch","id":"","imageUrl":"url(\"https://www.hyatt.com/hds/static/migrate/0.27.0/images/calendar/cal-depart-hover@2x.png\")","innerText":"20","numChildButtons":0,"tag":"button","type":"button","name":"","value":""}

id: 623497044413616
ev: SubscribedButtonClick
dl: https://www.hyatt.com/
rl:
if: false
ts: 1737054882033
cd[buttonFeatures]: {"classList":"b-text_copy-3 be-text-body-1","destination":"javascript:void(0)","id":"","imageUrl":"url(\"data:image/svg+xml;base64,PD94bWwgdmVyc2lvbj0iMS4wIiBlbmNvZGluZz0iVVRGLTgiIHN0YW5kYWxvbmU9Im5vIj8+Cjxzdmcgd2lkdGg9IjEycHgiIGhlaWdodD0iMTJweCIgdmlld0JveD0iMCAwIDEyIDEyIiB2ZXJzaW9uPSIxLjEiIHhtbG5zPSJodHRwOi8vd3d3LnczLm9yZy8yMDAwL3N2ZyIgeG1sbnM6eGxpbms9Imh0dHA6Ly93d3cudzMub3JnLzE5OTkveGxpbmsiHHhtbG5zOnNrZXRjaD0iaHR0cDovL3d3dy5ib2hlbWlhbmNvZGluZy5jb20vc2tldGNoL25zIj4KICAgIDwhLS0gR2VuZXJhdG9yOiBza2V0Y2ggMy40ICgxNTU3NSkgLSBodHRwOi8vd3d3LmJvaGVtaWFuY29kaW5nLmNvbS9za2V0Y2ggLS0+CiAgICA8dGl0bGU+cGF0aC1jb3B5LTE8L3RpdGxlPgogICAgPGRlc2M+Q3JlYXRlZCB3aXRoIFNrZXRjaC48L2Rlc2M+CiAgICA8ZGVmcz48L2RlZnM+CiAgICA8ZyBpZD0iUGFnZS0xIiBzdHJva2U9Im5vbmUiIHN0cm9rZS13aWR0aD0iMSIgZmlsbD0ibm9uZSIgZmlsbC1ydWxlPSJldmVub2RkIiBza2V0Y2g6dHlwZT0iTVNQYWdlIj4KICAgICAgICA8cGF0aCBkPSJNMzE2LjA3Niw3Ljk0MCBMMzAwLjMwMC4wMCwwLjAwMCBMMCw5LjAwMCwwLjAwMCIgaWQ9InBhdGgtY29weS0xIiBmaWxsPSIjMDM3MjI4IiBza2V0Y2g6dHlwZT0iTVNTaGFwZUdyb3VwIj48L3BhdGg+CiAgICA8L2c+Cjwvc3ZnPg==\")","innerText":"1 Room, 2 Guests","numChildButtons":0,"tag":"a","type":null,"name":""}

id: 623497044413616
ev: SubscribedButtonClick
dl: https://www.hyatt.com/
rl:
if: false
ts: 1737054922806
cd[buttonFeatures]: {"classList":"b-text_copy-3 be-text-body-1","destination":"javascript:void(0)","id":"","imageUrl":"url(\"data:image/svg+xml;base64,PHN2ZyB4bWxucz0iaHR0cDovL3d3dy53My5vcmcvMjAwMC9zdmciIHdpZHRoPSI4IiBoZWlnaHQ9IjciPjxwYXRoIGZpbGw9IiMyODI4MjgiIGZpbGwtcnVsZT0iZXZlbm9kZCIgZD0iTTMuOTk5IDcuMDA3IDAgMGg3Ljk5OXoiLz48L3N2Zz4=\")","innerText":"Senior","numChildButtons":0,"tag":"a","type":null,"name":""}
cd[buttonText]: Senior

id: 623497044413616
ev: Search
dl: https://www.hyatt.com/search/hotels/en-US/San%20Diego%2C%20California%2C%20United%20States/checkinDate=2025-02-19&checkoutDate=2025-02-20&rooms=1&adults=2&kids=0&rate=Senior
rl:
if: false
ts: 1737055053048
cd[content_ids]: ["sanrs","sanis","sanxs","crqzs","sansw","jolla","sanjo","sanas","sanen","sanpa","tijzt","sando"]
cd[search_string]: San Diego, California, United States
cd[url]: /search/hotels/en-US/San%20Diego%2C%20California%2C%20United%20States
cd[search_city]: San Diego
cd[search_country]: United States
cd[search_state]: California
cd[page_type]: search_results
cd[checkin_weekday]: Wednesday
cd[checkin_date]: 2025-02-19
cd[checkout_date]: 2025-02-20
cd[num_adults]: 2
cd[num_children]: 0
cd[number_of_rooms]: 1
cd[number_of_travelers]: 2
cd[sc_page_title]: Resv:Flow1:Corp:HotelDisplay

