**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JUHYUN SO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HYATT CORPORATION,<br><br>Defendant. | Civil Action No.: 1:25−cv−10483<br><br>Hon. Matthew F. Kennelly |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT HYATT CORPORATION'S MOTION TO DISMISS AND STRIKE PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 3

III. LEGAL AUTHORITY ..... 5

IV. ARGUMENT ..... 5

A. Plaintiff's ECPA Claim Fails Because Hyatt Was a Party to the Alleged Communications ..... 5

1. Plaintiff's Allegations Based on California's Guest Record Statute Fail to Satisfy the "Crime-Tort" Exception ..... 6

2. Plaintiff's Crime-Tort Theory Relies on California Law and Is Foreclosed by the Illinois Choice-of-Law Clause ..... 8

B. Plaintiff Consented to the Alleged Tracking Through His Registration for Hyatt's Rewards Program ..... 10

C. Plaintiff Consented to the Alleged Tracking Again Through Hyatt's Booking Interface and Other Means ..... 12

D. Plaintiff Has Otherwise Failed to Plausibly Allege the Elements of an ECPA Claim ..... 15

1. Plaintiff Fails to Plausibly Allege Interception in Transit ..... 15

2. Plaintiff Fails to Plausibly Allege Adobe or Meta Intercepted the Content of Communications ..... 16

3. Plaintiff Fails to Plausibly Allege Procurement by Hyatt ..... 17

E. Plaintiff's Class Allegations and Claims for Punitive, Equitable and Other Relief Should Be Stricken ..... 17

V. CONCLUSION ..... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied Waste Transp., Inc. v. John Sexton Sand & Gravel Corp.*,
2016 U.S. Dist. LEXIS 82001 (N.D. Ill. June 23, 2016) ........................................................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................................5

*Benessere Inv. Grp., LLC v. Swider*,
2024 U.S. Dist. LEXIS 198469 (S.D. Fla. Oct. 31, 2024)......................................................16

*Bobin v. Glick*,
2019 U.S. Dist. LEXIS 239610 (N.D. Ill. Mar. 20, 2019)......................................................20

*Bonny v. Soc'y of Lloyd's*,
3 F.3d 156 (7th Cir. 1993) ....................................................................................................9

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)....................................................................................................5

*Cole v. Quest Diagnostics, Inc.*,
2025 U.S. Dist. LEXIS 7205 (D.N.J. Jan. 14, 2025), *aff'd*, 2025 U.S. App. LEXIS 29698 (3d Cir. Nov. 13, 2025) ..................................................................................16

*Coleman Cable Sys. v. Shell Oil Co.*,
1996 U.S. Dist. LEXIS 13090 (N.D. Ill. Aug. 28, 1996) .......................................................11

*Connectors Realty Grp. Corp. v. State Farm Fire & Cas. Co.*,
2021 U.S. Dist. LEXIS 57400 (N.D. Ill. Mar. 25, 2021)........................................................18

*Cosby v. United Air Lines*,
1996 U.S. Dist. LEXIS 5464 (N.D. Ill. Apr. 24, 1996) .........................................................19

*Crano v. Sojern, Inc.*,
2025 U.S. Dist. LEXIS 185031 (N.D. Cal. Sept. 19, 2025) .....................................................7

*Daly v. Eagleson*,
2021 U.S. Dist. LEXIS 184846 (N.D. Ill. Sept. 27, 2021) .....................................................17

*Davenport v. A.C. Davenport & Son Co.*,
903 F.2d 1139 (7th Cir. 1990) .............................................................................................19

*Doe v. Chestnut Health Sys.*,
2025 U.S. Dist. LEXIS 107627 (C.D. Ill. June 6, 2025) .......................................................15

*Doe v. Genesis Health Sys.*,
2025 U.S. Dist. LEXIS 65328 (C.D. Ill. Mar. 18, 2025) .......... 6

*In re DoubleClick Inc. Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) .......... 6

*Elzeftawy v. Pernix Grp., Inc.*,
477 F. Supp. 3d 734 (N.D. Ill. 2020) .......... 18

*Fisher v. TCI*,
2000 U.S. Dist. LEXIS 7150 (N.D. Ill. Apr. 19, 2000) .......... 20

*Forby v. One Techs.*,
LP, 2016 U.S. Dist. LEXIS 46141 (S.D. Ill. Apr. 5, 2016) .......... 11

*Gilbert v. Ill. State Bd. of Educ.*,
591 F.3d 896 (7th Cir. 2010) .......... 11

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) .......... 15

*In re Google Inc. Gmail Litig.*,
2014 U.S. Dist. LEXIS 36957 (N.D. Cal. Mar. 18, 2014) .......... 6

*Hannant v. Sarah D. Culbertson Mem'l Hosp.*,
2025 U.S. Dist. LEXIS 161412 (C.D. Ill. Aug. 20, 2025) .......... 8

*Jones v. BRG Sports, Inc.*,
2019 U.S. Dist. LEXIS 128493 (N.D. Ill. Aug. 1, 2019) .......... 18, 19

*Juhyun So v. Hyatt Corp.*,
2025 U.S. Dist. LEXIS 211395 (C.D. Cal. Aug. 25, 2025) .......... 1

*Kravetz v. Bridge To Life, Ltd.*,
2019 U.S. Dist. LEXIS 250128 (N.D. Ill. Mar. 8, 2019) .......... 18

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023) .......... 5

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) .......... 10, 11

*Mazzorana v. Kelly*,
2022 U.S. Dist. LEXIS 74664 (N.D. Ill. Apr. 25, 2022) .......... 15

*Mohamad v. Cent. Fla. Tax & Acct., Inc.*,
2025 U.S. Dist. LEXIS 185117 (M.D. Fla. Sept. 22, 2025) .......... 16

*Nguyen v. Abbott Lab'ys, Inc.*,
2025 U.S. Dist. LEXIS 153248 (N.D. Ill. Aug. 8, 2025) .......... 5, 8, 15

*Oberstein v. Live Nation Entm't, Inc.*,
60 F.4th 505 (9th Cir. 2023) ....................11

*Peters v. Mundelein Consol. High Sch. Dist. No. 120*,
2022 U.S. Dist. LEXIS 23118 (N.D. Ill. Feb. 9, 2022) ....................15

*Rodriguez v. ByteDance, Inc.*,
2025 U.S. Dist. LEXIS 168885 (N.D. Ill. Aug. 29, 2025)....................16

*Roe v. Amgen Inc.*,
2024 U.S. Dist. LEXIS 101754 (C.D. Cal. June 5, 2024) ....................5

*Ruffin v. Exel Direct, Inc.*,
2009 U.S. Dist. LEXIS 89579 (N.D. Ill. Sept. 29, 2009) ....................20

*S. Beach Bev. Co. v. Rush Bev. Co.*,
2004 U.S. Dist. LEXIS 2477 (N.D. Ill. Feb. 19, 2004) ....................11

*Sandy Point Dental, P.C. v. Cin. Ins. Co.*,
20 F.4th 327 (7th Cir. 2021) ....................2

