**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JUHYUN SO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HYATT CORPORATION,<br><br>Defendant. | Civil Action No.: 1:25−cv−10483<br><br>Hon. Matthew F. Kennelly |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT HYATT CORPORATION'S MOTION TO DISMISS AND STRIKE PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS


Page

I. INTRODUCTION ........ 1

II. ARGUMENT ........ 3

A. Plaintiff's ECPA Claim Fails Because He Concedes Hyatt Was a "Party," and the Crime-Tort Exception Does Not Apply ........ 3

1. Like His CIPA Claim, Plaintiff's ECPA Claim Predicated on California Law is Barred by the Illinois Choice-of-Law Clause ........ 3

2. Plaintiff's Assertion that All Laws are Fungible for Purposes of the Crime-Tort Exception is Wrong ........ 5

3. Plaintiff Has Not Alleged a Violation of California's Guest Record Statute ........ 7

B. Plaintiff's Consent Arguments Rehash Points Raised and Rejected When Plaintiff Unsuccessfully Challenged Hyatt's Terms ........ 8

1. Plaintiff's Belated Challenges to the 2018 Privacy Policy's Specificity Cannot Unravel His Prior Consent ........ 11

2. Plaintiff Separately Consented to Hyatt's 2022 Privacy Policy Through the Booking Flow and Other Means ........ 12

C. Plaintiff Fails to Plausibly Allege Other Elements of His ECPA Claim ........ 13

1. Plaintiff Fails to Plausibly Allege Interception in Transit ........ 13

2. Plaintiff Fails to Plausibly Allege Adobe or Meta Intercepted the Content of Communications ........ 13

3. Plaintiff Fails to Plausibly Allege Procurement by Hyatt ........ 14

D. Plaintiff Fails to Provide a Substantive Response to Hyatt's Motion to Strike ........ 14

III. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Ctrs. for New Horizons, Inc.*,
891 F. Supp. 2d 956 (N.D. Ill. 2012) ....................1

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ....................8, 12

*Brown v. Google*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ....................6

*Buonomo v. Optimum Outcomes, Inc.*,
301 F.R.D. 292 (N.D. Ill. 2014)....................14

*Calderon v. Vill. of Bridgeview*,
2020 U.S. Dist. LEXIS 39782 (N.D. Ill. Mar. 9, 2020)....................1

*Campos v. Tubi, Inc.*,
716 F. Supp. 3d 623 (N.D. Ill. 2024) ....................11

*Crano v. Sojern, Inc.*,
2025 U.S. Dist. LEXIS 185031 (N.D. Cal. Sept. 19, 2025) ....................7

*Dawson v. Univ. of Phx., Inc.*,
2026 U.S. Dist. LEXIS 6299 (N.D. Ill. Jan. 13, 2026) ....................6

*Domer v. Menard, Inc.*,
116 F.4th 686 (7th Cir. 2024) ....................9

*Gardner v. Me-Tv Nat'l Ltd. P'ship*,
132 F.4th 1022 (7th Cir. 2025) ....................6

*Horan v. Nat'l Cable Satellite Corp.*,
2026 U.S. Dist. LEXIS 48054 (D.D.C. Mar. 9, 2026)....................8

*In re Bridgestone/Firestone, Inc.*,
288 F.3d 1012 (7th Cir.2002) ....................4

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................13

*Kirch v. Embarq Management Co.*,
702 F.3d 1245 (10th Cir. 2012) ....................14

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023) ....................................................................5

*Marshall v. Georgetown Mem'l Hosp.*,
112 F.4th 211 (4th Cir. 2024) ....................................................................10

*Mazzorana v. Kelly*,
2022 U.S. Dist. LEXIS 74664 (N.D. Ill. Apr. 25, 2022) ....................................................................13

*Oberstein v. Live Nation Ent. Inc.*,
60 F.4th 505 (9th Cir. 2023) ....................................................................9

*Peavy v. WFAA-TV*,
221 F.3d 158 (5th Cir. 2000) ....................................................................14

*Plaisance v. Bayer Corp.*,
275 F.R.D. 270 (S.D. Ill. 2011) ....................................................................4

*Sgouros v. TransUnion Corp.*,
817 F.3d 1029 (7th Cir. 2016) ....................................................................9

*Shefts v. Petrakis*,
954 F. Supp. 2d 769 (C.D. Ill. 2013) ....................................................................14

*Snyder v. G6 Hosp. LLC*,
2025 U.S. Dist. LEXIS 71792 (C.D. Cal. Apr. 14, 2025) ....................................................................7

*Stein v. Edward-Elmhurst Health*,
2025 U.S. Dist. LEXIS 31273 (N.D. Ill. Feb. 21, 2025) ....................................................................5

*United States v. Szymuszkiewicz*,
622 F.3d 701 (7th Cir. 2010) ....................................................................13

*Valentine v. Wideopen W. Fin., LLC*,
288 F.R.D. 407 (N.D. Ill. 2012)....................................................................14

*WTM, Inc. v. Hennek*,
125 F. Supp. 2d 864 (N.D. Ill. 2000) ....................................................................4