45.     As shown by the red highlights in the above excerpts of the Website's transmissions, Meta intercepts the destination selected by users (here, "San Diego, California, United States"). As shown by the yellow highlights, Meta intercepts the desired trip dates selected by users (here, "2025-02-19" and "2025-02-20"). As shown by the green highlights, Meta intercepts the numbers of rooms and guests selected by users (here, "1 Room, 2 Guests" with "2" adults and "0" children). As shown by the blue highlights, Meta intercepts the special rates selected by users (here, "Senior"). These communications are the product of button clicks on Website Screen 1.

```
id: 623497044413616
ev: AddToCart
dl: https://www.hyatt.com/shop/rooms/crqzs?checkinDate=2025-02-19&checkoutDate=2025-02-20&rooms=1&adults=2&kids=0&rate=Senior
rl:
if: false
ts: 1737056237075
cd[content_ids]: ["crqzs"]
cd[content_name]: [ Hyatt Place San Diego/Vista-Carlsbad ]
cd[url]: /shop/rooms/crqzs
cd[language]: en-US
cd[product_brand_id]: Hyatt Place
cd[product_id]: crqzs
cd[country]: US
cd[hotel_country_code]: US
cd[region]: California
cd[city]: Vista
cd[page_type]: room_types
cd[checkin_weekday]: Wednesday
cd[checkin_date]: 2025-02-19
cd[checkout_date]: 2025-02-20
cd[num_adults]: 2
cd[num_children]: 0
cd[number_of_rooms]: 1
cd[number_of_travelers]: 2
cd[hotel_name]: Hyatt Place San Diego/Vista-Carlsbad
```

46.     As shown by the purple highlights in the above excerpt of the Website's transmissions, Meta intercepts the particular Hyatt hotel selected by users (here, "Hyatt Place San Diego/Vista-Carlsbad"). These communications are the product of button clicks on Website Screen 2.

```
id: 623497044413616
ev: PageView
dl: https://www.hyatt.com/shop/rooms/crqzs?checkinDate=2025-02-19&checkoutDate=2025-02-20&rooms=1&adults=2&kids=0&rate=Senior
rl:
if: false
ts: 1737056821664
cd[url]: /shop/rooms/crqzs
cd[product_brand_id]: Hyatt Place
cd[country]: US
cd[region]: California
cd[city]: Vista
cd[page_type]: ratetypes_modal
cd[checkin_weekday]: Wednesday
cd[checkin_date]: 2025-02-19
cd[checkout_date]: 2025-02-20
cd[num_adults]: 2
cd[num_children]: 0
cd[number_of_travelers]: 2
cd[room_type]: KING
```

47. As shown by the brown highlight in the above excerpt of the Website's transmissions, Meta intercepts the room type selected by users (here, "KING"). These communications are the product of button clicks on Website Screen 3.

```
id: 623497044413616
ev: SubscribedButtonClick
dl: https://www.hyatt.com/shop/rooms/crqzs?checkinDate=2025-02-19&checkoutDate=2025-02-20&rooms=1&adults=2&kids=0&rate=Senior
rl:
if: false
ts: 1737056966775
cd[buttonFeatures]: {"classList":"b-button select-combination-button b-text_weight-normal b-button_width-full@xs b-button_width-fu
ll@sm b-mb0@md b-button-shop b-mb2","destination":"https://www.hyatt.com/en-US/payment/details","id":"","imageUrl":"","innerTex
t":"BOOK","numChildButtons":0,"tag":"button","type":"submit","name":"","value":""}
cd[buttonText]: BOOK
```

48. As shown by the orange highlights in the above excerpts of the Website's transmissions, Meta intercepts miscellaneous other selections by users (here, "BOOK"). This communication is the product of a button click on Website Screen 4.

## VI. Defendant Enables the Third Parties to Pair the Above Data with Users' Identities

49. As discussed *supra*, § IV, the Adobe and Meta tracking technologies at issue can pair wiretapped data with website users' identities.

50. The tracking technologies achieve this, at least in part, through cookies. A cookie is a "small text file (up to 4KB) created by a website that is stored in the user's computer either

temporarily for that session only or permanently in storage (persistent cookie)."[44]  Persistent cookies can be used to "track user behavior across different sites. They store information such as geographic location, device specifications, and specific actions taken on the website."[45]

### A.    Adobe

51.    Through the Adobe Experience Cloud Identity Service, in conjunction with the Adobe Experience Platform Identity Service, Adobe can identify individual website users with, *inter alia*, cookie IDs, cross-device IDs, device IDs, email addresses, and phone numbers.