*Shahnaz Zarif v. Hwareh.com, Inc.*,
789 F. Supp. 3d 880 (S.D. Cal. 2025)....................5

*Shefts v. Petrakis*,
954 F. Supp. 2d 769 (C.D. Ill. 2013) ....................17

*Snyder v. G6 Hosp. LLC*,
2025 U.S. Dist. LEXIS 71792 (C.D. Cal. Apr. 14, 2025) ....................7

*Stein v. Edward-Elmhurst Health*,
2025 U.S. Dist. LEXIS 31273 (N.D. Ill. Feb. 21, 2025) ....................6

*Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*,
902 F.3d 735 (7th Cir. 2018) ....................19

*United States v. Eady*,
648 F. App'x 188 (3d Cir. 2016) ....................5

*United States v. Harris*,
531 F.3d 507 (7th Cir. 2008) ....................11

*Valentine v. Wideopen W. Fin., LLC*,
288 F.R.D. 407 (N.D. Ill. 2012)....................17

*Vann v. Dolly, Inc.*,
2020 U.S. Dist. LEXIS 31678 (N.D. Ill. Feb. 25, 2020) ....................18

*In re Vizio, Inc.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ....................16

*WTM, Inc. v. Hennek*,
125 F. Supp. 2d 864 (N.D. Ill. 2000) ....................................................................................9

*Zak v. Bose Corp.*,
2019 U.S. Dist. LEXIS 54871 (N.D. Ill. Mar. 31, 2019)....................................................5, 6

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......................................................................................16, 17

**Statutes**

18 U.S.C. § 2510.........................................................................................................4, 15, 16

18 U.S.C. § 2511...................................................................................................................5, 6

18 U.S.C. § 2520.....................................................................................................................19

Cal. Civ. Code § 53.5 ....................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 12(b)(6).............................................................................................................5

Fed. R. Civ. P. 12(f) ................................................................................................................17

Fed. R. Civ. P. 23(c)(1)(A) .......................................................................................................17

## I. INTRODUCTION

On August 25, 2025, Judge Andre Birotte of the Central District of California issued a detailed Order granting Hyatt's Motion to Transfer Plaintiff's lawsuit, which alleged Hyatt violated the California Invasion of Privacy Act ("CIPA") and the California Guest Record Statute by purportedly sharing his online booking information with Meta and Adobe without his consent. Judge Birotte ruled it was "undisputed" Plaintiff registered for the World of Hyatt rewards program in 2018; that the World of Hyatt Membership Terms ("Terms") were "reasonably conspicuous" on Hyatt's registration page, which "was neat, flowing from top to bottom"; and that Plaintiff "unambiguously assented to the [Terms]," which were "valid and binding." ECF 35 at 8-11; *Juhyun So v. Hyatt Corp.*, 2025 U.S. Dist. LEXIS 211395, at *13-20 (C.D. Cal. Aug. 25, 2025). Judge Birotte also found Hyatt's Privacy Policies were disclosed in the same manner as the Membership Terms within the registration workflow:

> Above the "JOIN NOW" button was a disclaimer: "By joining, you are agreeing to the World of Hyatt Terms & Conditions. We collect and use your personal information in accordance with our Privacy Policies." It is undisputed the words "Terms & Conditions" and "Privacy Policy" were hyperlinked in blue font that contrasted with the white background and surrounding text which appeared in black font.

*Id*. at 9. Ultimately, Judge Birotte found that because Plaintiff was bound by the Terms, the case should be transferred to this Court pursuant to the Terms' venue clause. *Id*. at 12.

Judge Birotte's findings regarding the conspicuousness of Hyatt's disclosures and the enforceability of Hyatt's Terms constitute law-of-the case and apply with equal force to Hyatt's Illinois choice-of-law clause and Privacy Policies, both of which are part of the Terms. Moreover, as Judge Birotte ruled, the Privacy Policies were also disclosed alongside the Terms within the World of Hyatt enrollment workflow. Accordingly, Hyatt moved to dismiss Plaintiff's First Amended Complaint ("FAC") on December 11, 2025, arguing, *inter alia*, Plaintiff's claims were precluded by his consent to Hyatt's Privacy Policies and the Illinois choice-of-law provision. ECF 47, 48.

On December 31, 2025, without notice or leave of Court,[1] Plaintiff filed his Second Amended Complaint ("SAC"), withdrawing his claims under CIPA, a two-party consent statute, in favor of a lone claim under the Federal Wiretap Act, as amended by the Electronic Communications Privacy Act ("ECPA"), a single-party consent law. ECF 49. Plaintiff also expanded his already overbroad California class to the entire U.S., despite his continued reliance on California's Guest Record Statute, Cal. Civ. Code section 53.5, as a predicate for his claim. *Id.* Plaintiff's amended allegations fail to remedy the defects identified in Hyatt's last motion to dismiss, and by relying on the ECPA and attempting to expand the putative class, they introduce additional, incurable flaws.

***First***, Plaintiff's ECPA claim fails because he concedes—as he must—that Hyatt was an intended recipient of the purported communications, which bars his claims under the ECPA's "party exception." Nor can Plaintiff exempt himself from the party exception by recasting the alleged Guest Record violations as "crimes" or "torts." Plaintiff's California-law-derived claim remains foreclosed by the Terms' binding Illinois choice-of-law clause. Further, no court has recognized a "crime" or "tort" based on the Guest Record Statute, and Plaintiff has failed to plausibly allege a violation of the statute in any event.

***Second***, even if two-party consent were required, Plaintiff's allegations fail because the record establishes Hyatt procured such consent. As noted, Plaintiff—a longstanding World of Hyatt member—consented to the challenged conduct through his unambiguous acceptance of Hyatt's Privacy Policies as a term of his program enrollment and membership.

***Third***, in addition to consenting via his loyalty-program membership, Plaintiff again consented to Hyatt's Privacy Policies and the alleged sharing of his booking information through

[1] The parties' April 4, 2025 stipulation to allow Plaintiff to amend as of right did not authorize his December 31, 2025 amendment. Following that stipulation, Hyatt filed its Motion to Transfer or Dismiss on May 9, 2025, ECF 18, and Plaintiff opposed that motion, ECF 25, 26, 28. The parties submitted a scheduling order in the Central District of California [ECF 23] and attended a status conference in this Court, ECF 44, and Plaintiff made no mention of changing his claims or expanding the putative class. In any event, under FRCP 12 or 15, Plaintiff's amendments are defective and should not proceed, as shown herein. *See Sandy Point Dental, P.C. v. Cin. Ins. Co.*, 20 F.4th 327, 335 (7th Cir. 2021) (affirming denial of leave to amended where new allegations would not "change the outcome" or "cure the deficiencies" of prior complaint).

the materially similar hyperlinks and assent features located on Hyatt's booking interface, as well as through other site features.

***Fourth***, Plaintiff has otherwise failed to state an ECPA claim because he does not plausibly allege Meta or Adobe committed predicate ECPA violations regarding his booking information or that Hyatt intentionally "procured" any such violations by Meta or Adobe.