**Statutes**

18 U.S.C. § 2510(8) ....................................................................13

18 U.S.C. § 2511(2)(d) ....................................................................3

20 U.S.C. § 1232g....................................................................6

## I. INTRODUCTION

Ignoring Plaintiff's longstanding World of Hyatt rewards membership, Plaintiff's Opposition accuses Hyatt of sharing booking information of "users like Plaintiff" with Adobe and Meta without user consent.[1] ECF 58 at 1.[2] However, before Judge Birotte transferred Plaintiff's case to this Court pursuant to the World of Hyatt Terms ("Terms"), Plaintiff aggressively resisted the Terms' enforcement, arguing, *inter alia*, he had not assented to them and they had not been sufficiently disclosed. ECF 26 at 12-13. Judge Birotte carefully considered and rejected these arguments, finding the Terms were "valid and binding." ECF 35 at 8-11. As Plaintiff acknowledges, those same "valid and binding" Terms incorporated Hyatt's Privacy Policy. ECF 58 at 9-10. Further, Judge Birotte found that "the words . . . 'Privacy Policy' were hyperlinked in blue font that contrasted with the white background and surrounding text which appeared in black font." ECF 35 at 9.

In his Opposition, Plaintiff does not dispute these findings or that they constitute law-of-the-case.[3] Nor does he deny that the Terms' Illinois choice-of-law clause precluded his CIPA/Guest Record claims. ECF 58 at 15 ("Hyatt's choice of law clause requires us to follow the laws of Illinois state . . . ."). He even admits his ECPA claim seeks to avoid the Terms. *Id*. at 1. But Plaintiff asserts he was "effectively required" to recast his CIPA/Guest Record claims as "crimes" or "torts" under the ECPA and extend those California law-based claims to a national class. *Id*. Plaintiff seeks to justify this contractual circumvention and extraterritorial application of

[1] Notably, the Opposition accuses Hyatt of disclosing *retrospective* information regarding hotel stays, such as "who . . . stayed at which hotel," and "which dates they came on." ECF 58 at 1. But Plaintiff's SAC focuses on *prospective* bookings, which may or may not result in an actual hotel stay. ECF 49 ¶ 3. Perhaps Plaintiff was stretching to conflate web activity with "guest records," or perhaps this was an innocent mistake. Whatever the reason, these assertions should be disregarded as irrelevant and inconsistent with Plaintiff's actual claims.

[2] Pincites for briefing and court orders in the record refer to the page numbers appearing at the bottom of the cited document. Pincites for exhibits to the motion (ECF 54) refer to the ECF-assigned page number.

[3] *See Calderon v. Vill. of Bridgeview*, 2020 U.S. Dist. LEXIS 39782, at *7-8 (N.D. Ill. Mar. 9, 2020) (finding the plaintiff conceded the defendant's argument that a particular claim should be dismissed "because he did not address it in his response brief"); *Anderson v. Ctrs. for New Horizons, Inc.*, 891 F. Supp. 2d 956, 959 (N.D. Ill. 2012) (same).

a California statute by arguing Illinois law incorporates federal law which incorporates California law. *Id*. at 1, 14-15.

Plaintiff's attempted ECPA pivot, however, runs headfirst into that statute's "party exception," *i.e.*, single-party consent. Plaintiff admits Hyatt was an intended recipient of any alleged "communications." The inquiry should end there. Plaintiff's efforts to avoid the party exception by affixing a "tort" label to his original Guest Record claim lack plausibility. No law permits a contractual party to obviate an admittedly enforceable choice-of-law provision by using a barred state claim as a predicate for a federal claim. Nor has Plaintiff plausibly alleged a violation of California's Guest Record Statute, either in the abstract or as applied to his purported bookings, let alone a "tort" applicable to a national class. Plaintiff's suggestion that the Guest Record Statute is somehow on par or interchangeable with the Health Insurance Portability and Accountability Act ("HIPAA") and all other privacy statutes is misguided.

Even if Plaintiff could somehow overcome the single-party consent standard, his claim still fails based on his own consent to the purported interception. At bottom, Plaintiff's Opposition seeks to challenge his assent to the Privacy Policies—which, again, were part of the Terms and were also separately disclosed in the enrollment workflow—by rehashing arguments rejected by Judge Birotte. The Court should not revisit these issues now, and Plaintiff offers no basis for doing so. As Judge Birotte observed, reasonable enrollees in rewards programs are on notice that additional terms and policies apply. Plaintiff cannot avoid his agreement by again relying on far-fetched characterizations of the registration and booking processes or other aspects of the site.

In a further attempt to avoid the Terms and Privacy Policies, Plaintiff asserts a new argument that the 2018 Privacy Policy did not disclose the information sharing alleged in his pleadings. But the 2018 Policy explicitly referenced "name" and "personal and work contact details," as well as disclosure of "guest stay information" to "third parties" using "pixels and similar technologies" for "targeted advertising" "based on your activities on our websites." ECF 54-16 at 2-5. Requiring the level of specificity demanded by Plaintiff would render most privacy policies unenforceable, particularly given the rapid pace of technology. Moreover, Plaintiff does

not contest the disclosures in the December 2022 Privacy Policy, which was binding on Plaintiff via the substantially similar booking workflow and the site's other consent features, as well as through Plaintiff's ongoing use of this World of Hyatt account. Plaintiff's consent to Hyatt's Privacy Policies provides a separate ground for barring his claims.