52.     The following image confirms that Defendant has enabled the Adobe Experience Cloud Identity Service on the Website.



### B.    Meta

53.    Through Facebook cookies, Meta can identify individual website users by their respective Facebook accounts.  Through advanced matching, Meta can also identify individual website users by the personal information they provide on websites (i.e., name, email address, phone number, etc.).

54.    The following image confirms that, when a user accesses the Website while logged into Facebook, the Meta tracking technologies on the Website compel that user's browser

---

[44] PC MAGAZINE, COOKIE TABLE, https://www.pcmag.com/encyclopedia/term/cookie.

[45] COOKIEBOT, WHAT ARE TRACKING COOKIES AND HOW DO THEY WORK?, https://www.cookiebot.com/en/tracking-cookies/.

to transmit several cookies, including the c_user; datr; fr; and _fbp[46] cookies:

| Name | Value | Domain |
|------|-------|--------|
| _fbp | ███████████████████████ | .hyatt.com |
| fr | ███████████████████████ | .facebook.com |
| xs | ███████████████████████ | .facebook.com |
| c_user | ████████ | .facebook.com |
| sb | █████████████████ | .facebook.com |
| presence | ██████████████████████ | .facebook.com |
| wd | ██████ | .facebook.com |
| datr | ██████████████ | .facebook.com |

55.     The c_user cookie contains, at least, the user's unencrypted Facebook ID.[47]  The c_user cookie has a lifespan of three hundred sixty-five days.[48]

56.     The datr cookie contains, at least, a value that uniquely identifies a browser.[49]  The datr cookie has a lifespan of four hundred days.[50]

57.     The fr cookie contains, at least, a value that uniquely identifies a browser and the

---

[46] The Meta Pixel uses both first- and third-party cookies.  A first-party cookie is "created by the website the user is visiting"—*i.e.*, the Website. PC MAGAZINE, FIRST-PARTY COOKIE, https://www.pcmag.com/encyclopedia/term/first-party-cookie.  A third-party cookie is "created by a website with a domain name other than the one the user is currently visiting"—*i.e.*, Facebook. PC MAGAZINE, THIRD-PARTY COOKIE, https://www.pcmag.com/encyclopedia/term/third-party-cookie.  The _fbp cookie is always transmitted as a first-party cookie. A duplicate _fbp cookie is sometimes sent as a third-party cookie, depending on whether the browser has recently logged into Facebook.  Pictured here and in the *infra* two images is the _fbp cookie, sent as a first-party cookie.

[47] MICROSOFT, COOKIE COMPLIANCE, https://learn.microsoft.com/en-us/dynamics365/commerce/cookie-compliance ("Cookie[:] c_user[.] Description[:] Cookie contains the user ID of the currently signed-in user.").

[48] FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/.

[49] *Id.* ("'Datr' is a unique identifier for your browser[.]").

[50] *Id.*

user's encrypted Facebook ID.[51]  The fr has a lifespan of ninety days.[52]

58.    The _fbp cookie contains, at least, a value that uniquely identifies a browser.[53]  The

_fbp has a lifespan of ninety days.[54]

59.    When a Website visitor's browser has recently logged out of an account, Facebook

compels the visitor's browser to send a smaller set of cookies, including the datr, fr, and _fbp

cookies:



| Name | Value | Domain | ▼ |
|------|-------|--------|---|
| _fbp | ██████████████████ | .hyatt.com | |
| wd | ████████ | .facebook.com | |
| sb | ██████████████ | .facebook.com | |
| fr | ██████████████████ | .facebook.com | |
| datr | ████████████████ | .facebook.com | |

60.    No matter the circumstances, Facebook compels the visitor's browser to transmit

the _fbp cookie:



| Name | Value | Domain | ▲ |
|------|-------|--------|---|
| _fbp | ████████████████████ | .hyatt.com | |

61.    Defendant  also  uses  "Advanced  Matching."    With  Advanced  Matching,

---

[51] DATA PROTECTION COMMISSIONER, FACEBOOK IRELAND LTD, REPORT OF RE-AUDIT (Sept. 21, 2012), http://www.europe-v-facebook.org/ODPC_Review.pdf ("The first part of the cookie is a browser ID, used to identify the web browser. The second part of the cookie is an encrypted version of the logged in user's Facebook ID.").

[52] FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/.