***Fifth***, the Court should strike Plaintiff's expanded class allegations and his prayer for punitive, compensatory, and equitable relief. Plaintiff's class definition now covers all persons nationwide who accessed Hyatt's Website over an unlimited period, as opposed to only those who, like Plaintiff, "booked" hotel rooms from California in 2024. Further, Plaintiff offers no plausible allegations in support of his requested remedies.

## II. BACKGROUND

The underlying factual allegations in Plaintiff's SAC remain unchanged. *See* La Decl., Ex. A. Plaintiff still alleges that, after creating a Facebook account "in or around November 2010," he accessed Hyatt's website, www.hyatt.com (the "Website"), while in California. ECF 49 ¶ 3. Plaintiff contends he visited the Website "[n]umerous times, including on or around February 19, 2024; September 21, 2024; and November 20, 2024," with the same browser he used to access Facebook. *Id*. Plaintiff asserts "[u]pon accessing the Website . . . , [he] browsed and booked a Hyatt hotel." *Id.* Plaintiff claims these "communications" were "intercepted" by Meta and Adobe, including communications containing Plaintiff's "confidential 'guest records.'" *Id.* Although Plaintiff alleges Exhibit A to the SAC is a Meta report that "evinces activity received from the Website," *id.* ¶ 3 n.2, it merely references "82 interactions," with no details. *See* ECF 49-1.

Later in the SAC, Plaintiff purports to describe and depict a booking flow for unidentified "Website users." *Id.* ¶¶ 22-25. Plaintiff alleges users input or select information to determine booking options, including destination, date, and the number of rooms and guests. *Id.* ¶ 22. Plaintiff contends Hyatt "has integrated [Meta's and Adobe's] wiretaps into the Website," *id.* ¶ 18, and that Meta and Adobe "contemporaneously intercept Website users' button clicks selecting such items," *id.* ¶ 22. While Plaintiff alleges users "check out" by entering contact and payment information, *id.* ¶ 25, he *does not* allege such contact and payment information was shared with third parties.

The SAC then offers a series of images purporting to depict interception of booking parameters, without connecting those images or allegations to *Plaintiff's* transactions. *Id.* ¶¶ 39-48. Similarly, Plaintiff suggests Meta and Adobe "can pair" booking data to users' identities through "tracking technologies" and "cookies," *id.* ¶¶ 49-50, and he devotes several pages to Adobe and Meta promotional materials and other sources describing the marketing "capability" of various services in the abstract. *Id.* ¶¶ 49-68. But again, Plaintiff fails to allege Hyatt used any particular "capabilities" in connection with *his* Website visits, nor does he specify when, how, or on what pages Hyatt purportedly implemented any specific capabilities. *Id*. ¶¶ 3, 28-68. Plaintiff admits "these personal details are 'hashed,'" but asserts "they are traceable," citing publications suggesting hashing is "overrated." *Id.* ¶¶ 63, 63 n.59.

On May 9, 2025, Hyatt moved to transfer the case to this Court, and, alternatively, to dismiss and strike. Hyatt argued that Plaintiff agreed to Hyatt's Terms—which contain an Illinois venue clause—and consented to Hyatt's Privacy Policies, when he registered for the World of Hyatt rewards program in 2018. ECF 18, 30. Plaintiff vigorously opposed the motions. ECF 25-2. On August 25, 2025, Judge Birotte granted Hyatt's transfer request, finding Hyatt's Terms were "reasonably conspicuous" and were "valid and binding" on Plaintiff. ECF 35 at 8-10. Judge Birotte also found Hyatt's Privacy Policies were disclosed in the same manner as the Terms within the registration workflow but did not rule on Hyatt's motion to dismiss and strike. *Id*. at 9.

On December 11, 2025, Hyatt filed a motion to dismiss and strike the FAC pursuant to a briefing schedule agreed to by the parties and entered by the Court. ECF 44, 46-48. Hyatt asserted that, *inter alia*, under the law-of-the case doctrine, Plaintiff was bound by Hyatt's Terms, Privacy Policies, and Illinois choice-of-law clause, warranting dismissal of his claims, which alleged nonconsensual interception of his "guest records" contrary to CIPA and the Guest Record Statute.

On December 31, 2025, while Hyatt's motion was pending, Plaintiff served the SAC, which retained his factual allegations but attempted to swap his CIPA claims for a federal ECPA claim under 18 U.S.C. § 2510, *et seq.* ECF 49. On January 9, 2026, the Court entered a briefing schedule on this motion. ECF 52.

## III. LEGAL AUTHORITY

The Amended Complaint should be dismissed for failure to state a claim under Rule 12(b)(6). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). While the plaintiff's allegations are taken as true for purposes of a motion to dismiss, that presumption does not apply to conclusory allegations. *See id.* at 678-79. Here, the SAC falls short on multiple dispositive grounds.

## IV. ARGUMENT

### A. Plaintiff's ECPA Claim Fails Because Hyatt Was a Party to the Alleged Communications

Although Plaintiff's SAC attempts to pivot from his defective CIPA claims to an ECPA claim, his ECPA claim fails for an additional and independent reason: whereas CIPA requires two-party consent, the ECPA expressly permits the interception of electronic communications where the alleged interceptor "is a party to the communication or one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(d). "[A] party to the conversation is one who takes part in the conversation." *Zak v. Bose Corp.*, 2019 U.S. Dist. LEXIS 54871, at *7 (N.D. Ill. Mar. 31, 2019) (citation omitted); *see also Caro v. Weintraub*, 618 F.3d 94, 97 (2d Cir. 2010) (same); *United States v. Eady*, 648 F. App'x 188, 191-92 (3d Cir. 2016) (a defendant is a "party" where "his presence is known to the other participants").

ECPA claims are subject to dismissal on the pleadings based on the "party exception." *See, e.g.*, *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 842-44 (N.D. Ill. 2023) (dismissing ECPA claim where the defendant was intended recipient of allegedly intercepted communication); *Zak*, 2019 U.S. Dist. LEXIS 54871, at *7-10 (holding defendant's platform was a party to the communications and dismissing Wiretap Act claim); *Nguyen v. Abbott Lab'ys, Inc.*, 2025 U.S. Dist. LEXIS 153248, at *11-16 (N.D. Ill. Aug. 8, 2025) (dismissing ECPA claim where plaintiff conceded website operator was a "party" to communications); *Shahnaz Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 893-96 (S.D. Cal. 2025) (dismissing Wiretap Act claim against recipient); *Roe v. Amgen Inc.*, 2024 U.S. Dist. LEXIS 101754, at *14-16 (C.D. Cal. June 5, 2024) (same).

Plaintiff's allegations indisputably concern his "communications with Hyatt" through Hyatt's Website. ECF 49 ¶ 14 ("Here, Website users' communications with Hyatt – made while browsing and booking Hyatt hotels via the Website – contain sensitive and confidential 'guest records,' as defined by Cal. Civil Code § 53.5."); *see also id.* ¶¶ 2-3, 15-25. As the website operator and intended recipient of these purported communications, Hyatt is a "party" to them. *See Zak*, 2019 U.S. Dist. LEXIS 54871, at *7. Hyatt's party status forecloses Plaintiff's sole claim.