Further, while Plaintiff attempts to characterize his pleading of the ECPA's elements as based on settled law, he fails to cite any cases permitting allegations of "procurement" and/or simultaneous "interception" of "communications" comparable to those alleged here.

As to Hyatt's motion to strike, Plaintiff barely musters a defense of his overbroad class allegations and remedies, asserting Hyatt's motion is "premature." But the law is clear that courts need not subject litigants to the burdens of discovery where, as here, flawed class allegations and remedies can be disposed of on the pleadings.

Hyatt's motion to dismiss and strike the SAC should be granted with prejudice.

## II. ARGUMENT

### A. Plaintiff's ECPA Claim Fails Because He Concedes Hyatt Was a "Party," and the Crime-Tort Exception Does Not Apply

Plaintiff's Opposition effectively concedes Hyatt was an intended recipient of any alleged communications. ECF 58 at 16. As such, Plaintiff's ECPA claim fails as a matter of law pursuant to the "party exception." *See* 18 U.S.C. § 2511(2)(d); *see also* ECF 54 at 5-6 (citing cases). Plaintiff attempts to avoid single-party consent by repurposing the same supposed violations of California's Guest Record Statute he has alleged since case inception as "torts." This argument sputters for multiple reasons.

#### 1. Like His CIPA Claim, Plaintiff's ECPA Claim Predicated on California Law is Barred by the Illinois Choice-of-Law Clause

Plaintiff acknowledges the Illinois choice-of-law provision is valid and binding and precludes his CIPA claim. ECF 58 at 1, 15. This, by itself, also precludes Plaintiff's attempted reliance on the California Guest Record Statute as an ECPA predicate. Plaintiff provides no justification for extending the choice-of-law clause's contractual requirements to one California statute but not the other. Nor does Plaintiff cite any cases where a court permitted reliance on a

state law predicate in contravention of an admittedly enforceable choice-of-law clause. This is unsurprising, as courts routinely enforce choice-of-law clauses, even when doing so leaves the Plaintiff without a remedy. *See, e.g.*, *WTM, Inc. v. Hennek*, 125 F. Supp. 2d 864, 867-68 (N.D. Ill. 2000) (affirming Minnesota claim was barred based on Illinois choice-of-law provision); *see also* ECF 48 at 12-13. The same result should apply where the plaintiff seeks to rely on the barred state claim as an ECPA predicate.

Plaintiff seeks to escape the admittedly enforceable choice-of-law clause with a convoluted argument that Hyatt "mixes the issues." ECF 58 at 14-15. Plaintiff contends that, as a federal law, the ECPA is part of Illinois law, and that an ECPA claimant (or absent class member) can rely on the law of "any state," such as California, as a predicate under the ECPA. *Id*. In other words, Plaintiff argues that all California law is part of Illinois law, and that California law can then be extended to a national class. Of course, Plaintiff cites no cases permitting the outcome he urges here. Indeed, Plaintiff's protracted argument does not even address the core issue, *i.e.*, whether Plaintiff's undisputed agreement to have his claims governed by Illinois law, as opposed to California law, can be disregarded by filtering the California claim through the ECPA.[4] Having failed to engage the key question, let alone cite any supporting authorities, Plaintiff's argument must be rejected. Moreover, Plaintiff's approach would lead to absurd results. Under his "any state" logic, a resident of Alaska could file an ECPA claim in this Court against an Illinois defendant based on a Florida law predicate—and then seek certification of a national class based on an alleged Florida "crime" or "tort." That cannot be the law. *See Plaisance v. Bayer Corp.*, 275 F.R.D. 270, 276 (S.D. Ill. 2011) ("[I]n the class action context differences in state law cannot be swept away by electing to apply the law of a single state to all class members' claims . . . . [T]he unitary application of a single state's law . . . would . . . constitute an unacceptable violation of principles of federalism.") (citing *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1017-20 (7th

[4] Plaintiff also fails to explain why the SAC asserts federal subject matter jurisdiction based on CAFA diversity as opposed to federal question jurisdiction. ECF 49 ¶ 5.

Cir. 2002)). Plaintiff's agreement to the Illinois choice-of-law clause, and his concession that the clause defeats his CIPA claim requires dismissal of his ECPA claim predicated on California law.

**2. Plaintiff's Assertion that All Laws are Fungible for Purposes of the Crime-Tort Exception is Wrong**

Plaintiff's Opposition does not cite *any* cases recognizing the crime-tort exception based on the California Guest Record statute or other guest-record law, and Plaintiff effectively admits he is aware of no such cases. Plaintiff attempts to hurdle this legal chasm by arguing the California Guest Record statute, and all state and federal laws, are crime-tort predicates that courts have yet to recognize. ECF 58 at 12. He also asserts, in effect, that the Guest Record Statute and other privacy statutes, such as HIPAA, are fungible for purposes of the exception.