[53] *Id.* ("Cookie[:] _fbp[.] Description[:] These cookies identify browsers for businesses using our Meta Products for the purposes of providing advertising and site analytics services."). *See also* FACEBOOK, CUSTOMER INFORMATION PARAMETERS, https://developers.facebook.com/docs/marketing-api/conversions-api/parameters/customer-information-parameters#fbp ("The Facebook browser ID value is stored in the _fbp browser cookie[.]").

[54] FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/.

---

Defendant's Meta Pixels "look for recognizable form field and other sources on [the] website that contain information such as first name, last name and email."[55] That information is recorded, "along with the event, or action, that took place."[56]

62. Specifically, as part of Advanced Matching, Defendant enabled "Automatic Advanced Matching." That means Defendant configured the pixel to scan form fields containing a user's email address, first name, last name, phone number, gender, zip code, city and state.[57] The highlighted line below shows that Defendant enabled Automatic Matching.

```
fbq.loadPlugin("automaticmatchingforpartnerintegrations");
instance.optIn("623497044413616", "AutomaticMatchingForPartnerIntegrations", true);
config.set(null, "batching", {
    "batchWaitTimeMs": 10,
    "maxBatchSize": 10
```

63. Thus, Meta, as enabled by Defendant, contemporaneously intercepts users' names, email address, phone numbers, and/or other personal details using the Meta Pixel on various pages of the Website. Although these personal details are "hashed,"[58] the reality is that, even in hashed form, they are traceable to individuals.[59]

---

[55] META, ABOUT ADVANCED MATCHING FOR WEB, https://www.facebook.com/business/help/611774685654668.

[56] *Id.*

[57] *See* META, ADVANCED MATCHING, https://developers.facebook.com/docs/meta-pixel/advanced/advanced-matching; META, ABOUT ADVANCED MATCHING FOR WEB, https://www.facebook.com/business/help/611774685654668.

[58] *Id.*

[59] *See, e.g.*, FEDERAL TRADE COMMISSION, DOES HASHING MAKE DATA "ANONYMOUS"?, https://www.ftc.gov/policy/advocacy-research/tech-at-ftc/2012/04/does-hashing-make-data-anonymous ("[H]ashing is vastly overrated as an 'anonymization' technique … the casual assumption that hashing is sufficient to anonymize data is risky at best, and usually wrong."); FEDERAL TRADE COMMISSION, NO, HASHING STILL DOESN'T MAKE YOUR DATA ANONYMOUS, https://www.ftc.gov/policy/advocacy-research/tech-at-ftc/2024/07/no-hashing-still-doesnt-make-your-data-anonymous ("[H]ashes aren't 'anonymous' and can still be used to identify users, and their misuse can lead to harm. Companies should not act or claim as if hashing personal information renders it anonymized."); STEVEN ENGLEHARDT ET AL., I NEVER SIGNED UP FOR THIS! PRIVACY IMPLICATIONS OF EMAIL TRACKING, https://petsymposium.org/2018/files/papers/issue1/paper42-2018-1-source.pdf ("[H]ashing of PII, including emails, is not a meaningful privacy

64.     Defendant discloses this information to Meta so that Meta can better match Website visitors to their Facebook profiles, thereby helping Defendant "[i]ncrease the number of attributed conversions," "[i]ncrease [their] Custom Audience size," and "[d]ecrease the cost per conversion."[60]

## VII.    The Third Parties Use Californians' Data for their Own Purposes

65.     When the Third Parties use their respective wiretaps on Website users' communications, the wiretaps are not like tape recorders or "tools" used by one party to record the other.   Instead, the Third Parties – separate and distinct entities from the parties to the conversations—use the wiretaps to eavesdrop upon, record, extract data from, and analyze conversations to which they are not parties.  The Third Parties, themselves, collect the contents of said conversations.  That data is then analyzed by the Third Parties before being provided to any entity that was a party to the conversations (like Defendant).

66.     The Third Parties each have the capability to use the contents of conversations they collect through their respective wiretaps for their own purposes.

67.     In the "Adobe Experience Cloud Terms of Use," Adobe states: "You grant Adobe a worldwide, royalty-free, non-exclusive, transferable, and sublicensable license to adapt, display, distribute, modify, perform, publish, reproduce, translate, and use Your Materials for the purpose

---

protection. This is folk knowledge in the security community, but bears repeating."); MARTECH, FTC PRIVACYCON: YOUR EMAIL ADDRESS IS LEAKING AND VULNERABLE, https://martech.org/ftc-privacycon-email-address-leaking-vulnerable ("Hashing is an algorithmic process that turns [information] into a gibberish label[.] … Although gibberish, it's unique, so it can be employed as an anonymized identifier. It's supposed to be one-way, meaning that you can't turn the gibberish back into the [original form]. Wrong, says Englehardt and his colleagues.").