### 1. Plaintiff's Allegations Based on California's Guest Record Statute Fail to Satisfy the "Crime-Tort" Exception

The SAC also does not satisfy the ECPA's narrow "crime-tort" carveout to the party exception. That exception applies only where the interception is "for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d). The purpose must be to commit a crime or tort *other than* the interception itself. *Stein v. Edward-Elmhurst Health*, 2025 U.S. Dist. LEXIS 31273, at *9 (N.D. Ill. Feb. 21, 2025) (holding that the crime-tort exception turns on the interceptor's purpose to commit an independent criminal or tortious act and "[t]he crime or tort can't be the interception itself"). Thus, the exception requires that the interception was undertaken for the purpose of committing a separate tort, not merely that the interception resulted in tortious conduct. *See Doe v. Genesis Health Sys.*, 2025 U.S. Dist. LEXIS 65328, at *28-29 (C.D. Ill. Mar. 18, 2025) (stating that crime-tort exception requires a "specific intent" to knowingly violate a separate law). Accordingly, multiple courts have declined to extend the exception to web-tracking allegations that simply describe efforts to generate revenue, without more. *In re Google Inc. Gmail Litig.*, 2014 U.S. Dist. LEXIS 36957, at *69 n.13 (N.D. Cal. Mar. 18, 2014) (rejecting crime-tort exception "where the interceptor's purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money") (citation omitted); *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 518-19 (S.D.N.Y. 2001) (same).

Here, Plaintiff has alleged from this suit's inception that Hyatt implemented Adobe's and Meta's technologies for purposes of marketing and revenue generation. *See, e.g.*, ECF 49 ¶¶ 90-91, 110. Plaintiff's attempt to repurpose his Guest Record allegations as predicates for the crime-tort exception is meritless. The Guest Record Statute has no private right of action, and no court

has recognized a violation of the statute as a freestanding tort or crime sufficient to serve as a basis for the ECPA's crime-tort exception. Nor has Plaintiff alleged any actual "guest records" were intercepted. A "guest record" includes "any record that identifies an individual guest . . . including . . . their name, social security number or other unique identifying number, date of birth, location of birth, address, telephone number, driver's license number, other official form of identification, credit card number, or automobile license plate number." Cal. Civ. Code § 53.5(c). None of the alleged "content" here—*e.g.*, destination, date, number of rooms—is covered by the statute, and Plaintiff does not contend otherwise. *See Crano v. Sojern, Inc*., 2025 U.S. Dist. LEXIS 185031, at *15-21 (N.D. Cal. Sept. 19, 2025) (dismissing Wiretap Act claim predicated on Guest Record Statute: "Plaintiff has not alleged facts that plausibly support an inference 'the hotel ID, hotel name/location, hotel room price, number of rooms, check in date, check out date, and the fact that Plaintiff Crano completed her reservations' constitute a guest record under Section 53.5(c)").

Plaintiff attempts to wedge his claim into the statute by alleging Adobe and Meta "can pair wiretapped data with website users' identities through various ways" after the fact. ECF 49 ¶ 103. Neither the statute nor case law provide that subsequent "pairing"—let alone the mere possibility of such pairing—by a third party violates Section 53.5. *See Snyder v. G6 Hosp. LLC*, 2025 U.S. Dist. LEXIS 71792, at *10-12 (C.D. Cal. Apr. 14, 2025) (rejecting allegation that Facebook ID was a "unique identifying number" under Section 53.5). In any event, Plaintiff concedes any shared data was hashed, *id*. ¶ 63, and does not allege *his* communications were matched with his identity. Speculation that third parties may be "capable" of "pairing" data after it is shared cannot substitute for plausible allegations of Hyatt's specific intent to commit a crime or tort. Indeed, Plaintiff provides no plausible allegations that Adobe or Meta actually used anyone's information in a manner that renders them anything other than contracted "third party service providers" exempted from Section 53.5's disclosure restrictions.

Plaintiff's efforts to characterize website visitors as onsite "invitees," "guests," or "customers," are similarly infirm, and Plaintiff provides no case law or statutory authority for the proposition. Plaintiff's analogy to someone who "walks through the front doors of a physical Hyatt location to ask about room options" demonstrates the absurdity of his theory, as Plaintiff cannot

plausibly assert that casual inquiries in hotel lobbies carry the types of heightened privacy expectations asserted in the SAC.[2] Plaintiff also has not plausibly alleged Hyatt owns, operates or manages any qualifying properties connected to his bookings such that Hyatt is subject to the statute.[3] To the contrary, Plaintiff's allegations focus on Hyatt's operation of the "digital equivalent" of a hotel. ECF 49 ¶ 105. Plaintiff's inability to state a violation of the statute dooms his crime-tort assertions.

### 2. Plaintiff's Crime-Tort Theory Relies on California Law and Is Foreclosed by the Illinois Choice-of-Law Clause

In Hyatt's prior motion to dismiss, which Hyatt incorporates by reference here, Hyatt argued Plaintiff's California-based claims were barred by the Illinois choice-of-law clause in Hyatt's Terms, which the transferor court has already found binding on Plaintiff. ECF 48 at 9-13. Specifically, beyond the Illinois venue clause enforced by Judge Birotte, the Terms to which Plaintiff agreed when he enrolled in the World of Hyatt rewards program, and which were otherwise disclosed on the Website, included an Illinois choice-of-law provision in the same paragraph, which read, in pertinent part, as follows:

> The Program, these Terms, and any disputes between you and Hyatt associated with the Program or these Terms will be governed by the laws of the State of Illinois, U.S.A., without reference to its conflict of laws principles. Exclusive jurisdiction over any cause of action arising out of or related to the Program or these Terms will be in state or federal courts located in or having jurisdiction over Chicago, Illinois, U.S.A. . . .

[2] Nor can Plaintiff establish the exception by relying on HIPAA cases. While some courts have, in limited circumstances, allowed ECPA cases to proceed under a crime-tort theory based on HIPAA and *medical* confidentiality, those cases are specific to the HIPAA context. Moreover, even in HIPAA scenarios, district courts dismiss ECPA claims where, as here, the Plaintiff fails to plausibly allege his claims. *See, e.g.*, *Nguyen*, 2025 U.S. Dist. LEXIS 153248, at *10-16 (dismissing Wiretap Act claim because defendant was a party to the communications and plaintiffs failed to plausibly invoke the crime-tort exception); *Hannant v. Sarah D. Culbertson Mem'l Hosp.*, 2025 U.S. Dist. LEXIS 161412, at *6 (C.D. Ill. Aug. 20, 2025) (same).