Plaintiff's construction is illogical and would render the ECPA's single-party consent standard toothless. The exception requires that the interceptor's purpose is to commit an independent criminal or tortious act, and "[t]he crime or tort can't be the interception itself." *Stein v. Edward-Elmhurst Health*, 2025 U.S. Dist. LEXIS 31273, at *9 (N.D. Ill. Feb. 21, 2025) ("There is no double dipping—the conduct must violate something else for the crime-tort exception to apply."). While courts have disagreed on the level of intent required to invoke the crime-tort exception, even in the HIPAA context, this Court and others have rejected ECPA claims based on website tracking tools where the plaintiff's allegations fail to support a plausible inference of an underlying statutory violation. *See, e.g., Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 843 (N.D. Ill. 2023) (holding the plaintiff's allegations were "far too vague to allow an inference to be drawn that [defendant] was actually disclosing IIHI as it is unambiguously defined by HIPAA, rather than just metadata").

To be sure, as Plaintiff's brief and citations recognize, most cases that have entertained crime-tort arguments have been cases that implicate sensitive *health information*—primarily HIPAA cases and state analogs. The Guest Record Statute cannot plausibly be deemed equivalent to such laws. Not surprisingly, Plaintiff cites no cases, legislation, or other authorities drawing such comparisons.

Plaintiff's other citations similarly undermine his efforts to flatten all privacy statutes for purposes of the crime-tort exception. The Family Educational Rights and Privacy Act, or FERPA, for example, is a federal statute pertaining to education funding, education records, and parental-consent, and is not a proper comparator. 20 U.S.C. § 1232g. Plaintiff also places particular emphasis on one court's recent ruling based on FERPA and the VPPA, *Dawson v. Univ. of Phx., Inc.*, 2026 U.S. Dist. LEXIS 6299 (N.D. Ill. Jan. 13, 2026). But notwithstanding his references to "the weight of this authority," Plaintiff admits *Dawson's* outlier status. ECF 58 at 12 ("[U]p until [January 2026], there does not appear to have [*sic*] any other court which had relied on [the VPPA and FERPA] in invoking the crime tort exception"). In any event, Plaintiff's efforts to analogize the Guest Record Statute to the VPPA, as well as his journey down the rabbit hole of Robert Bork's video rentals, fare no better than his HIPAA analogy and only underscore Hyatt's point.[5] The California Guest Record Statute is narrow, rarely invoked legislation, and Plaintiff cites no cases recognizing the statute as an ECPA predicate or as being equivalent to the other privacy laws he references. As discussed directly below, he also fails to plausibly allege a violation of the Guest Record statute, either generally or as to his activity on the site. Plaintiff's attempted invocation of the California Guest Record Statute to elevate his boilerplate web-tracking claim to a federal statutory breach and national class action should not be permitted.

Lastly, Plaintiff's suggestion that Hyatt argued that profit motives absolve or immunize otherwise illegal conduct mischaracterizes Hyatt's position, and his hyperbolic references to Al Capone, "Dr. Evil," and Bernard Madoff are sheer misdirection. Hyatt does not contend that misconduct is not misconduct if done for profit. Rather, Hyatt asserts that a plaintiff cannot invoke the crime-tort exception simply by accusing a defendant of targeted advertising for profit and tacking on threadbare allegations of a novel statutory violation, as Plaintiff has done here.

---

[5] Tellingly, Plaintiff relies on VPPA cases that did not involve the ECPA or the crime-tort exception. ECF 58 at 14 (citing *Gardner v. Me-Tv Nat'l Ltd. P'ship*, 132 F.4th 1022 (7th Cir. 2025)). His citation to *Brown v. Google* is also misplaced, as that case involved allegations of affirmative misrepresentations by Google, unlike this case. 525 F. Supp. 3d 1049, 1070 (N.D. Cal. 2021).

### 3. Plaintiff Has Not Alleged a Violation of California's Guest Record Statute

While Plaintiff spends several pages attempting to salvage his Guest Record allegations, he does not deny that the allegedly intercepted "content" in the SAC (*e.g.*, destination, date, number of rooms) does not constitute a "guest record" under the statute. He instead doubles down on his speculative contentions—based on a mishmash of Adobe and Meta promotional documents—that those companies have "the ability," or can "help," to "pair[]" the purported booking information with phone numbers or other identifiers—even though these latter fields are hashed. ECF 58 at 16-18; ECF 49 ¶¶ 32, 34, 63. He does not assert these capabilities were used in connection with his Website visits, that his visits involved a Hyatt owned or operated property, or that his alleged bookings resulted in a stay at such a property. He also does not allege he received targeted advertisements based on his booking preferences. He alleges only that he input parameters necessary for the Website to display potential reservation options on Hyatt and non-Hyatt properties, *see* ECF 49 ¶ 3, and that Meta and Adobe were capable of linking him to this information based on what their "marketing said." ECF 49 ¶ 3; ECF 58 at 16-17. Plaintiff cites no cases holding that such allegations plausibly allege a violation of the Guest Record Statute. Moreover, Plaintiff fails to distinguish Hyatt's cases holding the opposite. *See Crano v. Sojern, Inc.*, 2025 U.S. Dist. LEXIS 185031, at *15-21 (N.D. Cal. Sept. 19, 2025) (dismissing Wiretap Act claim predicated on Guest Record Statute); *Snyder v. G6 Hosp. LLC*, 2025 U.S. Dist. LEXIS 71792, at *10-12 (C.D. Cal. Apr. 14, 2025) (dismissing claim that Facebook ID was a "unique identifying number" under Section 53.5). In fact, *Crano* rejected allegations that booking information qualified as a "guest record," and *Snyder* dismissed such assertions regarding booking information "coupled with" a "Facebook ID," one of the purported identifiers alleged by Plaintiff. *Id.*; *see also* ECF 49 ¶ 55. Although Plaintiff characterizes his allegations as containing "granular detail," ECF 58 at 18, he offers no arguments warranting a different outcome.[6] Plaintiff fails to plausibly allege a Guest Record violation, let alone a "crime" or "tort" under the ECPA.