[60] META, ABOUT ADVANCED MATCHING FOR WEB, https://www.facebook.com/business/help/611774685654668.

of operating, marketing and improving the Services and enabling your use of the Services."[61] Adobe defines "Materials" as "any materials provided by You, Adobe, or a third party, including without limitation any (a) user material, including usage and telemetry activities; (b) reports, text, code, data, documents, images, photographs, graphics, audio, videos, or webcasts; (c) products; or (d) Software."[62] Thus, Adobe has the capability to use the wiretapped data for purposes other than simply providing a recording to Defendant, including, but not limited to, operating, marketing, and improving its services.

68.     In its "Meta Business Tools Terms,"[63] Meta confirms that it has the capability to use information it collects for purposes other than recording it and conveying it to Defendant.  For instance, Meta can use the information it collects "to promote safety and security on and off the Meta Products, for research and development purposes and to maintain the integrity of and to provide and improve the Meta Products."[64]  Further, Meta can "disclose [] Campaign Reports or Analytics … to [] third part[ies,] … [if] they have been combined with Campaign Reports and Analytics from numerous other third parties and [the advertiser using the Meta Business Tools has had its] identifying information [] removed from the combined Campaign Reports and Analytics."[65]  And Meta can use the information it collects to "improve the effectiveness of ad delivery, [] determine the relevance of ads to people[,] … [and] personalize the features and content (including ads and recommendations) that [Meta] show[s] people on and off [] Meta

---

[61] ADOBE, ADOBE EXPERIENCE CLOUD TERMS OF USE, https://www.adobe.com/content/dam/cc/en/ legal/servicetou/Experience_Cloud_TOU_en_WW_20220608.pdf.  *See also* ADOBE, LICENSES AND TERMS, https://www.adobe.com/legal/licenses-terms.html.

[62] *Id.*

[63] META, META BUSINESS TOOLS TERMS, https://m.facebook.com/legal/businesstech.
[64] *Id.*

[65] *Id.*

Products."[66]  Thus, Meta has the capability to use the wiretapped data for purposes other than simply providing a recording to Defendant, including, but not limited to, its own research and development; ad delivery; feature and content personalization; and product improvement, provision, and securement.

## VIII. Defendant Never Received Users' Consent to Disclose their Confidential Communications to the Third Parties

69.    Crucially, neither Defendant nor the Third Parties procure prior consent from Californians for Adobe or Meta to engage in this wiretapping.

70.    Nowhere on the Website does Defendant provide notice of its privacy-related practices that is prominently displayed, designed to attract Website users' attention, and distinctive in appearance.

71.    Nowhere on the Website does Defendant adequately disclose the tracking here at issue, including that:

- The Third Parties, as enabled by Defendant, intercept the contents of Californians' communications on the Website, in real time.

- These communications include, but are not limited to, "guest records," which are affirmatively entered by users on the Website and confidential under Cal. Civil Code § 53.5(c).  Namely, the Third Parties intercept Website users' button clicks selecting the destination to which they wish to travel, the desired dates for their trip, the number of rooms they require, the numbers of adults and children who will be traveling, and the particular hotel and room type in which they wish to stay.  The Third Parties also intercept the URL of webpages visited by Website users – containing the foregoing communications.

- This information is not anonymized because Defendant enables the Third Parties to link users' communications with personal information that reveals their identities.  Such personal information includes cookie IDs/the values contained in cookies, cross-device IDs, device IDs, email addresses, and/or phone numbers, which constitute "record[s] that identif[y] an individual[.]"  Cal. Civil Code § 53.5(c).

---

[66] *Id.*

72.     Nowhere on the Website does Defendant request or receive Website users' affirmative consent *prior to* enabling the Third Parties' tracking technologies.  Analysis of the Website reveals that the Third Parties' tracking technologies are active as soon as the Website loads, before Website users could even conceivably be put on notice or provide affirmative consent.

## CLASS ALLEGATIONS

73.     Plaintiff seeks certification of the following class: all persons in the United States who, during the class period, accessed and navigated the Website (the "Class").

74.     Plaintiff reserves the right to modify the Class definition, including by using subclasses, as appropriate based on further investigation and discovery obtained in the case.

75.     The following people are excluded from the Class: (1) any Judge presiding over this action and members of her or her family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest (including current and former employees, officers, or directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

76.     **Numerosity:** The number of persons within the Class is substantial and believed to amount to thousands, if not millions of persons.  It is, therefore, impractical to join each member of the Class as a named plaintiff.  Further, the size and relatively modest value of the claims of the individual members of the Class render joinder impractical.  Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the

merits of this litigation. Moreover, the Class is ascertainable and identifiable from Defendant's records.