[3] Section 53.5 applies only to an "innkeeper, hotelkeeper, motelkeeper, lodginghouse keeper, or owner or operator of an inn, hotel, motel, lodginghouse, or other similar accommodations, or any employee or agent thereof, who offers or accepts payment for rooms, sleeping accommodations, or board and lodging, or other similar accommodation . . ." Cal. Civ. Code § 53.5. Plaintiff's vague assertions focusing on Hyatt's digital presence are not plausible allegations he actually booked properties kept, owned, or operated by Hyatt. *See* Request for Judicial Notice ("RJN"), Ex. 18 at 3 ("[W]e provide certain reservation and/or loyalty program services to hotels that are unaffiliated with our hotel portfolio and operate under other trade names or marks owned by such hotels or licensed by third parties.").

RJN, Ex. 11 at 4[4]; *see also id.*, Exs. 6-8.

Judge Birotte determined Plaintiff agreed to the Terms and that they were enforceable. ECF 35 at 6-7. And while Plaintiff previously disputed the Terms' enforceability without success, Plaintiff does not do so in the SAC and has never asserted this dispute falls outside of the Terms' scope. ECF 25-2.

Rather than contest Hyatt's choice-of-law arguments, Plaintiff dismissed his CIPA claims in favor of a claim under the ECPA, attempting to circumvent the Terms and cloak his state claims in federal law. But Plaintiff's invocation of the crime-tort exception remains grounded in California law, *i.e.*, the California Guest Record Statute. ECF 49 ¶ 97 ("Defendant intentionally intercepted and endeavored to intercept Plaintiff's and Class Members' communications for the purpose of committing a tortious or criminal act in violation of the Constitution or laws of the United States or of any State—namely, violation of the California Guest Records Privacy Statute, Cal. Civil Code § 53.5(a)."); *see also id.* ¶¶ 1, 69, 71, 98-108. To be sure, Plaintiff's claims *depend on* establishing a "crime" or "tort" under the California Guest Record statute—and applying that California statute extraterritorially to a national class. *Id.* ¶¶ 97-108. And, tellingly, the SAC continues to rely on *diversity of citizenship* as the basis for subject matter jurisdiction, decries the alleged interception of "Californians' communications" and Hyatt's purported failure to procure consent "from Californians," and asserts other violations of Californians' rights. *See, e.g.*, *id*. ¶¶ 5, 69, 71. Accordingly, Plaintiff's California-law-dependent claims are precluded by his agreement to proceed exclusively under Illinois law. ECF 48 at 9-13. Under any potentially applicable standard, Hyatt's choice-of-law clause is enforceable. *See, e.g.*, *Bonny v. Soc'y of Lloyd's*, 3 F.3d 156 (7th Cir. 1993) (enforcing choice-of-law clause under federal law); *WTM, Inc. v. Hennek*, 125 F. Supp. 2d 864, 867-68 (N.D. Ill. 2000) (applying Illinois choice-of-law rules and affirming Minnesota claim was barred based on Illinois choice-of-law provision). Plaintiff therefore cannot avoid his express contractual obligations, or Judge Birotte's order, by recasting his California claims as a "new" federal claim predicated on a California "crime" or "tort.

---

[4] Pincites for exhibits refer to the PDF page number, where the exhibit slipsheet is page 1.

### B. Plaintiff Consented to the Alleged Tracking Through His Registration for Hyatt's Rewards Program

Even if two-party consent were required, the record establishes Plaintiff's consent as a matter of law. *See, e.g.*, *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1055-58 (N.D. Cal. 2025) (dismissing ECPA claim based on the plaintiff's consent). Here, Plaintiff expressly agreed to Hyatt's Privacy Policies, including its Privacy Policy for Guests, through his World of Hyatt enrollment and the associated Terms. As set forth in Hyatt's motion to transfer, to enroll in World of Hyatt, users were (and are) presented with the following screen containing conspicuous, readily accessible links to Hyatt's Terms and Privacy Policies:




RJN, Ex. 10. Following rigorous briefing by the parties, Judge Birotte agreed, ruling Hyatt's Terms were "valid and binding" on Plaintiff. ECF 35 at 11. In reaching that decision, Judge Birotte analyzed in detail the "undisputed" steps of Hyatt's registration workflow, which included explicit hyperlinks to the Privacy Policies alongside the Terms:

> The Registration Page required Plaintiff to input his name, email address, physical address, preferred language, and customer type; then create a password; and finally click "JOIN NOW" to complete his registration. (Cave Decl. ¶ 6, Ex. 10). After the "Confirm Password" field, the following text appeared in black font—except the words "Terms & Conditions" and "Privacy Policies" which were hyperlinks that appeared in blue font: "By joining, you are agreeing to the World of Hyatt Terms & Conditions. We collect and use your personal information in accordance with our Privacy Policies." (*Id.*). Below those sentences was a rectangular box containing the words "JOIN NOW," which a user must have clicked to complete their enrollment in the program. (*Id.*).

*Id*. at 2. Judge Birotte also took judicial notice of screenshots and links regarding relevant webpages, to which Plaintiff raised no objections. *Id*. at 5-6. ("Plaintiff does not oppose Defendant's RJN and relies on Exhibits 1 and 10 in its Opposition. (*See* Opp'n at 6:1-2)."). Those documents included the Terms themselves, which incorporate the Privacy Policies: "Please see

our Privacy Policy, available at privacy.hyatt.com, which is applicable to your participation in the [World of Hyatt] Program." RJN, Ex. 11 at 2.

Thus, the conspicuousness of Hyatt's Terms and Privacy Policies and the mechanism of Plaintiff's assent to those Terms and Policies have already been adjudicated and should be enforced as law-of-the-case. *See Gilbert v. Ill. State Bd. of Educ.*, 591 F.3d 896, 902 (7th Cir. 2010) (explaining a successor judge generally should not reconsider a transferor judge's rulings absent a strong and reasonable conviction they were wrong and where rescission would not unduly harm the benefiting party); *United States v. Harris*, 531 F.3d 507, 513 (7th Cir. 2008) (reconsideration of prior ruling appropriate only for compelling reasons, such as intervening change in controlling law, newly discovered evidence, or to correct clear error or prevent manifest injustice); *S. Beach Bev. Co. v. Rush Bev. Co.*, 2004 U.S. Dist. LEXIS 2477, at *6-7 (N.D. Ill. Feb. 19, 2004) (finding that determination of contract enforceability earlier in the case also applied on summary judgment and could not be relitigated); *Coleman Cable Sys. v. Shell Oil Co.*, 1996 U.S. Dist. LEXIS 13090, at *11-14 (N.D. Ill. Aug. 28, 1996) (applying law-of-the-case to grant summary judgment against implied warranty claim, reasoning the claim's validity was resolved "by necessary implication" via prior ruling rejecting express warranty claim); *Allied Waste Transp., Inc. v. John Sexton Sand & Gravel Corp.*, 2016 U.S. Dist. LEXIS 82001, at *19-21 (N.D. Ill. June 23, 2016) (stating law-of-the-case has "greater force" when a successor judge is asked to revisit a predecessor's rulings and applying at summary judgment phase a prior judge's contract-interpretation ruling from motion for judgment on the pleadings).[5]

Like his CIPA claims, Plaintiff's ECPA claim fails because Hyatt's binding Terms and Privacy Policies, including the May 2018 Privacy Policy for Guests linked to Plaintiff's registration and incorporated into the Terms, delineated the very type of tracking Plaintiff alleges was nonconsensual, including collection and sharing of "guest stay information":

[5] In any event, Judge Birotte's rulings on the issues of conspicuousness and mutual assent were correct. *See, e.g., Lakes*, 777 F. Supp. 3d at 1055-58 (enforcing website consent features and dismissing ECPA web-tracking claim); *Forby v. One Techs.*, LP, 2016 U.S. Dist. LEXIS 46141, at *2-3 (S.D. Ill. Apr. 5, 2016) (enforcing online terms involving a hyperlink adjacent to a "Continue" button); *Oberstein v. Live Nation Entm't, Inc.*, 60 F.4th 505, 515-17 (9th Cir. 2023) (affirming motion to compel enforcement of sign-in wrap agreement where transactional context of online registration process indicated a continuing relationship).