---

[6] Plaintiff castigates Hyatt for allegedly mischaracterizing his admission that "personal details" (*e.g.*, name, phone number, email) were hashed. ECF 58 at 18 n.3; ECF 49 ¶ 63. Plaintiff argues

****

Because Plaintiff cannot assert the crime-tort exception to single-party consent, the SAC must be dismissed based on Hyatt's status as a "party" to the alleged communications.

**B. Plaintiff's Consent Arguments Rehash Points Raised and Rejected When Plaintiff Unsuccessfully Challenged Hyatt's Terms**

Plaintiff's newfound ECPA claim is also barred on the independent ground that he consented to the alleged interception. In opposing Hyatt's Motion to Transfer, Plaintiff argued, as he does now, that Hyatt's webpages were too ambiguous to establish assent, citing *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022), and similar authorities and relying on some of the very same screenshots from his present brief. *See* ECF 25-2 at 11 ("In other words 'the notice must explicitly notify a user of the legal significance of the action she must take to enter into a contractual agreement.'"). Judge Birotte disagreed, ruling Hyatt satisfied *Berman* and Plaintiff had unambiguously assented to the Terms:

> Here, Defendant included virtually the same language the *Berman* court suggested; the notice stated, "By joining, you are agreeing to the World of Hyatt Terms & Conditions." (Opp'n at 6:22–24; Cave Decl. ¶ 6). Consequently, when Plaintiff clicked the "JOIN NOW" button to complete his registration for (and thus join) the rewards program, he unambiguously assented to the Membership Terms.

ECF 35 at 11. Plaintiff does not dispute this finding or argue it is not law-of-the case. Rather, he contends it is "irrelevant" because Judge Birotte did not explicitly rule Plaintiff assented to the Privacy Policies.[7] Plaintiff even suggests the ruling indicated the "JOIN NOW" button was linked to the Terms but *not* the Privacy Policies, as if the two are mutually exclusive. ECF 58 at 7.

---

that anonymized booking information, as opposed to "personal details," was not hashed. Given Plaintiff's concession that "personal details" are the only items that even potentially meet the definitions in the Guest Record Statute, *see* ECF 58 at 17, Plaintiff's acknowledgment that this information *was* hashed undermines his contention that he plausibly alleged a violation of that statute. Further, Plaintiff's contention, based on VPPA cases, that hashed data is still identifiable is unpersuasive. This is not a VPPA case, and at least one recent VPPA decision has *rejected* claims that disclosure of information in hashed form is prohibited. *See Horan v. Nat'l Cable Satellite Corp.*, 2026 U.S. Dist. LEXIS 48054 at *29-30 (D.D.C. Mar. 9, 2026) ("Without an explanation for, or even an allegation that, an ordinary person would be able to decipher the querystring parameters sent by the Meta Pixel, plaintiffs have failed to establish that defendant disclosed personally identifiable information.").

[7] Plaintiff's accusation that Hyatt "misrepresented" Judge Birotte's order is baseless. Hyatt did not argue that Judge Birotte ruled on assent to the Privacy Policies; Hyatt accurately stated Judge

Plaintiff's contortions are at odds with the plain import of Judge Birotte's findings and common sense. First, as Plaintiff acknowledges elsewhere, the Privacy Policies are incorporated into the Terms. *Id*. at 7-8; *see also* ECF 54-12 at 2. Thus, when Plaintiff agreed to the Terms, as ruled by Judge Birotte, he also agreed to the Privacy Policies.

Separately, Plaintiff cannot divorce the Privacy Policy hyperlink in the registration workflow from the context in which it appeared. As Judge Birotte stated, "the words . . . 'Privacy Policy' were hyperlinked in blue font that contrasted with the white background and surrounding text which appeared in black font." ECF 35 at 9. He also found that "[b]elow *those sentences* [referring to the sentence with the Terms *and* the sentence with the Privacy Policy] was a rectangular box containing the words "JOIN NOW," which a user must have clicked to complete their enrollment in the program." *Id.* at 2 (emphasis added); *see also id.* at 10 ("[T]he hyperlinks' location was logically placed where a user would expect it—after the final information field but before the 'JOIN NOW' button.").