77. **Commonality and Predominance:** There are well-defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary between members of the Class, and which may be determined without reference to the individual circumstances of any Class member, include, but are not limited to, the following: whether Defendant violated the Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*, and whether Plaintiff and the proposed Class members are entitled to damages, reasonable attorneys' fees, pre-judgment interest and costs of this suit.

78. **Typicality:** The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other class members, visited the Website and had his confidential electronic communications intercepted and disclosed to the Third Parties.

79. **Adequate Representation:** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiff and his counsel.

80. **Superiority:** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of members of the Classes. Each individual member of the Class may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial

system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## CAUSES OF ACTION

### COUNT I
### Violation of the Federal Wiretap Act,
### 18 U.S.C. § 2510, *et seq.*
### (On Behalf of Plaintiff and the Nationwide Class)

81. Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein and brings this Count individually and on behalf of the members of the Class.

82. The Federal Wiretap Act, as amended by the Electronic Communications Privacy Act of 1986, makes it unlawful for a person to intentionally intercept, endeavor to intercept or procure any other person to intercept or endeavor to intercept any wire, oral or electronic communication. 18 U.S.C. § 2511(a).

83. Further, the Federal Wiretap Act makes it unlawful for a person to intentionally disclose, or endeavor to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral or electronic communication in violation of the Federal Wiretap Act. 18 U.S.C. § 2511(1)(c).

84. Further, the Federal Wiretap Act makes it unlawful for a person to intentionally use, or endeavor to use, the contents of any wire, oral, or electronic communication, knowing or

having reason to know that the information was obtained through the interception of a wire, oral or electronic communication in violation of the Federal Wiretap Act. 18 U.S.C. § 2511(1)(d).

85. The Federal Wiretap Act protects both the sending and receiving of communications.

86. Among other ways, a violation of the Federal Wiretap Act occurs if a person:

(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication; [or]

(b) intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication[.]

U.S.C. § 2511.

87. Under the Federal Wiretap Act, "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of [the Federal Wiretap Act] may in a civil action recover from the person or entity ... which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2520(a).

88. In violation of the Federal Wiretap Act, 18 U.S.C. § 2511(1)(a), Defendant intentionally procured third-parties Adobe and Meta to intercept and endeavor to intercept the electronic communications of Plaintiff and Class Members, namely the transmissions of the confidential PII and guest records of Plaintiff and Class Members via the Website. At all relevant times, Defendant knew that by integrating and embedding Adobe's and Meta's tracking technologies, Adobe and Meta would intercept the electronic communications of users of the Website.

89. In violation of the Federal Wiretap Act, 18 U.S.C. § 2511(1)(a), Defendant intentionally intercepted, and endeavored to intercept, the electronic communications of Plaintiff and Class Members, namely the transmissions of the confidential PII and guest records of Plaintiff and Class Members via the Website.

90.     In violation of the Federal Wiretap Act, 18 U.S.C. § 2511(1)(c), Defendant disclosed, and endeavored to disclose, the contents of the electronic communications of Plaintiff and Class Members to generate profits and increase revenues by, *inter alia*, marketing and advertising based on an analysis of the intercepted communications, knowing and having reason to know that the information was obtained through the unlawful interception of the electronic communications of Plaintiff and Class Members, in violation of the Federal Wiretap Act, as alleged herein. Indeed, Defendant procured Adobe and Meta to surreptitiously intercept the communications of Plaintiff and Class Members without their consent, thereby knowing that the information from those communications was obtained in violation of the Federal Wiretap Act.

91.     In violation of the Federal Wiretap Act, 18 U.S.C. § 2511(1)(d), Defendant used, and endeavored to use, the contents of the electronic communications of Plaintiff and Class Members to generate profits and increase revenues by, *inter alia*, marketing and advertising based on an analysis of the intercepted communications, knowing and having reason to know that the information was obtained through the unlawful interception of the electronic communications of Plaintiff and Class Members, in violation of the Federal Wiretap Act, as alleged herein. Indeed, Defendant procured Adobe and Meta to surreptitiously intercept the communications of Plaintiff and Class Members without their consent, thereby knowing that the information from those communications was obtained in violation of the Federal Wiretap Act.