> **Types of Personal Information We Collect**
>
> The term "**personal information**" in this Policy refers to information that identifies or is capable of identifying you as an individual. The types of personal information that we process (which may vary by jurisdiction based on applicable law) include:
> . . . .
> - guest stay information, including the hotels where you have stayed, dates of arrival and departure, goods and services utilised, special requests made, observations about your service preferences (including room and vacation preferences), telephone numbers dialed and faxes, texts and telephone messages received;
>
> . . . .
> - information collected while you access a Hyatt app or Hyatt website (we describe this in more detail in Sections 7 and 8 below)
>
> . . . .

RJN, Ex. 15 at 2. The May 2018 Privacy Policy also specifically disclosed Hyatt.com's use of "Cookies and Other Similar Technology," and stated that "information collected by us or third parties . . . based on your activities on our websites" may be used for "Targeted Advertising":

> **7.9 Targeted Advertising**
>
> Where permitted by law, we may work with other companies to share advertisements or marketing that we think you may find relevant and useful. This may include advertisements displayed on our own websites or apps or communications sent by us, or advertisements from us displayed on other companies' websites. The advertisements you see may be based on information collected by us or third parties and/or may be based on your activities on our websites or third-party websites.

*Id*. at 5.

While Plaintiff strenuously opposed Hyatt's consent arguments, his contentions focused exclusively on the clarity of Hyatt's user interface and the sufficiency of Hyatt's disclosures for enforceability purposes—which, again, have already been adjudicated. ECF 25-2. He made no assertion that the purported tracking alleged in his pleadings was not covered by the Terms or the Privacy Policies. *Id*. Plaintiff has therefore failed to state an ECPA claim because the record establishes his consent to the purported interception as a matter of law.[6]

### C. Plaintiff Consented to the Alleged Tracking Again Through Hyatt's Booking Interface and Other Means

[6] Plaintiff continued to use his account after 2018 and his allegations are similarly precluded by the updated Privacy Policies in effect during the 2024 Website visits referenced in the SAC. *See* discussion, *infra*.

Separately, Plaintiff assented to Hyatt's Privacy Policies, which disclosed the alleged tracking, through Hyatt's booking interface—images of which have already been judicially noticed by Judge Birotte—each time he reserved a room. This provides an independent ground for dismissing the entire SAC.

Plaintiff's SAC includes partial screenshots purporting to depict the Website's booking process. ECF 49 ¶¶ 3, 27-30. But these cropped images omit key portions of Hyatt's user interface. Judge Birotte, however, took judicial notice of the full webpages in question, finding Plaintiff not only failed to object to the full images but also affirmatively relied on the images in his own briefing. ECF 35 at 5-6. Hyatt's judicially noticed webpages show that users can reserve rooms on the Website without joining World of Hyatt or by logging in to their account. However, to complete the booking process, all users must consent to the Privacy Policies via the following screen:




As shown, the Privacy Policies appear under a bold heading that reads "Terms & Conditions." RJN, Ex. 1. That section lists three items: Hyatt's Cancellation Policy, its Deposit Policy, and Hyatt's Privacy Policies. *Id*. The entire section contains very little text, and the Privacy Policies are hyperlinked in bright blue, bold font, in stark contrast to what little adjacent text there is. *Id*. Indeed, the Privacy Policies are the *only* hyperlinked item in that section. And the hyperlink appears directly above the "BOOK MY STAY" button, with the following text: "I have read and acknowledge the use of my personal information in accordance with the Hyatt Privacy Policies." *Id.* Users can only complete their reservation by scrolling through the page and clicking the "BOOK MY STAY" button. *Id.*

Plaintiff therefore unambiguously manifested assent to the Privacy Policies when he booked rooms, including the 2024 bookings referenced in the SAC. The hyperlink to the Privacy Policies appears in the "Terms & Conditions" section of the booking page along with other items that are plainly related to the consummation of a room reservation—specifically, the cancellation and deposit policies. *Id*. Further, the fields above the "Terms & Conditions" section require users to input booking-related information. *Id*. As such, the direct connection between the Privacy Policies governing "use of my personal information" and the "BOOK MY STAY" button is obvious, and clicking that button constitutes an unambiguous manifestation of consent to the Privacy Policies.

Hyatt's December 2022 Privacy Policy for Guests would have appeared on the Website during Plaintiff's alleged 2024 visits via the aforementioned hyperlink and other links on the Website. RJN, Ex. 2. Like the June 2018 version, the December 2022 Privacy Policy for Guests expressly disclosed Hyatt's collection of purported "guest record information":

> **Information We May Collect**
>
> Stay and Purchase Information: we may collect information such as the hotels where you have stayed or booked a stay, dates of arrival and departure, goods and services purchased or utilized at Hyatt Locations or on the Website or Application, physical and digital room key usage, special requests made, service and stay preferences (Including room and vacation preferences), telephone numbers dialed and faxes sent, calls or messages received, and any feedback or content you provide to us regarding your stay [. . . ]

*Id.*, Ex. 2 at 3. The December 2022 Privacy Policy for Guests also disclosed Hyatt's use of "cookies, tags, pixels, beacons and other technologies on our Websites" to "place and serve advertisements and customized content." *Id.*, Ex. 2 at 7. These disclosures were reinforced through Hyatt's cookies banner, Cookie Center, and other methods, and through separate disclosures by Meta and Adobe. *Id.*, Exs. 4-5, 13-14. Plaintiff's consent disposes of his ECPA claim.

Moreover, Plaintiff's allegation that "[a]nalysis of the Website reveals that the Third Parties' tracking technologies are active as soon as the Website loads," *i.e.*, before users could consent, is nonsensical. ECF 49 ¶ 72. First, Plaintiff consented to the 2018 Privacy Policies when he established his World of Hyatt membership—years before the alleged ECPA violations in 2024.