Plaintiff's suggestion that a reasonable user would conclude that by "joining now," he or she was agreeing to the Terms but not the Privacy Policy—which was hyperlinked in the very next sentence and in the Terms themselves—is implausible. "[T]he context of this transaction, requiring a full registration process, reflected the contemplation of 'some sort of continuing relationship' that would have put users on notice for a link to the terms of that continuing relationship." *See Oberstein v. Live Nation Ent. Inc.,* 60 F.4th 505, 517 (9th Cir. 2023) (citation omitted). Equally unpersuasive are Plaintiff's attempts to analogize Hyatt's page with inapposite pages containing action buttons like "continue" or "get 15% off now," or where the terms and the registration buttons were spread across *multiple screens*.[8]

---

Birotte ruled on the conspicuousness of Hyatt's hyperlinked disclosures and that Plaintiff assented to the Terms, which Plaintiff admits incorporate the Privacy Policies.

[8] Plaintiff's reliance on the *concurrence* in *Domer v. Menard, Inc.* is unpersuasive, as that decision *enforced* the defendant's online arbitration provision, which was disclosed via a sign-in wrap agreement. 116 F.4th 686, 699-700 (7th Cir. 2024). *Sgouros v. TransUnion Corp.* is also readily distinguishable, as the court found the defendant had actively "distracted the purchaser" by making *no mention* of the relevant terms, while affirmatively stating that clicking would serve a *different* purpose. 817 F.3d 1029, 1036 (7th Cir. 2016).

Notably, after repeating his failed arguments regarding the registration interface, Plaintiff concedes the Privacy Policy was separately incorporated in the Terms, to which he is bound. ECF 58 at 7. But Plaintiff then contends the 2018 Policy was insufficiently disclosed in the Terms, which state that the Privacy Policy "is applicable to your participation in [World of Hyatt]." *Id*. As with his challenges to the registration flow, Plaintiff argues this language fails to "'indicate to the user what action would constitute assent.'" *Id*. This contention is nonsensical, as Plaintiff assented to the Terms via the "JOIN NOW" button, which Plaintiff does not dispute, and the Terms themselves incorporate the Privacy Policy. Plaintiff's suggestion that the Terms' internal references to the Privacy Policy are not "linked" to the "JOIN NOW" button is another nonstarter. *Id*. at 7-8. By this logic, the venue clause would not have been binding, as it was not specifically referenced above the "JOIN NOW" button.

Plaintiff next suggests the Terms' statement that the Privacy Policy "is" applicable is ambiguous because it might suggest "'the matter was out of [the user's] hands. . . . '" *Id*. at 8. Plaintiff's argument is based on *Marshall v. Georgetown Mem'l Hosp.*, which actually supports Hyatt's position. 112 F.4th 211, 220 (4th Cir. 2024) (noting that courts "generally find that when a website provides clear and reasonably conspicuous notice that there are contract terms available *by scrolling down or clicking a hyperlink*, the user is on reasonable notice of those terms even if she never reads them") (emphasis added). In any event, Plaintiff's quibbling around tenses again misses the point: the Terms incorporating the Privacy Policy were disclosed in the registration flow above the "JOIN NOW" button, as found by Judge Birotte. Plaintiff had the opportunity to read the Terms and the Privacy Policy *before* joining. ECF 35 at 8 ("It is undisputed Plaintiff underwent a full registration process to sign up for the World of Hyatt rewards program.") His decision to complete the process thus constituted an unambiguous manifestation of assent to the Terms and the provisions therein, including the Privacy Policy. Plaintiff's criticism that the Terms' incorporation of the Privacy Policy is ambiguous because it appears on a separate page again ignores the context. In reality, the Privacy Policy was clearly hyperlinked above the "JOIN NOW" button and was disclosed *again* in the Terms themselves. This "belt and suspenders" approach to

disclosure cannot reasonably be compared to the multipage disclosures in *Campos v. Tubi, Inc.*, 716 F. Supp. 3d 623 (N.D. Ill. 2024).

### 1. Plaintiff's Belated Challenges to the 2018 Privacy Policy's Specificity Cannot Unravel His Prior Consent

After failing to contest the specificity of Hyatt's disclosures in prior briefing, Plaintiff now asserts that the 2018 Privacy Policy did not disclose the information sharing alleged in his pleadings. ECF 58 at 9. Not so. Like his earlier pleadings, Plaintiff's SAC again challenges the sharing of booking information for advertising purposes. ECF 49 ¶¶ 64, 90. As Plaintiff no doubt recognized when he filed his Opposition to Hyatt's prior motion, Hyatt plainly disclosed such practices. By way of example, Hyatt disclosed that the Privacy Policy covered "information that identifies or is capable of identifying you as an individual," such as "guest stay information, including the hotels where you have stayed [and] dates of arrival and departure," and "information collected while you access a Hyatt app or Hyatt website." ECF 54-16 at 2-5. The May 2018 Privacy Policy also disclosed Hyatt.com's use of "Cookies and Other Similar Technology," and stated that "information collected by us or third parties . . . based on your activities on our websites" may be used for "Targeted Advertising." *Id*. These disclosures neatly track Plaintiff's allegations. Further, none of Plaintiff's cited cases require the types of granular disclosures he now asserts. Under Plaintiff's purported standard, most privacy policies would be rendered unenforceable, as few companies would be able to manage the level of particularity Plaintiff now demands.