92.     The following items constitute "devices" within the meaning of 18 U.S.C. § 2510(5):

(a)     The codes and programs Adobe and Meta used to track Plaintiff's and Class Members' communications while they were navigating the Website;

(b)     Plaintiff's and Class Members' browsers and mobile applications;

(c)     Plaintiff's and Class Members' computing and mobile devices;

(d)    The codes and programs used by Google to effectuate its tracking and interception of Plaintiff's and Class Members' communications while they were using a browser or application to visit Defendant's Website; and

(e)    The plan Adobe and Meta carried out to effectuate their tracking and interception of the Plaintiff's and Class Members' communications while they were using Defendant's Website.

93.    The guest records communication information that Defendant permitted Adobe and Meta to intercept, and that Defendant otherwise disclosed to Adobe and Meta, via Defendant's integration of the Adobe and Meta tracking technologies on the Website—including but not limited to: namely, the location (*e.g.*, San Diego, California), the name of the particular Hyatt hotel (*e.g.*, Hyatt Place San Diego/Vista-Carlsbad), the desired trip dates (*e.g.*, February 19, 2025 to February 20, 2025), the number of rooms, adults, and/or children (*e.g.*, one room, two adults, zero kids), any special rates (*e.g.*, Senior), the room type (*e.g.*, King Bed), and the fact that users actually booked a hotel stay—constitutes the contents of electronic communication because it includes detailed URL requests and button clicks that contain information Plaintiff and the Classes actively inputted into the Website.

94.    The transmissions described above were "transfer[s] of signs, signals, writing, … data, [and] intelligence of [some] nature transmitted in whole or in part by a wire, radio, electromagnetics, photoelectronic, or photooptical system that affects interstate commerce[,]" and were therefore "electronic communications" within the meaning of 18 U.S.C. § 2510(12).

95.    Adobe and Meta were not authorized parties to the communications between Plaintiff and Class Members, on the one hand, and Defendant, on the other, because Plaintiff and Class Members did not know that these third parties were surreptitiously intercepting the data at issue and did not knowingly send any communications to Adobe and Meta.

96.     Plaintiff and Class Members did not consent to Defendant's conduct of: (1) procuring Adobe and Meta to intercept and endeavor to intercept their confidential communications; (2) intercepting their confidential communications; (3) disclosing their confidential communications under circumstances that violated the Federal Wiretap Act; and (4) using their confidential communications under circumstances that violated the Federal Wiretap Act.

97.     Defendant intentionally intercepted and endeavored to intercept Plaintiff's and Class Members' communications for the purpose of committing a tortious or criminal act in violation of the Constitution or laws of the United States or of any State—namely, violation of the California Guest Records Privacy Statute, Cal. Civil Code § 53.5(a).

98.     The California Guest Records Privacy Statute prohibits disclosing or otherwise communicating all or any part of a guest record to a third party (except to a California peace officer) without a court-issued subpoena, warrant, or order. *See* Cal. Civil Code § 53.5(a).

99.     Specifically, Cal. Civ. Code § 53.5(a) states:

> [A]n innkeeper, hotelkeeper, motelkeeper, lodginghouse keeper, or owner or operator of an inn, hotel, motel, lodginghouse, or other similar accommodations, or any employee or agent thereof, who offers or accepts payment for rooms, sleeping accommodations, or board and lodging, or other similar accommodation, shall not disclose, produce, provide, release, transfer, disseminate, or otherwise communicate, except to a California peace officer, all or any part of a guest record orally, in writing, or by electronic or any other means to a third party without a court-issued subpoena, warrant, or order.

100.    The California Guest Records Privacy Statute defines "[g]uest record" as:

> **[A]ny** record that identifies an individual guest, boarder, occupant, lodger, customer, or invitee, **including, but not limited to**, their name, social security number **or other unique identifying number**, date of birth, location of birth, address, telephone number, driver's license number, other official form of identification, credit card number, or automobile license plate number.

Cal. Civil Code § 53.5(c) (emphasis added).

101.    Here, Website users' communications with Defendant—made while browsing and booking hotel stays via the Website—contain sensitive and confidential "[g]uest records," as defined by Cal. Civil Code § 53.5(c).

102.    The Third Parties intercept Website users' button clicks selecting the destination to which they wish to travel, the desired dates for their trip, the number of rooms they require, the numbers of adults and children who will be traveling, the particular hotel and room type in which they wish to stay, and the fact that users actually booked a hotel stay. The Third Parties also intercept the URL of webpages visited by Website users containing the foregoing communications.