Second, Plaintiff alleges the improper sharing occurred as a result of the *booking process*, not upon contact with the Website. *Id.* ¶ 3. Because Plaintiff again consented to the Privacy Policies before hitting "BOOK MY STAY" for each booking, Plaintiff's timing argument is a red herring. And Plaintiff's cryptic assertion that tracking technologies are "active" when the Website "loads" is too vague and conclusory to withstand a Rule 12 challenge.

### D. Plaintiff Has Otherwise Failed to Plausibly Allege the Elements of an ECPA Claim

To state a claim under the ECPA, plaintiffs must plausibly allege the defendant "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *Nguyen*, 2025 U.S. Dist. LEXIS 153248, at *10-11 (quoting *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 135 (3d Cir. 2015)). The ECPA defines an interception as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4); *see also Doe v. Chestnut Health Sys.*, 2025 U.S. Dist. LEXIS 107627, at *31-32 (C.D. Ill. June 6, 2025).

Here, Plaintiff asserts that Hyatt "intentionally procured" Adobe and Meta to "intercept" Plaintiff's and putative class members' purported "guest records" via the Website. ECF 49 ¶ 88. Plaintiff's claim fails because he does not plausibly allege any "communications" were intercepted "in transit" by Meta or Adobe, or that Hyatt "procured" any predicate acts by Meta or Adobe.

#### 1. Plaintiff Fails to Plausibly Allege Interception in Transit

Under the ECPA, "interception" requires contemporaneous acquisition of an electronic communication while it is in transit. *See Mazzorana v. Kelly*, 2022 U.S. Dist. LEXIS 74664, at *3-4 (N.D. Ill. Apr. 25, 2022); *see also Peters v. Mundelein Consol. High Sch. Dist. No. 120*, 2022 U.S. Dist. LEXIS 23118, at *31-32 (N.D. Ill. Feb. 9, 2022) (dismissing Wiretap Act claim for failure to plausibly allege contemporaneous interception). If a communication is no longer in transit and instead is stored, the Stored Communications Act, not the Wiretap Act, governs. *Peters*, 2022 U.S. Dist. LEXIS 23118 at *31-32. Boilerplate allegations of "instant" interception do not

suffice. *See, e.g.*, *Rodriguez v. ByteDance, Inc*., 2025 U.S. Dist. LEXIS 168885, at *16-21 (N.D. Ill. Aug. 29, 2025) (dismissing ECPA claim based on conclusory allegations of interception); *Mohamad v. Cent. Fla. Tax & Acct., Inc*., 2025 U.S. Dist. LEXIS 185117, at *17-18 (M.D. Fla. Sept. 22, 2025) (same); *Benessere Inv. Grp., LLC v. Swider*, 2024 U.S. Dist. LEXIS 198469, at *9-14 (S.D. Fla. Oct. 31, 2024) (same); *In re Vizio, Inc*., 238 F. Supp. 3d 1204, 1226-28 (C.D. Cal. 2017) (same).

Here, Plaintiff alleges "[t]he Third Parties' tracking technologies . . . . cause the [Website user's] browser to secretly and simultaneously duplicate the user's Website communications, transmitting these communications to the Third Parties' servers . . . . within milliseconds." ECF 49 ¶ 27. These allegations fail to specify interception in transit. First, Plaintiff concedes any alleged communications were between users' browsers and third parties' servers, not between Plaintiff and Hyatt. *Id.*; *cf. Cole v. Quest Diagnostics, Inc.*, 2025 U.S. Dist. LEXIS 7205, at *7-8 (D.N.J. Jan. 14, 2025), *aff'd*, 2025 U.S. App. LEXIS 29698 (3d Cir. Nov. 13, 2025) (eavesdropping under CIPA does not occur when visitor's browser communicates directly with the alleged eavesdropper). Second, Plaintiff acknowledges the purported communications were "duplicate[s]" of users' communications with the Website, not communications en route to Hyatt. *Id.* Plaintiff cannot bring this activity within the ECPA's ambit with boilerplate assertions of "contemporaneous" or "simultaneous" interception.

#### 2. Plaintiff Fails to Plausibly Allege Adobe or Meta Intercepted the Content of Communications

Under the ECPA, the "content" of a communication means "the substance, purport or meaning of [the] communication" or the "intended message conveyed by the communication." 18 U.S.C. § 2510(8); *see also In re Zynga Priv. Litig.*, 750 F.3d 1098, 1105-06 (9th Cir. 2014) (interpreting the meaning of "content" under the ECPA). By contrast, "record information" relates to "the characteristics of the message that is generated in the course of [that] communication." *Zynga*, 750 F.3d at 1107. Plaintiff contends information he and other users input to book rooms—such as destination, travel dates, and number of rooms and guests—constitute "communications" under the ECPA. ECF 49 ¶¶ 25-30, 45-53, 76-77. However, at best, these allegations describe

inactionable "record information" in the form of preset options a user must select when inquiring whether a room is even available. *See Zynga*, 750 F.3d at 1106-07.

#### 3. Plaintiff Fails to Plausibly Allege Procurement by Hyatt

In addition to failing to allege predicate ECPA violations by Meta or Adobe, Plaintiff's ECPA claim fails because he cannot proceed with a *civil* claim against Hyatt based on allegations of "procurement." *See Valentine v. Wideopen W. Fin., LLC*, 288 F.R.D. 407, 412-13 (N.D. Ill. 2012) (holding no secondary liability under the ECPA for aiding/abetting or conspiracy and dismissing § 2511(1)(a) interception claim); *Shefts v. Petrakis*, 954 F. Supp. 2d 769, 774-77 (C.D. Ill. 2013) (holding section 2520 does not provide civil liability for "procurement" or other secondary theories under the ECPA). Here, Plaintiff fails to state an ECPA claim because his allegations turn on his assertion that Hyatt "intentionally procured third-parties Adobe and Meta to intercept and endeavor to intercept the electronic communications of Plaintiff and Class Members . . . ." ECF 49 ¶ 88; *see also id.* ¶¶ 90, 91. And even if civil "procurement" claims were allowed, Plaintiff has not plausibly alleged such a claim. To the contrary, his allegations rely on Adobe and Meta promotional materials describing their marketing "capability," *id.* ¶¶ 49-68, without plausible assertions Hyatt, Meta, or Adobe implemented particular "capabilities" in connection with *his* Website visits or information.

### E. Plaintiff's Class Allegations and Claims for Punitive, Equitable and Other Relief Should Be Stricken

Plaintiff's California-only CIPA class allegations from his original two complaints were already facially overbroad and subject to a motion to strike, as set forth in Hyatt's prior motion. Plaintiff's attempt to massively expand his flawed class claims to a national cohort in the SAC only highlights the incurable defects in his allegations.