Plaintiff seeks to defend his approach by referencing the "reasonable" user, asserting that disclosures should not attribute to users "'the skill of an experienced business lawyer.'" ECF 58 at 9. Yet, Plaintiff, represented by "experienced business lawyer[s]," posits interpretations of *portions* of Hyatt's disclosures *in isolation* that only a business lawyer could devise, and ignores disclosures that do not advance his arguments. For example, Plaintiff seeks to avoid Hyatt's disclosure of information collection by "third parties" by devoting an entire paragraph to conjunctions ("or" and "and/or"). *Id.* He then spends another paragraph on the phrase "where permitted by law." *Id*. at 9-10. Plaintiff cannot plausibly assert that referencing a general intent to comply with legal requirements somehow vitiates disclosures that, in context, plainly encompass

the conduct at issue. Moreover, his contention that the disclosures are now rendered ambiguous because his lawyers disagree with the lawfulness of the disclosed conduct is simply bootstrapping. And, as discussed below, Plaintiff altogether fails to address Hyatt's 2022 disclosures, to which he consented through his 2024 bookings and his ongoing use of his World of Hyatt account. *See* ECF 54-12 at 3 ("Unless otherwise stated, the updated Terms will apply to your participation in the Program beginning as of their effective date.").

**2. Plaintiff Separately Consented to Hyatt's 2022 Privacy Policy Through the Booking Flow and Other Means**

Plaintiff fails to meaningfully contest Hyatt's argument that he again consented to Hyatt's Privacy Policies through his alleged use of the booking interface in 2024. ECF 58 at 8. He devotes only a few lines to the issue, and does not contest the conspicuousness of these disclosures, which were judicially noticed by Judge Birotte. ECF 35 at 5-6. Instead, he again relies on *Berman* and the "linking" argument that was construed against him as to the registration workflow.

Like his challenges to the registration flow, Plaintiff's attacks on the booking flow raise cherry-picked semantic quibbles that fail to consider the elements of the page in context. The hyperlink to the 2022 Privacy Policy appears in the "Terms & Conditions" section of the booking page along with other items that are plainly related to the consummation of a room reservation, *i.e.*, the cancellation and deposit policies. ECF 54-2 at 2. The fields above the "Terms & Conditions" section require users to input booking-related information. *Id*. As such, the direct connection between the Privacy Policy governing "use of my personal information" and the "BOOK MY STAY" button is readily apparent.

And, unlike the 2018 Policy, Plaintiff does not contend Hyatt's December 2022 Privacy Policy failed to disclose the tracking in question. Indeed, Plaintiff's Opposition makes no reference to the 2022 Policy at all, and his verbal handwringing regarding conjunctions and legal references in the 2018 Policy do not extend to the 2022 Policy in any event. Nor does Plaintiff challenge the disclosures made through Hyatt's cookies banner, Cookie Center, and other methods, or through separate disclosures by Meta and Adobe. ECF 54-5, 54-6, 54-14, 54-15. Plaintiff's failure to mount a plausible consent challenge disposes of his ECPA claim.

### C. Plaintiff Fails to Plausibly Allege Other Elements of His ECPA Claim

Plaintiff has also failed to plausibly allege any "communications" were intercepted "in transit" by Meta or Adobe, or that Hyatt "procured" any predicate acts by Meta or Adobe. His citations to the contrary are inapposite and do not apply to the conduct alleged in the SAC.

#### 1. Plaintiff Fails to Plausibly Allege Interception in Transit

Under the ECPA, "interception" requires contemporaneous acquisition of an electronic communication while it is in transit. *See Mazzorana v. Kelly*, 2022 U.S. Dist. LEXIS 74664, at *3-4 (N.D. Ill. Apr. 25, 2022). Plaintiff claims he has sufficiently pled this element, relying on *United States v. Szymuszkiewicz*, 622 F.3d 701 (7th Cir. 2010). But *Szymuszkiewicz* addressed a post-conviction criminal appeal where the defendant set up an email forwarding rule to copy victims' emails. *Id.* at 703-04. Plaintiff cites no authorities in the commercial web-tracking context for the proposition that conclusory assertions of subsequent, duplicate communications between users' browsers and third parties' servers meet the interception-in-transit requirement.

#### 2. Plaintiff Fails to Plausibly Allege Adobe or Meta Intercepted the Content of Communications

Under the ECPA, the "content" of a communication means "the substance, purport or meaning of [the] communication" or the "intended message conveyed by the communication." 18 U.S.C. § 2510(8); *see also In re Zynga Priv. Litig.*, 750 F.3d 1098, 1105-06 (9th Cir. 2014) (interpreting the meaning of "content" under the ECPA). "[R]ecord information" relates to "the characteristics of the message that is generated in the course of [that] communication." *Zynga*, 750 F.3d at 1107. Plaintiff attempts to equate piecemeal clicks from the booking interface with "communications" through an analogy to a live conversation with a concierge about travel options, along with "names, emails, and phone numbers." ECF 58 at 18. But the SAC's allegations regarding supposed "pairing" of identifying information with booking data are speculative at best, particularly as to Plaintiff. ECF 49, *passim*. Additionally, the only case Plaintiff cites, *Zynga*, indicates that Plaintiff's clicks on options in the booking interface constitute "record information" as opposed to "communications." *Zynga*, 750 F.3d at 1106-07.