103.    First, these communications are records that "identif[y] an individual guest, boarder, occupant, lodger, customer, or invitee, including, but not limited to, their *name, ... other unique identifying number*, … [or] *telephone number*…." *Id.* (emphasis added). As explained *supra* § VI, the Adobe and Meta tracking technologies at issue can pair wiretapped data with website users' identities through various ways. Defendant enables Adobe to identify individual Website users with the Adobe Experience Cloud Identity Service, in conjunction with the Adobe Experience Platform Identity Service, through cookie IDs, cross-device IDs, device IDs, email addresses, and phone numbers. *See supra* ¶¶ 15, 51-52. Defendant also enables Meta to identify individual Website users through Facebook cookies and advanced matching, such that Meta can identify individual website users by their respective Facebook accounts and by the personal information they provide on website, which in this case, includes the names, email addresses, and phone numbers they input while booking a room at a Hyatt hotel. *See supra* ¶ 25, Screen 5 and ¶¶ 53-64.

104.    Because these identifying pieces of information are sent in addition to the fact that

particular website user has actually paid for a room a particular room at a particular Hyatt hotel, they thereby "identif[y] an individual [as a Hyatt] guest, boarder, occupant, lodger, customer, or invitee" per Cal. Civil Code § 53.5(c). *See supra* ¶ 16.

105.     When users book a room through the www.hyatt.com website, the communications show that all Website users are "invitees" of Hyatt—individuals with "express or implied invitation to enter or use [Hyatt's] premises."[67]   Defendant owns the domain "hyatt.com[.]"[68] Defendant's hotel website operates as the digital equivalent of a physical hotel lobby; Website users who enter www.hyatt.com to inquire about availability and book a stay parallels walking through the front doors of a physical Hyatt location to ask about room options.  Users entrust their guest records to Defendant online just as they would offline.

106.     These communications also identify Website users who actually completed the booking process (such as Plaintiff) as Hyatt hotel "guests" and/or "customers."

107.     Defendant was not acting under color of law in intercepting and endeavoring to intercept Plaintiff's and Class Members' communications.

108.     Moreover, neither of the Third Parties is a legitimate "third-party service provider," as defined by Cal. Civil Code § 53.5(f), because neither of the Third Parties is "an entity contracted to provide services outlined in [a] contract [with Hyatt] that has no independent right to use or share the data beyond the terms of the contract."  Rather, the Third Parties have the capability to use the information they wiretap for purposes other than simply providing a recording to Defendant.  Therefore, Defendant's conduct here at issue was not permitted by, *inter alia*, Cal.

---

[67] INVITEE, Black's Law Dictionary (11th ed. 2019).

[68] *See*
https://www.godaddy.com/whois/results.aspx?itc=dlp_domain_whois&domain=www.hyatt.com
(Defendant "Hyatt Corporation" is listed as the "Registrant Contact[.]").

Civil Code § 53.5(i).

109. Defendant, Adobe, and Meta intercepted and endeavored to intercept the communications of Plaintiff and Class Members made via the Website while those communications were in transit, as opposed to being in storage. Indeed, Defendant, Adobe, and Meta intercepted and endeavored to intercept the communications of Plaintiff and Class Members in real time and contemporaneously with Plaintiff and Class Members engaging in those communications.

110. After intercepting the communications, Adobe and Meta used the contents of the communications to provide Defendant with analytics, marketing, and advertising services, as well as for their own business purposes.

111. As a result of the above actions, Plaintiff and Class Members have been damaged due to the unauthorized interception, disclosure, and use of their confidential communications in violation of 18 U.S.C. § 2520. As such, Plaintiff and Class Members are entitled to: (1) damages, in an amount to be determined at trial, assessed as the greater of (a) the sum of the actual damages suffered by Plaintiff and any profits made by Defendant as a result of the violation, or (b) statutory damages of whichever is the greater of $100 per day per violation or $10,000; (2) appropriate equitable or declaratory relief; and (3) reasonable attorneys' fees and other costs reasonably incurred.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For a determination that this action is a proper class action;

(b) For an order certifying the Class, naming Plaintiff as representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(c)     For an order declaring that Defendant's conduct violates the statute referenced herein;

(d)     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(e)     For actual, compensatory, statutory, and/or punitive in amounts to be determined by the Court and/or jury;

(f)     For prejudgment interest on all amounts awarded;

(g)     For an order of restitution and all other forms of equitable monetary relief;

(h)     For injunctive relief as pleaded or as the Court may deem proper; and

(i)     For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses, and costs of suit.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated:  December 31, 2025                    Respectfully submitted,

**BURSOR & FISHER, P.A**.

By:     */s/ Philip L. Fraietta*
                Philip L. Fraietta

Philip L. Fraietta
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656

**BURSOR & FISHER, P.A.**
Stefan Bogdanovich (*Pro Hac Vice*)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: sbogdanovich@bursor.com

*Attorneys for Plaintiff*