The function of a Rule 12(f) motion is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial. *Daly v. Eagleson*, 2021 U.S. Dist. LEXIS 184846, at *29-31 (N.D. Ill. Sept. 27, 2021) (explaining that Rule 12(f) permits striking immaterial matter). Further, under Rule 23(c)(1)(A), when class allegations are "facially and inherently deficient . . . a motion to strike class allegations can be an

appropriate device to determine whether the case will proceed as a class action." *See Connectors Realty Grp. Corp. v. State Farm Fire & Cas. Co*., 2021 U.S. Dist. LEXIS 57400, at *5 (N.D. Ill. Mar. 25, 2021) (citation omitted). Courts in the Seventh Circuit have thus granted motions to strike inherently overbroad class allegations. *See, e.g.*, *Jones v. BRG Sports, Inc.*, 2019 U.S. Dist. LEXIS 128493, at *11-12, at *28 (N.D. Ill. Aug. 1, 2019) (granting motion to strike class allegations "where it [was] clear from the complaint that circumstances warrant[ed] a motion to strike class allegations to conserve court and party resources and where the pleadings ma[de] clear that the suit cannot satisfy Rule 23") (citation omitted); *Connectors Realty Grp.*, 2021 U.S. Dist. LEXIS 57400, at *4-6 (granting motion to strike overly broad class allegations that included "significant numbers of [potential class members] who have not suffered any injury or harm"); *Vann v. Dolly, Inc.*, 2020 U.S. Dist. LEXIS 31678, at *11-13 (N.D. Ill. Feb. 25, 2020) (same).

Plaintiff's expanded ECPA class is facially overbroad. While Plaintiff alleges he was injured when he "browsed and booked" hotel rooms on Hyatt's website while in California on the browser he used to access Facebook, ECF 49 ¶ 3, Plaintiff's new putative class definition covers "all persons in the United States who, during the class period, accessed and navigated the Website," *id.* ¶ 73. Plaintiff provides no definition, explanation, or temporal parameters regarding the "class period," which the SAC references only once. Plaintiff's augmented class definition should be stricken on multiple grounds.

First, while Plaintiff, a California resident, seeks to recast his CIPA claims as an ECPA violation, his claims still rest on Hyatt's purported violation of the California Guest Record Statute. *See* discussion, *supra*. Even if that statute could serve as a basis for a California class—which Hyatt disputes—it is plainly inapplicable to residents outside of California, and the SAC provides no justification for its overreach. Nor could it, as Illinois and California courts have repeatedly held California laws presumptively do not apply beyond California's borders unless the Legislature has expressly stated otherwise. *See Kravetz v. Bridge To Life, Ltd.*, 2019 U.S. Dist. LEXIS 250128, at *5-9 (N.D. Ill. Mar. 8, 2019) ("[T]he presumption is that [California] did not intend to give its statutes any extraterritorial effect."); *Elzeftawy v. Pernix Grp., Inc.*, 477 F. Supp. 3d 734, 775-80 (N.D. Ill. 2020) ("As a general matter, the statutes of a state have no force beyond

its boundaries.") (citation omitted). Section 53.5 has no language to this effect, and the excerpts Plaintiff cites reference "Californians" throughout. ECF 49 ¶¶ 11-17. Plaintiff's national class allegations must be stricken, as they depend on the improper extraterritorial application of California Civil Code section 53.5.[7]

Second, even as to putative class members in California, the SAC remains hopelessly overbroad, and Plaintiff made no effort to address the defects emphasized in Hyatt's prior motions to strike. Plaintiff's allegations of injury still focus on the supposed interception of his room bookings on Hyatt's Website while in California. ECF 49 ¶ 3. Plaintiff's putative class definition, by contrast, now covers "all persons in the United States who have accessed and navigated the website" over an unlimited time period (as the "class period" is never defined). *Id.* ¶ 73. Accordingly, the putative class is overbroad because it necessarily includes users, such as casual web surfers, who never booked—or even attempted to book—a room (with or without Facebook), and therefore never incurred the injury alleged by Plaintiff, *i.e.*, interception of purportedly confidential "guest records." Moreover, while the ECPA has a two-year limitations period, 18 U.S.C. § 2520(e), the undefined "class period" has no temporal limitations, and the SAC makes no reference to tolling of the statute. The SAC therefore necessarily includes users whose claims are time-barred. *Cosby v. United Air Lines*, 1996 U.S. Dist. LEXIS 5464, at *6 (N.D. Ill. Apr. 24, 1996) ("To justify equitable tolling, a plaintiff must plead the facts that justify tolling in her complaint, not in her unsworn response to a motion to dismiss."); *Davenport v. A.C. Davenport & Son Co.*, 903 F.2d 1139, 1141 (7th Cir. 1990) (holding that complaint must allege facts sufficient to invoke equitable tolling).

Third, Plaintiff's claim that Hyatt illegally disclosed putative class members' "guest records" is inherently individualized and cannot be adjudicated with common proof. *See Jones*, 2019 U.S. Dist. LEXIS 128493, at *11-28 (striking class allegations where predominance

[7] Even if a national class could proceed, and it cannot, the statute of limitations for non-California class members would not relate back to the filing of the action. *See Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*, 902 F.3d 735, 740-42 (7th Cir. 2018) ("[T]he plaintiffs named in the amended complaint were not 'asserted members of the class' defined in the original complaint and their claims were not encompassed by the original suit.").

problems were evident at the motion to dismiss phase). For example, determining whether Hyatt was functioning as an "owner" or "operator" of a booked property for purposes of Section 53.5 would require a transaction-by-transaction inquiry. *See* RJN, Ex. 18 at 6. As another example, Hyatt's loyalty program and Website terms, user interfaces, banners, and disclosures have changed over time and across geographies (and have contained class action waivers since 2025), requiring additional individualized determinations. *Compare* RJN, Ex. 11 at 4 *with id.*, Ex. 17 at 3-4; *see also id*., Exs. 12 and 16. No discovery will render such claims susceptible to common proof.

Lastly, Plaintiff provides no facts supporting his now-expanded but still boilerplate prayer for punitive, actual or compensatory damages, restitution, and injunctive relief, and his counsel stated during a pre-motion conference that Plaintiff was seeking statutory damages only. *See Bobin v. Glick*, 2019 U.S. Dist. LEXIS 239610, at *12-13 (N.D. Ill. Mar. 20, 2019) (striking plaintiff's conclusory punitive damages request ); *Fisher v. TCI*, 2000 U.S. Dist. LEXIS 7150, at *3-4 (N.D. Ill. Apr. 19, 2000) (striking punitive damages request where "there are no facts that support the kind of malice or wantonness that punitive damages are designed to deter"); *Ruffin v. Exel Direct, Inc.*, 2009 U.S. Dist. LEXIS 89579, at *7-9 (N.D. Ill. Sept. 29, 2009) (dismissing claim for injunctive relief because plaintiffs "do not make any allegations" to show they "have standing to seek . . . injunctive relief").

## V. CONCLUSION

Hyatt requests Plaintiff's SAC be dismissed and stricken with prejudice.

Dated: January 29, 2026

Respectfully submitted,

By: */s/ Terence N. Hawley*
Terence N. Hawley

**REED SMITH LLP**
Terence N. Hawley (*Pro Hac Vice*)
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Telephone: (415) 543-8700
Facsimile: (415) 391-8269
Email: thawley@reedsmith.com
*Attorneys for Defendant Hyatt Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2026, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Terence N. Hawley*
Terence N. Hawley