### 3. Plaintiff Fails to Plausibly Allege Procurement by Hyatt

Plaintiff accuses Hyatt of "misciting" *Valentine v. Wideopen W. Fin., LLC*, which, as Hyatt stated, dismissed a civil procurement claim. 288 F.R.D. 407, 412-13 (N.D. Ill. 2012). Despite lobbing this allegation, Plaintiff fails to note the well-established split among courts regarding the availability of civil liability for ECPA claims. *See, e.g.*, *Shefts v. Petrakis*, 954 F. Supp. 2d 769, 774-77 (C.D. Ill. 2013) (rejecting civil liability); *Peavy v. WFAA-TV*, 221 F.3d 158 (5th Cir. 2000) (same); *Kirch v. Embarq Management Co.*, 702 F.3d 1245, 1246-47 (10th Cir. 2012) (same). Nor does he mention that the *Valentine* court ultimately dismissed the ECPA claim. 288 F.R.D. at 411 ("Here, setting aside the legal conclusions, the *facts* that Plaintiffs allege in detailing the nature of WOW and NebuAd's relationship, recited above, make it clear from the face of the complaint that WOW merely facilitated *NebuAd*'s acquisition of Plaintiffs' information.") (emphasis in original). Even if this Court concludes the ECPA permits civil procurement claims, Plaintiff has not pled such a claim, as his allegations focus on Meta and Adobe promotional materials describing marketing "capabilit[ies]," ECF 49 ¶ 17, but lack plausible assertions that Hyatt, Meta, or Adobe implemented particular "capabilities" in connection with his Website visits or information or that he received targeted ads. *Id.* ¶ 3.

### D. Plaintiff Fails to Provide a Substantive Response to Hyatt's Motion to Strike

Plaintiff's Opposition does not address Hyatt's motion to strike in any meaningful way, arguing in perfunctory fashion that the motion is "premature" because discovery is not complete, and citing only one case, *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292 (N.D. Ill. 2014). *Buonomo* does not support Plaintiff's reflexive prematurity argument, as the court recognized that "a motion to strike class allegations . . . can be an appropriate device to determine whether [the] case will proceed as a class action." *Buonomo*, 301 F.R.D. at 295 (citation omitted). Plaintiff provides no response to Hyatt's facial overbreadth challenges and fails to identify any discovery that could possibly salvage his class claims. None exists. Plaintiff's SAC and Opposition emphasize that his personal allegations focus on purported interception of his *booking information* in *2024* while he was *in California*, which Plaintiff claims violates *California's* Guest Record

Statute. ECF 49 ¶ 3; ECF 58 at 1-2. Plaintiff does not even attempt to explain how such claims could plausibly be extended to "all persons in the United States who, during the class period, *accessed and navigated* the Website" over an unlimited timeframe, including casual surfers who never booked or attempted to book a room. ECF 49 ¶ 73 (emphasis added). And he ignores other inherently individualized issues, such as whether Hyatt was functioning as an "owner" or "operator" of a booked property, and which loyalty program and website terms, user interfaces, banners, and disclosures users encountered. No discovery will render such claims susceptible to common proof. Plaintiff's parting assertion that whether "unique identifiers" and other identifying information qualifies as a "guest record" is not an individualized issue also misses the mark. Plaintiff does not allege persons who merely "accessed and navigated" the Website had such information "intercepted," meaning the putative class is facially overbroad.

Regarding his expanded national class allegations, Plaintiff states only that the ECPA is a federal law and the crime-tort exception references "any" state. He provides no case law or additional analysis to support the extraterritorial application of the California Guest Record Statute to a national class, let alone doing so in a case with an admittedly enforceable Illinois choice-of-law clause. Nor does he respond to or attempt to distinguish Hyatt's authorities on this point. Lastly, Plaintiff mounts no challenge whatsoever to Hyatt's motion to strike his boilerplate prayer for punitive, actual or compensatory damages, restitution, and injunctive relief. In short, no amount of discovery will render Plaintiff's class definition or asserted remedies viable. Hyatt's motion to strike should be granted.

## III. CONCLUSION

Plaintiff has now had the opportunity to rework his allegations but has still failed to state a viable claim. No basis exists for granting leave to amend, and Plaintiff does not request leave. Accordingly, Hyatt requests Plaintiff's SAC be dismissed and stricken with prejudice.

Dated: March 16, 2026

Respectfully submitted,

By: */s/ Terence N. Hawley*
Terence N. Hawley
**REED SMITH LLP**

Terence N. Hawley (*Pro Hac Vice*)
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Telephone: (415) 543-8700
Facsimile: (415) 391-8269
Email: thawley@reedsmith.com
*Attorneys for Defendant Hyatt Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2026, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Terence N. Hawley*
Terence N. Hawley